IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BOSCH LLC,

                              Plaintiff,

            v.                                    Case No.

J.S.T. MFG. CO, LTD.,                             Hon.
J.S.T SALES AMERICA INC., and
J.S.T. CORPORATION,

                              Defendants.

## NOTICE OF REMOVAL and PROOF OF SERVICE

J.S.T. Mfg. Co. Ltd. ("JST"), J.S.T. Corporation, and J.S.T. Sales America Inc., by and through their undersigned counsel, Butzel Long, a professional corporation, hereby file a Notice of Removal in this matter (originally filed in Oakland County Circuit Court as Case No. 2015-147126-CK) to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

The grounds for removal are as follows:

## TIMELINESS OF REMOVAL

1.      Pursuant to 28 U.S.C. § 1446, a notice of removal to federal court "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).

2.      Plaintiff filed its Verified Complaint for Injunctive Relief, Specific Performance, and Other Relief ("Complaint") in the Circuit Court of Oakland County, Michigan, on May 19, 2015, and the named defendants subsequently received copies (although JST has not yet been

served with process).  Accordingly, removal is timely.

3.     This Notice of Removal is made without waiver of any procedural or substantive defense.  An answer to the Complaint or appropriate motion in lieu of an answer will be filed with this Court in compliance with FRCP 81(C).

## JURISDICTION AND VENUE

4.     Jurisdiction is proper pursuant to 28 U.S.C. § 1441(a) as the action could have been filed with this Court pursuant to 28 U.S.C. § 1332(a).  Specifically, as discussed more fully below, this Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

5.     As alleged in the Complaint, Plaintiff, Robert Bosch LLC, is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan.

6.     Defendant J.S.T. Mfg. Co., Ltd. (JST) is a corporation organized and existing under the laws of the country of Japan, with a principal place of business in Osaka, Japan.

7.     Defendant J.S.T. Corporation is an Illinois corporation with its principal place of business in Waukegan, Illinois.

8.     Defendant J.S.T. Sales America Inc. is an Illinois corporation with its principal place of business in Waukegan, Illinois, **not Michigan as alleged in the Complaint ¶10**.  (*See* Ex. 1, State of Michigan foreign corporation filings).  Accordingly, there is complete diversity of citizenship between all of the named parties.

9.     Further, Defendant J.S.T. Sales America Inc. **is not a party** to any of the agreements on which Plaintiff bases its claims.  (Complaint, Ex. A-F).

10.    Defendant J.S.T. Sales America Inc. is primarily engaged in marketing; it did not

-2-

manufacture nor distribute the products at issue in the Complaint.

11.     Defendant J.S.T. Sales America Inc. is not involved with the instant dispute and Plaintiff has not alleged any colorable basis on which to recover against it.

12.     Plaintiff intentionally confuses this issue by referring to J.S.T. Corporation as "JST Illinois" and J.S.T. Sales America Inc. as "JST America" in the Complaint

13.     Plaintiff named J.S.T. Sales America Inc. as a defendant in an attempt at fraudulent joinder and to force the Court to hold additional proceedings on the issue of diversity. Accordingly, even if Defendant J.S.T. Sales America Inc. were truly a Michigan citizen (it is not), it has been fraudulently joined and its citizenship should be disregarded for purposes of federal diversity jurisdiction.  See, *Alexander v Electronic Data Sys Corp*, 13 F3d 940, 948–949 (6th Cir 1994)**.**

14.     With regard to the amount in dispute, Plaintiff is careful to state only "an amount in excess of $25,000" and that the full amount is "not quantifiable."  See Complaint ¶¶12 and 55. However,

> a.  Defendant JST believes in excess of $3 Million is at issue between the proper parties to the dispute;
>
> b.  Plaintiff's demand for specific performance would force monthly supply under the Supply Agreement in an amount of  275,000 connectors per month, putting over $850,000 per month at issue; and
>
> c.  Plaintiff itself quantifies the damages it anticipates pursuing against JST as "easily amount[ing] to millions of dollars per day."  Complaint, Ex. F, May 15, 2015 letter.  Without conceding this figure and to further satisfy Local Rule 81.1, JST agrees that the amount in controversy easily exceeds the

jurisdictional minimum of this Court.

15.     Venue is proper pursuant to 28 U.S.C. § 1441(a) as the United States District Court for the Eastern District of Michigan is the federal judicial district and division embracing the Oakland County Circuit Court in the State of Michigan, where this action was filed originally.

16.     If any questions arise as to the propriety of removing this action, Defendants request the opportunity to brief any disputed issues and to present oral argument in support of their position that this case is properly removable.

17.     Copies of all papers filed in the Oakland County Circuit Court action are attached hereto, together with the Notice of Filing Removal that is being concurrently submitted for filing with the Oakland County Circuit Court and served on Plaintiff.

Dated: May 20, 2015                    **BUTZEL LONG, a professional corporation**

                                       By:     /s/  *Bruce L. Sendek*
                                               Bruce L. Sendek (P28095)
                                               150 West Jefferson, Suite 100
                                               Detroit, MI 48226-4452
                                               (313) 225-7000
                                               sendek@butzel.com

                                               *Attorney for Defendants*

-4-

## PROOF OF SERVICE

Attorney Bruce L. Sendek certifies that on this day, he served copies of the foregoing Notice of Removal and the attachments referenced therein, together with the Statements of Disclosure of Corporate Affiliations and Financial Interest, upon attorneys S. Thomas Wienner, Wienner & Gould, P.C., 950 W. University Dr., Ste. 350, Rochester, MI 48307 and Alan N. Salpeter, Kaye Scholer LLP, Three First National Plaza, 70 W. Madison St., Ste 4200, Chicago, IL 60602, by enclosing copies thereof in an envelope, properly addressed to the above individuals, with first-class postage and causing same to be deposited in the U.S. mail; and courtesy copies provided via email to the following addresses:

twienner@wiennergould.com
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated: May 20, 2015

**BUTZEL LONG, a professional corporation**

By:     /s/  *Bruce L. Sendek*
        Bruce L. Sendek (P28095)
        150 West Jefferson, Suite 100
        Detroit, MI 48226-4452
        (313) 225-7000
        sendek@butzel.com

        *Attorney for Defendants*

# **CIRCUIT COURT FILINGS**



## Back   Print

**Case Number**     2015-147126-CK
**Entitlement**     ROBERT BOSCH vs. JST MFG CO
**Judge Name**      JAMES M. ALEXANDER
**Case Filed**      05/19/2015
**Case Disposed**   00/00/0000
**Case E-Filed**    YES

| Date | Code | Description |
|------|------|-------------|
| 05/20/2015 | SUM | P/S ON SUMMONS FILED NO DATE |
| 05/20/2015 | SUM | P/S ON SUMMONS FILED NO DATE |
| 05/20/2015 | SUM | P/S ON SUMMONS FILED 05/19/15 |
| 05/20/2015 | SUM | P/S ON SUMMONS FILED 05/19/15 |
| 05/19/2015 | C | COMPLAINT FILED /NTC ASSIGN BUS CT |
| 05/19/2015 | SI | SUMMONS ISSUED |
| 05/19/2015 | SI | SUMMONS ISSUED |
| 05/19/2015 | SI | SUMMONS ISSUED |
| 05/19/2015 | MTN | MOTION FILED BOSCH PRELIM INJ/BRF/NOH/POS |
| 05/19/2015 | MPR | MOTION PRAECIPE FILED FOR 06032015 JUDGE 02 |

**PROOF OF SERVICE**

**SUMMONS AND COMPLAINT**

Case No. 15-147120 CK

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE**

☐ **OFFICER CERTIFICATE**          OR          ☒ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that:   (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required)

☒ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with   Motion for Preliminary Injunction

List all documents served with the Summons and Complaint

on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| LST Sales America Inc | The Corporation Company 30600 Telegraph Rd. Ste 2345 Bingham Farms, MI 48025 | Tuesday 5/19/15 03:30 pm |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles Traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature   Perry NewVarol

Title   Legal Assistant

Subscribed and sworn to before me on   5-19-15

Date

Oakland   County, Michigan.

My commission expires:   AMY A. DAVIS
NOTARY PUBLIC, State of Michigan
County of Macomb
My Commission Expires: Jul 24, 2020
Acting in the County of Oakland

Signature   Amy A. Davis

Deputy court clerk/Notary public

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

_____ on _____

Day, date, time

on behalf of _____

Signature

Received for Filing Oakland County Clerk 2015 MAY 20 AM 09:32

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

Received for Filing Oakland County Clerk 2015 MAY 20 AM 09:32

Legal Software Inc. (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 6th  JUDICIAL DISTRICT  JUDICIAL CIRCUIT  COUNTY PROBATE | SUMMONS AND COMPLAINT | 2015-147126-CK  JUDGE ALEXANDER |

Court Address
1200 N Telegraph Rd, Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).

ROBERT BOSCH LLC

v

Defendant name(s), address(es), and telephone no(s).

J.S.T. SALES AMERICA INC.
c/o The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307   (248) 841-9400

## SUMMONS

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued MAY 19 2015 | This summons expires* AUG 18 2015 | Court clerk Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

## COMPLAINT

Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

## VENUE

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, Michigan | Oakland County, Michigan |

Place where action arose or business conducted
Oakland County, Michigan

| 5/19/15 Date | Signature of attorney/plaintiff  S. Thomas Wienner (P29233) |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (6/03)  **SUMMONS AND COMPLAINT**    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2015 MAY 20 AM 09:32

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. 15-14712 6-CK |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ OFFICER CERTIFICATE | OR | ☒ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that:     (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:     (notarization required) |

☒ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with   Motion for Preliminary Injunction

List all documents served with the Summons and Complaint

on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| IST Corporation | The Corporation Company Kelico Telegraph Rd. Ste 2345 Bingham Farms, MI 48025 | Tuesday 5/19/15 03:33pm |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles Traveled | Mileage fee | Total fee | |
|---|---|---|---|---|
| $ | | $ | $ | |

Signature: Penny Newlander

Title: Legal assistant

Subscribed and sworn to before me on   5-19-15

Date

Oakland County, Michigan.

My commission expires: 7-24-2000     Signature: Amy A. Davis

Deputy court clerk/Notary public

AMY A. DAVIS
NOTARY PUBLIC, State of Michigan
County of Macomb
My Commission Expires: Jul 24, 2020
Acting in the County of Oakland

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with:

Attachments

on

Day, date, time

on behalf of

Signature

This case has been designated as an eFiling case. To review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

Legal Software Inc. (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

Original - Court
2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 6th JUDICIAL DISTRICT JUDICIAL CIRCUIT COUNTY PROBATE | SUMMONS AND COMPLAINT | 2015-147126-CK JUDGE ALEXANDER |

Court Address
1200 N Telegraph Rd, Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).

ROBERT BOSCH LLC

V

Defendant name(s), address(es), and telephone no(s).

J.S.T. CORPORATION
c/o The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307   (248) 841-9400

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1.  You are being sued.
2.  **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued MAY 19 2015 | This summons expires* AUG 18 2015 | Court clerk Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, Michigan | Oakland County, Michigan |

Place where action arose or business conducted
Oakland County, Michigan

5/19/15
Date

Signature of attorney/plaintiff  S. Thomas Wienner (P29233)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (6/03)  **SUMMONS AND COMPLAINT**

MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2015 MAY 20 AM 09:32

Received for Filing Oakland County Clerk 2015 MAY 20 AM 08:00

## PROOF OF SERVICE

**SUMMONS AND COMPLAINT**

Case No. 15-147120-CK

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

☐ **OFFICER CERTIFICATE**          OR          ☒ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104(A)(2), and that:   (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required)

☒ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with   Motion for Preliminary Injunction

List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| LST Sales America Inc | The Corporation Company Bloom Telegraph Rd. Ste 2515 Bingham Farms, MI 48025 | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee $ | Miles Traveled | Mileage fee $ | Total fee $ |
|---|---|---|---|
| | | | |

Signature: _Penny Newbower_

Title: Legal Assistant

Subscribed and sworn to before me on 5-19-15 , Oakland County, Michigan.

Date

My commission expires: DAVIS - 7-24-2020   Signature: _Amy A. Davis_

NOTARY PUBLIC, State of Michigan          Deputy court clerk/Notary public

County of Macomb

My Commission Expires: Jul 24, 2020

Acting in the County of Oakland

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____

Attachments

_____ on _____

Day, date, time

on behalf of _____

_____

Signature

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

Legal Software Inc. (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | |
|---|---|---|
| 6th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT |

CASE NO.

2015-147126-CK
JUDGE ALEXANDER

Court Address
1200 N Telegraph Rd, Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).
ROBERT BOSCH LLC

V

Defendant name(s), address(es), and telephone no(s).
J.S.T. SALES AMERICA INC.
c/o The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307   (248) 841-9400

Received for Filing Oakland County Clerk 2015 MAY 20 AM 08:00

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires* | Court clerk |
|---|---|---|
| MAY 19 2015 | AUG 18 2015 | Lisa Brown |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, Michigan | Oakland County, Michigan |

Place where action arose or business conducted
Oakland County, Michigan

| Date | Signature of attorney/plaintiff  S. Thomas Wienner (P29233) |
|---|---|
| 5/19/15 | |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/03)  SUMMONS AND COMPLAINT     MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2015 MAY 20 AM 08:00

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. 15-147516-CK |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

☐ **OFFICER CERTIFICATE**    OR    ☒ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104(A)(2), and that:   (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required)

☒ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _Motion for Preliminary Injunction_
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| IST Corporation | The Corporation Company Farmington-Telegraph Rd. Ste 3245 Bingham Farms MI 48025 | 5/19/15 |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee $ | Miles Traveled | Mileage fee $ | Total fee $ |
|---|---|---|---|
| | | | |

Signature _Penny Newlander_

Title _legal assistant_

Subscribed and sworn to before me on _5-19-15_
Date

_Oakland_ County, Michigan.

My commission expires: _7-24-2020_     Signature: _Amy A. Davis_
Deputy court clerk/Notary public

AMY A. DAVIS
NOTARY PUBLIC, State of Michigan
County of Macomb
My Commission Expires: Jul 24, 2020
Acting in the County of _Oakland_

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____

Signature

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

Received for Filing Oakland County Clerk 2015 MAY 20 AM 08:00

Legal Software Inc. (800) 550-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | |
|---|---|---|
| 6th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT |

CASE NO.
**2015-147126-CK**
**JUDGE ALEXANDER**

Court Address
1200 N Telegraph Rd, Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).
ROBERT BOSCH LLC

V

Defendant name(s), address(es), and telephone no(s).
U.S.T. CORPORATION
c/o The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307   (248) 841-9400

**SUMMONS**   NOTICE TO THE DEFENDANT:  In the name of the people of the State of Michigan, you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>MAY 19 2015 | This summons expires*<br>AUG 18 2015 | Court clerk<br>Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT** Instruction: *The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer  pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Oakland County, Michigan | Defendant(s) residence (include city, township, or village)<br>Oakland County, Michigan |
|---|---|

Place where action arose or business conducted
Oakland County, Michigan

| 5/19/15<br>Date | Signature of attorney/plaintiff  S. Thomas Wienner (P29233) |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (6/03)  **SUMMONS AND COMPLAINT**

MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Original – Court

| STATE OF MICHIGAN 6TH JUDICIAL CIRCUIT COUNTY OF OAKLAND | NOTICE OF ASSIGNMENT TO THE BUSINESS COURT | CASE NO. 2015-147126-CK JUDGE ALEXANDER |
|---|---|---|

Court address
1200 N Telegraph Rd    Pontiac, MI  48341

Court telephone no.
248-858-0345

| Plaintiff's name(s), address(es), and telephone number(s) | | Defendant's name(s), address(es), and telephone number(s) |
|---|---|---|
| ROBERT BOSCH LLC | v | J.S.T. MFG. CO., LTD., J.S.T. SALES AMERICA INC., and J.S.T. CORPORATION |

| Plaintiff's attorney, bar no., address, telephone no., and email address | Defendant's attorney, bar no., address, telephone no., and email address |
|---|---|
| S. Thomas Wienner (P29233); Seth D. Gould (P45465) Wienner & Gould, P.C., 950 W. University Dr., Ste. 350 Rochester, MI 48307    (248) 841-9400 | |

The ☒ Plaintiff ☐ Defendant requests assignment of the above captioned matter to the Business Court. The case qualifies for the Business Court and the matter should be identified as Business Court eligible pursuant to MCL 600.8031, MCL 600.8035, and LAO 2013-xx as indicated below. (Check all that apply.)

The case is a qualifying business or commercial dispute as defined at MCL 600.8031(c):  as

☒ All of the parties are business enterprises;

☐ One or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships;

☐ One of the parties is a nonprofit organization and the claims arise out of that party's organizational structure, governance, or finances;

☐ It involves the sale, merger, purchase, combination, dissolution, liquidation, structure, governance, or finances of a business enterprise.

The business or commercial dispute involves:

☐ Information technology, software, or website development, maintenance or hosting;

☐ The internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers;

☒ Contractual agreements or other business dealing, including licensing, trade secrets, intellectual property, antitrust issues, securities, non-compete agreements, non-solicitation agreements, and confidentiality agreements, if all available administrative remedies are completely exhausted, including, but not limited to alternative dispute resolution processes prescribed in the agreements;

☐ Commercial transactions, including commercial bank transactions;

☐ Business or commercial insurance policies; and/or

☐ Commercial real property.

☐ Other: (Please explaing)

May 19, 2015
Date

/s/ S. Thomas Wienner (P29233)
Name

Attorney for: Plaintiff Robert Bosch LLC

OCBC 01 (05/13) **NOTICE OF ASSIGNMENT TO THE BUSINESS COURT**

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/efiling.

<div style="transform: rotate(-90deg)">Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25</div>

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

      Plaintiff,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

Case No. 15- 147126 -CK

Hon. JUDGE ALEXANDER

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233)<br>Seth D. Gould (P45465)<br>Daniel K. Beitz (P47451)<br>WIENNER & GOULD, P.C.<br>*Attorneys for Plaintiff*<br>950 W. University Dr., Ste. 350<br>Rochester, MI  48307<br>(248) 841-9400<br>twienner@wiennergould.com<br>sgould@wiennergould.com | Alan N. Salpeter<br>KAYE SCHOLER LLP<br>*Attorneys for Plaintiff*<br>70 West Madison Street, Ste. 4200<br>Three First National Plaza<br>Chicago, Illinois 60602<br>(312) 583-2300<br>alan.salpeter@kayescholer.com |

_____/

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF,<br>SPECIFIC PERFORMANCE AND OTHER RELIEF

*Pursuant to Rule 2.112(O) of the Michigan Court Rules,
plaintiff verifies this case involves a business or commercial
dispute as defined in Section 600.8031 of the Michigan
Compiled Laws and meets the statutory requirements to be
assigned to the <u>business court</u>. Pursuant to Rule 2.113(C)(2)(a) of
the Michigan Court Rules, attorneys for the plaintiff state there is <u>no
other pending or resolved civil action</u> arising out of the
transaction or occurrence alleged in this complaint.*

*/s/ S. Thomas Wienner (P29233)*

## INTRODUCTION

1.      Plaintiff Robert Bosch LLC ("Bosch"), by its counsel, Wienner & Gould, P.C. and Kaye Scholer LLP, brings this action to preserve the *status quo* and stop Defendants J.S.T. Mfg. Co., Ltd. ("JST Japan"), J.S.T. Corporation ("JST Illinois"), and J.S.T. Sales America Inc. ("JST America") from cutting off Bosch's supply of horizontal male electric plastic connectors, part number 6002.JE0.402 ("Connectors") used in General Motors vehicles.  (JST Japan, JST Illinois, and JST America are collectively referred to herein as "JST" or "Defendants.")

2.      Bosch brings this action after JST suddenly, unexpectedly, and unlawfully cut off the supply of Connectors to Bosch.

3.      JST disputes Bosch's right to certify a different supplier for different connector parts at plants not subject to the parties' supply agreements.  JST also claims that Bosch disclosed confidential information.  Both claims are baseless.

4.      In any event, such claims are to be resolved, as the parties agreed, by mediation and arbitration, and Defendants are contractually required to continue supplying the Connectors pending a resolution of these contract disputes through mediation and arbitration (which have not yet occurred).

5.      The significance of a shutdown in this case will be catastrophic.  Bosch assembles the Connectors supplied by JST into body control modules that are sold to General Motors.  Absent injunctive relief, JST's refusal to ship Connectors will jeopardize approximately ***3.8 million General Motors vehicles annually***, which represents ***46% of General Motors' global volume production***. The following vehicles will be threatened: (a) <u>Chevrolet</u>: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer,

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

S10, Spark, Legacy, Orlando, and Tracker; (b) <u>Buick</u>: Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) <u>GMC</u>: Terrain; (d) <u>Opel</u>: Astra, Corsa, Insignia, and Mokka; and (e) <u>Holden</u>: Trax and Cruze.  Bosch is the sole supplier of the body control modules for those vehicles.  General Motors cannot manufacture those vehicles without the body control modules supplied by Bosch, and Bosch cannot manufacture the body control modules without the Connectors supplied by JST.

6.      Absent injunctive relief, Bosch will begin to run out of Connectors in its production facilities *as early as June 20, 2015*.  Bosch's deliveries to General Motors will therefore halt, and General Motors will be unable to continue to manufacture and sell the affected vehicles within weeks.

## PARTIES AND JURISDICTION

7.      Bosch is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan. Bosch conducts business in Oakland County, Michigan.

8.      JST Japan is a Japanese corporation with its principal place of business in Osaka, Japan.  JST Japan conducts business in Oakland County, Michigan.

9.      JST Illinois is an Illinois corporation with its principal place of business in Illinois.  JST Illinois conducts business in Oakland County, Michigan.

10.     JST America is an Illinois corporation with its principal place of business in Farmington Hills, Michigan. JST America conducts business in Oakland County, Michigan.

11.     JST America and JST Illinois are authorized agents of JST Japan, conducting business on its behalf with full authority to bind JST Japan in business transactions within Oakland County, Michigan.

12.     Venue and jurisdiction are proper in this Court because Bosch and JST

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

conduct business in Oakland County, and the amount in controversy, exclusive of interest and attorney fees, is in excess of $25,000.

## GENERAL ALLEGATIONS

13.     JST has supplied Connectors to Bosch since 2008.

14.     Bosch assembles the Connectors into body control modules, which Bosch sells to General Motors for use in numerous vehicles.

15.     The following agreements detail and relate to the supply relationship between Bosch and JST: (a) Master Pricing Contract, No. K01MC12AB6/1, dated February 15, 2013 ("Pricing Contract," Ex. A.); (b) the Robert Bosch LLC North American Terms and Conditions of Purchase ("POTC," Ex. B); (c) the Confidential Information and Non-Disclosure Agreement and Grant of License effective March 1, 2005 ("Non-Disclosure Agreement," Ex. C.); and (d) (through Robert Bosch GmbH) a Corporate Agreement dated April 29, 2009 ("Corporate Agreement," Ex. D.)

16.     The Pricing Contract, among other things, obligates JST to provide, and sets the pricing for, the Connectors over a five-year period (2012-2017).

17.     The POTC is explicitly incorporated by reference into the Pricing Contract (". . . the Robert Bosch LLC Terms and Conditions shall apply") and governs the dispute resolution procedures between Bosch and JST regarding the Connectors.

18.     The Non-Disclosure Agreement pertains to the obligations to protect certain confidential information of the parties.

19.     Although Bosch is not a signatory to the Corporate Agreement, Bosch is an intended third-party beneficiary. The Corporate Agreement contains, among other provisions, provisions regarding termination and cancellation of the supply relationship, including proper notice requirements.

4

20.     The Pricing Contract, Non-Disclosure Agreement, Corporate Agreement, and related scheduling agreements, releases, and POTC are collectively referred to as the "Supply Agreements."

## SUPPLY DISPUTE

21.     Earlier this year, in late February 2015, JST advised Bosch that it would no longer supply Connectors (cutting Bosch off in March 2015) because Bosch certified an additional supplier in order to meet demands for *a different part* not subject to the Supply Agreements.

22.     In March 2015, the top automotive purchasing executive in the Bosch group of companies, Albin Ettle, personally traveled from Germany to Singapore to meet with JST's president, Masao Yoshimura.  Although the supply agreements obligate JST to supply Bosch's requirements for the Connectors through the end of 2017, JST demanded that Bosch make a final "spot buy" for 13 months' worth of supply with a volume commitment of 300,000 Connectors per month.  Faced with the prospect of immediate production shutdowns, Bosch agreed to these new terms to mitigate its damages and as a gesture of good faith (under protest).

23.     With the understanding that such modifications had resolved the parties' supply dispute, Bosch issued a Purchase Order on May 14, 2015.

24.     Unexpectedly, on May 15, 2015, JST reneged on the proposed contract modifications, cancelled all of the Supply Agreements, and advised Bosch that JST would no longer ship Connectors to Bosch nor honor Bosch releases issued after May 8, 2015.  (Ex. E.)

25.     JST has also refused Bosch's requests to participate in additional negotiations. (Ex. F.)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

26.     JST's conduct is improper and contrary to JST's supply obligations under the Supply Agreements.

27.     JST refuses to continue performance because of a contract dispute relating to whether the Supply Agreements entitle JST to exclusivity for all types of connector parts or just the Connectors (*i.e.,* whether Bosch may obtain different connector parts for other projects from a different supplier).

28.     JST threatens a cessation of supply because JST wants Bosch to give up its right to source different connector business to another supplier.

29.     Bosch has fulfilled its commitment to source JST for 100% of Connectors ordered by two Bosch plants subject to the Supply Agreements (Suzhou, China and Juarez, Mexico).

30.     There is nothing in the Supply Agreements that prohibits Bosch from using a different supplier for different parts for other Bosch facilities, which are not subject to the Supply Agreements.

31.     JST's demand for exclusivity beyond what is required by the Supply Agreements is improper.

32.     JST also claims, incorrectly, that Bosch has provided confidential information to other suppliers.

33.     Bosch denies any wrongdoing, particularly any breach of the Supply Agreements or any other agreement with JST.

### JST AGREED TO CONTINUE SUPPLYING
### CONNECTORS PENDING MEDIATION/ARBITRATION

34.     Under the Supply Agreements, the parties agreed to resolve the underlying contract dispute, not in this proceeding, but *via* good faith discussions, mediation and

arbitration. (Ex. B, POTC ¶ 32.1, parties agree to participate in (1) "good faith negotiations," (2) "non-binding mediation by a mediator approved by both parties," and, then, if necessary, (3) "binding arbitration." *Id*.)

35. The Supply Agreements expressly provide that "[pending mediation or arbitration,] **the parties shall continue to perform their obligations under the Contract.**" (Ex. B, POTC ¶ 32.1; emphasis added.)

36. No mediation or arbitration has occurred.

37. Under these circumstances, JST may not cease supply to improve its bargaining position on this, or any, contract dispute with Bosch.

38. Moreover, JST has agreed that monetary damages are not a sufficient remedy for [Bosch for] any actual, anticipated or threatened breach of the Supply Agreements by JST, and that "[Bosch is] entitled to specific performance *including injunctive* or other equitable *relief*" as a remedy for any JST breach of its "obligations in connection with the production or delivery of [the Connectors]." (Ex. B, POTC ¶ 8.2 (emphasis added).)

39. If JST fails to produce and deliver the Connectors to Bosch, Bosch will not be able to continue its supply of body control modules to General Motors as early as June 20, 2015, and General Motors will be unable to continue to manufacture and sell its vehicles within weeks.

40. The financial and reputational damage to Bosch and General Motors will be irreparable, immediate, and devastating.

41. On May 15, 2015, Bosch wrote to JST, stating that, if JST stopped shipments of the Connectors, Bosch would have to take action to prevent an imminent and catastrophic production shutdown. (Ex. F.)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

42.     Bosch cannot, because of the time required to resource and revalidate the Connectors and prepare them for delivery to General Motors, easily or quickly resource this business to another supplier.

43.     At present, JST and another company, Foxconn, supply connectors to Bosch for numerous General Motors programs.

44.     Foxconn, however, lacks the capacity to take over JST's business. (Bosch validated Foxconn previously for ***different*** connectors in ***different*** Bosch plants, which are ***not*** subject to the Supply Agreements.  Bosch turned to Foxconn because JST had indicated an inability to supply these different connector parts required at non-Supply Agreement-plants.)

45.     JST's Connectors are necessary and critical to numerous General Motors programs, and Bosch's inability to provide these components will cause immediate and severe harm to Bosch and to General Motors.

## COUNT I
## BREACH OF CONTRACT

(Bosch asserts this Count in the event JST refuses to arbitrate its contract dispute with Bosch and if this Court does not order binding arbitration)

46.     Bosch incorporates by reference all preceding paragraphs.

47.     Bosch entered into the Supply Agreements with JST wherein JST agreed to supply the Connectors until at least 2017.

48.     By refusing to supply Bosch with Connectors under the Supply Agreements, JST has anticipatorily repudiated and breached the Supply Agreements.

49.     As a direct and proximate result of JST's breach, Bosch has suffered and will continue to suffer substantial damages.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

WHEREFORE, Plaintiff requests that this Court enter a judgment in its favor and against JST in an amount in excess of $25,000.00 to which it is found to be entitled, plus interest, costs, and attorneys' fees.

## COUNT II
## INJUNCTIVE RELIEF

50.     Bosch incorporates by reference all preceding paragraphs.

51.     JST agreed to supply Bosch with the Connectors until at least 2017.

52.     Nevertheless, JST recently threatened to stop supplying the Connectors and prematurely terminate the Supply Agreements.

53.     JST's actions threaten the "just-in-time" supply chain for numerous General Motors programs, and Bosch's delivery of body control modules (using the Connectors) will halt *as early as June 20, 2015* if JST is permitted to cease shipment of the contracted Connectors.

54.     Bosch cannot obtain the Connectors from a substitute source in sufficient quantities and in sufficient time to prevent irreparable harm to Bosch and General Motors.

55.     As a direct result of JST's improper actions, the harm to Bosch is immediate, irreparable and not quantifiable (let alone easily quantifiable) by a court of law.

56.     There is no harm to JST by requiring the continued supply of Connectors in accordance with the parties' Supply Agreements.

57.     Every day that goes by when the Connectors are not being manufactured and prepared for delivery to Bosch intensifies Bosch's urgent predicament with General Motors.

58.     In the absence of injunctive relief, Bosch will suffer irreparable harm in the form of lost goodwill and permanent damage to its customer relationship.

WHEREFORE, Plaintiff requests that this Court enter the following orders:

9

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

a.  Temporary, preliminary, and permanent injunctive relief, under MCR 3.310(B), preventing JST from taking any action inconsistent with its supply obligations to Bosch;

b.  Temporary, preliminary, and permanent mandatory injunctive relief, under MCR 3.310(B), requiring JST to supply Bosch pursuant to the Supply Agreements to satisfy Bosch's reasonable requirements for the General Motors Programs specified in Paragraph 5 above;

c.  An award of legal fees and other costs arising out of JST's breach of contract; and

d.  All other relief that this Court deems just, equitable, or appropriate under the circumstances.

## COUNT III
## SPECIFIC PERFORMANCE

59.   Bosch incorporates by reference all preceding paragraphs.

60.   There is no adequate remedy at law for the harm caused by JST's actual and anticipatory breach of the Supply Agreements.

61.   Pursuant to MCL § 440.2716, Bosch is entitled to specific performance. Section 2716 states, in pertinent part, that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances."

62.   Proper circumstances exist here because Bosch is not able to obtain an alternative source of supply in sufficient quantities and in sufficient time to avoid irreparable harm.

WHEREFORE, Plaintiff requests that this Court enter the following orders:

a.  JST is ordered to supply Connectors to Bosch pursuant to the parties' Supply

10

Agreements; and

b.  JST is ordered to comply with the dispute resolution procedures agreed to in
the Supply Agreements.

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 West University Drive, Ste. 350
Rochester, Michigan, 48307
(248) 841-9400
twienner@wiennergould.com

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, Illinois 60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:  May 19, 2015

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

ROBERT BOSCH LLC,

      Plaintiff,                         Case No.                -CK

v.

                                           Hon.

J.S.T. MFG. CO., LTD.,

J.S.T. SALES AMERICA INC., and

J.S.T. Corporation,

      Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI  48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |

_____/

**VERIFICATION**

STATE OF MICHIGAN     )
                            ) §
COUNTY OF OAKLAND   )

     MARK FREEBOROUGH, Bosch Director of Project Management, Automotive

Electronics Division, being duly sworn, deposes and says that the deponent is an authorized

agent of Robert Bosch LLC, and the deponent verifies the foregoing **Verified Complaint for**

**Injunctive Relief, Specific Performance and Other Relief** for and on behalf of Robert Bosch

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

LLC, and is duly authorized to do so; that the matters stated therein, to the extent they are not within the personal knowledge of the deponent, have been assembled by authorized employees of Robert Bosch LLC, and the deponent is informed and believes that the facts stated therein are true.

_____
MARK FREEBOROUGH

Subscribed and sworn before me,
the 19 of May, 2015,

_____ Notary Republic
Oakland County, Michigan
My comm. expires: 12/24/2020

SUSAN M BREY
Notary Public - Michigan
Oakland County
My Commission Expires Dec 24, 2020
Acting in the County of _____

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Original – Court

| STATE OF MICHIGAN<br>6TH JUDICIAL CIRCUIT<br>COUNTY OF OAKLAND | NOTICE OF ASSIGNMENT TO THE<br>BUSINESS COURT | CASE NO. |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 1200 N Telegraph Rd    Pontiac, MI  48341 | 248-858-0345 |

| Plaintiff's name(s), address(es), and telephone number(s) | | Defendant's name(s), address(es), and telephone number(s) |
|---|---|---|
| ROBERT BOSCH LLC | v | J.S.T. MFG. CO., LTD.,<br>J.S.T. SALES AMERICA INC., and<br>J.S.T. CORPORATION |

| Plaintiff's attorney, bar no., address, telephone no., and email address | Defendant's attorney, bar no., address, telephone no., and email address |
|---|---|
| S. Thomas Wienner (P29233); Seth D. Gould (P45465)<br>Wienner & Gould, P.C., 950 W. University Dr., Ste. 350<br>Rochester, MI 48307    (248) 841-9400 | |

The ▣ Plaintiff ☐ Defendant  requests assignment of the above captioned matter to the Business Court.  The case qualifies for the Business Court and the matter should be identified as Business Court eligible pursuant to MCL 600.8031, MCL 600.8035, and LAO 2013-xx as indicated below. (Check all that apply.)

The case is a qualifying business or commercial dispute as defined at MCL 600.8031(c):  as

☒ All of the parties are business enterprises;

☐ One or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships;

☐ One of the parties is a nonprofit organization and the claims arise out of that party's organizational structure, governance, or finances;

☐ It involves the sale, merger, purchase, combination, dissolution, liquidation, structure, governance, or finances of a business enterprise.

The business or commercial dispute involves:

☐ Information technology, software, or website development, maintenance or hosting;

☐ The internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers;

☒ Contractual agreements or other business dealing, including licensing, trade secrets, intellectual property, antitrust issues, securities, non-compete agreements, non-solicitation agreements, and confidentiality agreements, if all available administrative remedies are completely exhausted, including, but not limited to alternative dispute resolution processes prescribed in the agreements;

☐ Commercial transactions, including commercial bank transactions;

☐ Business or commercial insurance policies; and/or

☐ Commercial real property.

☐ Other: (Please explaing)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

May 19, 2015
Date

/s/ S. Thomas Wienner (P29233)
Name

Attorney for: Plaintiff Robert Bosch LLC

OCBC 01 (05/13) **NOTICE OF ASSIGNMENT TO THE BUSINESS COURT**

# EXHIBIT A

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Corporate Purchasing Automotive



| Pricing Contract | 1/ 5 |
|---|---|

J.S.T. MFG. CO., LTD.
2-6-8 Shigino-Nishi
Joto-ku, Osaka-shi
Osaka 536-0014
JAPAN

| | |
|---|---|
| Contract-No. | K01MC12AB6/1 |
| Date: | 15.02.2013 |
| Supplier-No | 9801009939 |
| POrg/Purch.Grp | 4991/K01 |

When inquiring, please reference Contract No. above.

| | |
|---|---|
| Contact Person: | **Masayuki Nakahira** |
| Department: | **CP/ABE61** |
| Telephone: | **+49 (81) 48 470-1602** |
| Fax: | |
| EMail: | **Masayuki.Nakahira@jp.bosch.com** |

| | |
|---|---|
| **Valid from:** | **01.01.2012** |
| **Valid to:** | **31.12.2017** |
| **Version:** | **1 Valid from 01.01.2012** |

| | |
|---|---|
| Mailing address: | Bosch Corporation, CP Automotive, 3-6-7, Shibuya,Shibuya-ku, TOKYO 150-8360, Japan |
| Visitors address: | Bosch Corporation, CP Automotive, 3-6-7, Shibuya, Shibuya-ku, TOKYO 150-8360, Japan |

| | |
|---|---|
| Terms of delivery: | Special agreement |
| Terms of payment: | Special agreement |

Purchasing conditions

Bosch Corporation and its affiliates listed below are entitled to purchase the Components listed below from the supplier or any group company of the supplier (company directly or indirectly controlled by the supplier) according to the terms of this Pricing Contract. Any delivery under this Pricing Contract is subject to the provisions set out in the global Corporate Agreement* between the supplier and Bosch Corporation or one of its affiliates. If no Corporate Agreement exists, the Terms and Conditions of Purchase of Bosch Corporation shall apply. Such terms and conditions can be found in the internet at http://www.bosch.co.jp/en/rbjp/supplier_info/ in the download area of purchasing and logistics. Notwithstanding the foregoing, with respect to any delivery to any affiliate of Bosch Corporation located in the NAFTA region the Robert Bosch LLC Terms and Conditions of Purchase shall apply, which can be viewed on the internet under www.boschnasuppliers.com.

Unless otherwise agreed with supplier in writing the Agreement with Suppliers on Quality, Occupational Health and Safety, Environmental Protection and Social Responsibility (Quality Assurance Agreement) for Suppliers governs all deliveries under this Pricing Contract. It can be found under http://www.bosch.co.jp/en/rbjp/supplier_info/ in the download area of purchasing and logistics.

Deliveries may only be made based on rolling forecast order plans or purchase orders.

The supplier guarantees that it and its group companies comply with the provisions of the Bosch standard N2580 (version May 2011) which can be found in the internet at www.bosch.de in the download area of purchasing and logistics.

Corporate Purchasing Automotive



**Contract-No.**          K01MC12AB6 / 1/ 15.02.2013                                        **2/ 5**
J.S.T. MFG. CO., LTD.

**Competitiveness**
It is mutually agreed that BOSCH and the supplier will take all the necessary action to uphold the competitiveness of the contract products listed in the Pricing Contract
As regards technology, quality, price and delivery, the contract products must be at least equivalent to comparable products of competitors. Such a comparative product must meet BOSCH's requirement.
In the event that a comparable product is offered by third parties at a more economic price, BOSCH shall inform the supplier thereof in writing and set the supplier a reasonable period of time which shall take into account the scope of the measures which are probably required at the supplier in order to restore full competitiveness.
The supplier shall draft a plan of action to restore competitiveness without delay and shall present this to BOSCH. The plan of action shall also itemise the cost effectiveness of each individual action. For its parts, BOSCH undertakes to examine the plan, if applicable to point out any possible improvements to the supplier and to support the supplier in its implementation. Any trials and releases which may be required are to be conducted by BOSCH quickly or to be applied for at BOSCH's customers quickly.
The punctual presentation of a convincing concept to restore competitiveness and to put this into effect punctually constitute material contractual duties.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Corporate Purchasing Automotive



Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

**Contract-No.**    K01MC12AB6 / 1/ 15.02.2013                    **3/ 5**
J.S.T. MFG. CO., LTD.

---

**Material groups:**

P6600 NF-connectors
**Addresses of the participating Business areas, Plants and companies:**

---

3690    RBAC
        Bosch AutomotiveProducts (Suzhou) Co. Lt
        No.126 Su Hong Xi Lu; Suzhou Industrial Park
        CN 215021 SUZHOU, Jingsu
8640    JuP
        Robert Bosch LLC
        P.O. box 90 69
        MX 79982 Ciudad Juarez, Chih.

Corporate Purchasing Automotive



Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

**Contract-No.**    K01MC12AB6 / 1/ 15.02.2013                    **4/ 5**
J.S.T. MFG. CO., LTD.

| Pos. | Material Plant    Share | Price per unit |
|------|-------------------------|----------------|

**00001**  **6002.JE0.402**
"CONNECTOR; - HORIZO"
**RBAC**
Valid from 01.01.2012 to 31.12.2012
　　　　100%                    334.00 USD/ 100    PC
Valid from 01.01.2013 to 31.12.2013
　　　　100%                    331.60 USD/ 100    PC
Valid from 01.01.2014 to 31.12.2014
　　　　100%                    329.20 USD/ 100    PC
Valid from 01.01.2015 to 31.12.2015
　　　　100%                    326.80 USD/ 100    PC
Valid from 01.01.2016 to 31.12.2016
　　　　100%                    324.40 USD/ 100    PC
Valid from 01.01.2017 to 31.12.2017
　　　　100%                    322.00 USD/ 100    PC

**JuP**
Valid from 01.01.2012 to 31.12.2012
　　　　100%                    334.00 USD/ 100    PC
Valid from 01.01.2013 to 31.12.2013
　　　　100%                    331.60 USD/ 100    PC
Valid from 01.01.2014 to 31.12.2014
　　　　100%                    329.20 USD/ 100    PC
Valid from 01.01.2015 to 31.12.2015
　　　　100%                    326.80 USD/ 100    PC
Valid from 01.01.2016 to 31.12.2016
　　　　100%                    324.40 USD/ 100    PC
Valid from 01.01.2017 to 31.12.2017
　　　　100%                    322.00 USD/ 100    PC

Corporate Purchasing Automotive



**Contract-No.**    K01MC12AB6 / 1/ 15.02.2013    **5/ 5**
J.S.T. MFG. CO., LTD.

---

**Special terms of delivery/terms of payment for plant**

---

| | | |
|---|---|---|
| **3690** | **RBAC-AE** | |
| | Terms of delivery: | FOB Free on board<br>Shanghai |
| | Terms of payment: | Within 60 days Due net |
| **8640** | **JuP** | |
| | Terms of delivery: | FCA Free Carrier<br>Romulus MI (JST Warehouse) |
| | Terms of payment: | Net 15 Days |

Unless otherwise agreed in the Corporate Agreement this Pricing Contract and all agreements under this Pricing Contract and all disputes arising thereof shall be governed by Japanese law excluding the conflict of law provisions and the UN convention on Contracts for the International Sale of Goods (CISG). Unless otherwise agreed in the Corporate Agreement a district court covering the domicile of Bosch Corporation shall have the initial jurisdiction for all legal disputes arising out of or relating to this Pricing Contract.

Please confirm this contract through your signature and send the original copy back to us.

Bosch Corporation               Supplier

Date:        Signature:        Date:        Signature:

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# EXHIBIT B

**Robert Bosch LLC**



<u>**North American Terms and Conditions of Purchase**</u>

**Last revised September 1, 2010**

<div style="margin-left: 2em;">*(left margin, rotated)* Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25</div>

## 1.  General.

1.1    These North American Terms and Conditions of Purchase and any applicable Country Supplement (collectively, "POTCs") are incorporated into and form a part of the purchase order and/or scheduling agreement issued by Robert Bosch LLC and/or its North American affiliate(s) as specified in the purchase order and/or scheduling agreement, or revision thereof (the "***Order***").    The Order shall also include any provisions incorporated by reference therein pursuant to Section 2.2 below. The terms "***Buyer***" and "***Seller***" refer to the entities designated as such on the attached purchase order and/or scheduling agreement.    The term "***Supplies***" refers to the supplies and/or services to be provided to Buyer by Seller as specified on the purchase order and/or scheduling agreement.

1.2    Seller acknowledges that Buyer is purchasing Supplies for use in a tiered supply chain, or under other circumstances in which timely manufacture and delivery is required, and that Buyer is relying upon Seller's agreement to timely manufacture and deliver to Buyer the Supplies at the price, in the quantities and on the other terms and conditions stated in the Order to allow Buyer to fulfill its contract to sell goods which incorporate the Supplies to Buyer's Customer (as defined in Section 2.2).    Accordingly, Seller may not terminate the Order before expiration.    In the event Seller requests that Buyer resource the Supplies from Seller to a new supplier, Buyer may in its sole and absolute discretion refuse such request for any reason, including a refusal of such request at the direction of Buyer's Customer, in which case Seller must fully and faithfully perform its obligations under the Order for the remaining term of the Order. In the event Buyer elects to resource the Supplies to a new supplier in accordance with Seller's request, Seller shall (i) cooperate in all respects with the transition to the new supplier including, allowing Buyer, the new supplier and/or their respective agents to inspect the then current production processes being utilized at Seller's facility, granting to the new supplier a non-exclusive, royalty-free license to use any technology reasonably necessary (in Buyer's sole determination) for the new supplier to manufacture and sell Supplies to Buyer, and the removal from Seller's facilities of all Buyer-owned tooling (including manuals, logs and the like); (ii) reimburse Buyer for any PPAP (as defined in Section 6.1) costs that it may incur as a result of the resourcing; (iii) pay to Buyer the present value of any increased price for the Supplies over the expected life of the program prior to the time of resource; and (iv) fully comply with the provisions of the Order relating to the transition of supply, including as set forth in Section 16 below.

## 2.  Terms of the Order; Offer/Acceptance.

2.1    The Order is an offer by Buyer to purchase the Supplies from Seller on the terms of the Order.  The Order is effective, and a binding contract is formed, when Seller accepts the offer prior to the expiration of two (2) weeks following Buyer's delivery of the Order to Seller. Buyer shall have the right to rescind the Order at anytime prior to Seller's acceptance. Seller shall be deemed to have accepted the Order upon the earliest of: (a) Seller commencing work or performance with respect to any part of the Order; (b) Seller delivering written acceptance of the Order to Buyer; or (c) any conduct by Seller that fairly recognizes the

existence of a contract for the purchase and sale of the Supplies. **The Order is limited to and conditional upon Seller's acceptance of the terms of the Order.**  The Order does not constitute an acceptance of any offer, quote or proposal made by Seller, and Seller acknowledges and agrees that: (i) a request for quotation or similar document issued by Buyer is not an offer by Buyer; and (ii) any response by Seller to a request for quotation or similar document issued by Buyer is not an offer by Seller.  In the event Seller accepts Buyer's Order other than by written acceptance pursuant to subsection (b) above, Buyer may cancel the Order in its sole and absolute discretion, without payment of any kind to Seller, if Seller refuses to provide written acceptance of the Order within two (2) business days following Buyer's written or oral request for such confirmation.  Any additional or different terms proposed by Seller, whether in Seller's quotation, acknowledgement, invoice or otherwise, are unacceptable to and expressly rejected by Buyer, and are hereby waived by Seller and are not part of the Order.  However, any proposed modification of the terms of the Order by Seller shall not operate as a rejection of the Order if Seller commences work or is otherwise deemed to have accepted Buyer's offer as provided above, in which case the Order shall be deemed accepted by Seller without any such proposed modifications.  Any reference in the Order to Seller's quote or other prior communication shall not imply acceptance of any term, condition or instruction but is solely to incorporate the description or specifications of the Supplies, but only to the extent that such description or specifications are not in conflict with the description and specifications in the Order.  If the Order is found to be an acceptance of any prior offer or proposal by Seller, such acceptance shall be limited to and conditional upon Seller's acceptance of the terms of the Order.

2.2    The following documents are incorporated into and shall be part of the Order: (i) any executed supply agreement between Buyer and Seller; (ii) Material Releases (as defined in Section 4.1 below) issued by Buyer to Seller under the Order; (iii) prints and specifications for the Supplies; (iv) Buyer's policies, as revised by Buyer from time to time; and (v) any written agreement between Buyer and Seller which provides therein that it shall be part of the Order.  As used herein, the term "Buyer's policies" includes any statement of work applicable to the Supplies, quality assurance documents, logistics guidelines, packaging specifications, Seller's Manuals, Buyer's Quality Assurance Guideline for Sellers, Buyer's Logistics Manual, and Buyer's Delivery and Packaging Specifications, including but not limited to amendments or modifications to Buyer's policies as may be implemented by Buyer during the term of the Order.  Buyer's policies may be obtained by contacting Buyer's assigned purchasing representative or by accessing Buyer's internet website ("**Buyer's Website**") at www.BoschNASuppliers.com, or its successor website.  The purchasing terms and conditions of Buyer's Customer (as defined below)  will also be incorporated into and shall be part of the Order. "**Buyer's Customer**" means any entity to which Buyer, directly or indirectly, sells the Supplies, or sells any goods or services into which the Supplies are incorporated, including any original equipment manufacturer and any upper tier supplier to an original equipment manufacturer.  Although Buyer may, from time to time and in its sole discretion, provide Seller with certain information regarding the applicable Buyer's Customer's terms and conditions, it is Seller's responsibility to

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

determine if, and how, the Buyer's Customer's terms and conditions may affect Seller's obligations to Buyer and Buyer's Customer.

2.3    In the event of any ambiguities, express conflicts or discrepancies in the specification, drawings or other documents which are part of the Order, Seller shall immediately submit the matter to Buyer for its determination and the parties shall resolve the matter in mutual agreement.

2.4    This POTC applies to all Orders, including those with Sellers that Buyer's Customer has directed, recommended, requested, suggested or otherwise identified to Buyer as a source of the Supplies. Such "Sellers" and "Buyer's Customer", as provided under this Section 2.4, are hereinafter referred to as "**Directed Sellers**" and "**Directing Customers**", respectively.

2.5    The terms of each Order may include and where indicated are superseded by the Country Supplement for the country from which the Order is issued, or as specifically indicated in the Order, the country in which Seller is located.

2.6    The parties acknowledge that the Order, the POTCs and all documents related to them that are prepared in the English language will be interpreted and enforced in the English language. For purposes of reference only, translated versions of the POTCs have been prepared.

### 3.    Quantity.

3.1    Unless otherwise stated in the Order, the Order is a requirements contract under which Buyer shall purchase all or a specified percentage of Buyer's requirements (as determined solely by Buyer) of Supplies from Seller for the time period specified in the Order or, in the case of Supplies used in motor vehicle manufacturing, unless otherwise specified in the Order, for the length of the applicable vehicle manufacturer's program production life (including model refreshes as determined by the vehicle manufacturer). If the Order states that it is a blanket order, Buyer commits to purchasing from Seller each of the Supplies and no more than 100% of Buyer's requirements of the Supplies. Under no circumstances shall Buyer be required to purchase from Seller more than 100% of Buyer's requirements for the Supplies or, except as otherwise stated herein, any specific volume or percentage of Buyer's requirements for the Supplies.

3.2    From time to time Buyer may provide Seller with volume and/or quantity forecasts or projections for Buyer's Supplies needs or the anticipated duration of the program, if any, for which the Supplies are being produced. Seller acknowledges that the volume/duration projections, unlike a Material Release, are not binding on Buyer. Seller acknowledges and agrees that (i) the volume/duration projections may be based upon information supplied to Buyer by Buyer's Customer, contain variables and assumptions, some or all of which may change over time, may not have been accurate at the time that they were made, and/or are beyond the control of Buyer, (ii) Buyer makes no representation, warranty or guaranty of any kind or nature whatsoever as to the accuracy of the volume/duration projections, (iii) Buyer shall not have any obligation to correct or update any volume/duration projection (iv) the actual volumes/duration of Buyer's Supplies needs could be materially more or less than what was projected, and (v) Seller's reliance upon a volume/duration projection is at its own risk.

3.3    Buyer may require Seller, at Seller's expense, to participate in electronic data interchange or similar inventory management program for notification of Material Releases, shipping confirmation and/or other information relating to the Order.

### 4.    Delivery; Material Releases.

4.1    Seller shall manufacture and ship Buyer's requirements for the Supplies in such quantities and at such time as identified by Buyer as firm orders in scheduling agreements, manifests or other similar releases ("**Material Releases**") that are transmitted to Seller from time to time during the term of the Order, and after consideration by Buyer of agreed upon lead times. Material Releases are incorporated into, and are an integral part of, the Order and are not independent contracts. No charge shall be allowed for packing, shipment or handling unless otherwise stated in the Order. All Supplies received in excess of the quantities in a Material Release shall be subject to return for credit at Seller's expense.

4.2    Time and quantities are of the essence under the Order. Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer as contained on the Material Releases. Buyer is not obligated to accept early deliveries, late deliveries, partial deliveries, excess deliveries or any other delivery that is not a 100% on-time delivery ("**Nonconforming Deliveries**"). If Buyer elects in its sole and absolute discretion to accept one or more Nonconforming Deliveries, such acceptance shall not constitute a waiver of Buyer's right to reject any other shipment which does not conform to the Material Release.

4.3    Buyer may change the delivery rate of previously scheduled shipments or direct temporary suspension of scheduled shipments from time to time in its sole and absolute discretion, neither of which actions shall entitle Seller to modify Seller compensation, price or other terms or conditions set forth in the Order. If, as the result of any of Seller's acts or omissions, Seller shall fail to timely meet Buyer's delivery requirements and more expeditious methods of transportation for the Supplies are available, Seller shall ship the Supplies by a transportation method that will meet Buyer's requirement or, if that is not possible, by the most expeditious transportation method possible. In either such case, Seller shall be solely responsible for any incremental costs due to the more expeditious transportation method.

4.4    Unless otherwise agreed upon, all pricing and shipments are to be made DAP (as defined in *Incoterms 2010* published by the International Chamber of Commerce) to Buyer's designated destination.

4.5    Seller warrants full and unrestricted title to Buyer for the Supplies delivered by Seller, free and clear of any and all liens, restrictions, reservations, security interests or encumbrances.

4.6    Upon written request by Buyer, Seller shall manufacture Supplies in excess of Buyer's current requirements as a reserve for shipment at such levels as may be set by Buyer from time to time in its sole and absolute discretion, for such reasons including an anticipated or actual inadequacy of supply, or other uncertainty relating to the supply or delay in the performance of Seller's obligations. Until such reserve Supplies are purchased by Buyer, they shall remain the property of Seller and shall be held by Seller at its sole risk and expense.

4.7    If Seller is responsible for set-up or installation under the Order, Seller shall bear all of the necessary and incidental costs, including, without limitation travel and living expenses and provision of tools and the like to accomplish Seller's obligations under the Order.

4.8    Seller shall comply with the Bosch Logistics Manual and the Delivery and Packing Specifications, as they may be changed or updated from time to time by Bosch in its sole discretion. Seller shall: (i) properly pack, mark, and ship Supplies according to the requirements of Buyer, the involved carriers and the country of destination; (ii) route all shipments according to Buyer's instructions; (iii) label or tag each package according to Buyer's instructions; (iv) provide papers with each shipment showing the

<div style="writing-mode: vertical">Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25</div>

Order number, amendment or release number, Buyer's part number, Seller's part number (where applicable), number of pieces in the shipment, number of containers in the shipment, Seller's name and number, and the bill of lading number; and (v) promptly forward the original bill of lading or other shipment receipts for each shipment according to Buyer's instructions and carrier requirements. Buyer's count shall be accepted as final and conclusive on shipments not accompanied by Seller's itemized packing list. Partial shipments, if authorized by Buyer, shall not be construed as making the obligations of Seller severable. In the case of Supplies for use in motor vehicle manufacturing, if Buyer provides no packing requirements, Seller shall pack the Supplies in accordance with the applicable Automotive Industry Action Group packing standards.

4.9     Seller shall comply with the Bosch Norm N2580, as it may be changed or updated from time to time by Bosch in its sole discretion. Seller shall promptly provide Buyer with the following information in the form requested by Buyer: (i) a list of all substances or materials in Supplies; (ii) the amount of all substances or materials, and (iii) information concerning any changes in or additions to the substances or materials. Before Supplies are shipped, Seller shall give Buyer sufficient warning in writing (including appropriate labels on all Supplies, containers, and packing, including, without limitation disposal and recycling instructions, material safety data sheets and certificates of analysis) of any hazardous or restricted material that is a substance or material or is otherwise part of the Supplies, together with any special handling instructions that are needed to advise carriers, Buyer, and their respective employees or others handling the Supplies how to take appropriate measures while handling, transporting, processing, using or disposing of the Supplies, containers, and packing to best prevent bodily injury or property damage. Seller shall comply with all national, state, provincial, and local laws and regulations pertaining to product content and warning labels, including but not limited to the U.S. Toxic Substances Control Act and European Union Directive 2000/53/EC or any successor law.

**5.     Price; Payment Terms.**

5.1     The purchase price for the Supplies is set forth in the Order and is in U.S. Dollars unless otherwise stated. Unless otherwise stated in the Order, the purchase price: (i) is a firm fixed price for the duration of the Order and not subject to increase for any reason, including but not limited to increased raw material costs, increased labor or other manufacturing costs, increased development costs, currency fluctuations or changes in volumes or program length from those estimated or expected; (ii) is inclusive of all federal, state, provincial, value added and local taxes and any duties applicable to provision of the Supplies; and (iii) is inclusive of all storage, handling, packaging and all other expenses and charges of Seller. Seller shall separately invoice Buyer for any sales, value added, or similar turnover taxes or charges that Seller is required by law to pay or collect from Buyer.

5.2     Invoices shall be issued by Seller to Buyer no earlier than delivery of the Supplies to Buyer. Seller shall, at its sole expense, comply with Buyer's instructions and then current policies with respect to the form, content and method for submission of invoices. Seller shall promptly submit correct and complete invoices or other agreed upon billing communications with appropriate supporting documentation and other information reasonably required by Buyer after delivery of Supplies.

5.3     Unless otherwise stated in the Order, Buyer shall pay invoices for Supplies which are properly presented and not subject to dispute according to the terms stated in the Order. If no terms are stated in the Order, Buyer shall pay net fifty-five (55) days after the later of (i) the Supplies being received and accepted at Buyer's facility, or (ii) Buyer's receipt of Seller's

invoice. Buyer may withhold payment until a correct and complete invoice or other required information is received and verified. If the payment date is not a business day, payment shall be due the next business day thereafter. Payment shall be deemed to occur upon transmittal by Buyer of any paper draft or Buyer's wire transfer of payment into the account of Seller.

5.4     Seller acknowledges and agrees that Seller's financial condition, insolvency and/or failure to timely pay its suppliers or other creditors may create a disruption in the supply chain. In the event Buyer elects in its sole and absolute discretion to pay any of Seller's obligations in order to avoid or cure a disruption in the flow of Supplies to Buyer, Buyer shall have the right to withhold from and setoff against any funds due to Seller from Buyer the aggregate amount paid in respect of Seller's obligations and, if such right of setoff is insufficient for Buyer to immediately recover all such amounts, Seller shall pay to Buyer the remaining balance within ten (10) days of Buyer's payment. If Seller becomes a debtor in bankruptcy or surrenders its assets to a lender or state court receiver and, Buyer, to obtain and/or continue the continuous flow of Supplies, participates in a post petition (or post surrender) loan to Seller, Seller acknowledges and agrees that the funds advanced to participate in the loan (including attorneys fees) shall be deemed "cover" damages within the meaning of section 2-712 of the Uniform Commercial Code.

5.5     The Supplies purchased under the Order, which are not services, are identified as industrial processing and may be exempt from sales taxes. In such case, the tax identification number and/or other exemption information shall be stated in the Order or otherwise provided by Buyer.

5.6     Payment for Supplies shall not constitute acceptance of nonconforming Supplies, nor shall it limit or affect any rights or remedies of Buyer.

**6.     Quality.**

6.1     Seller shall comply with the Bosch Quality Assurance Guideline for Suppliers (QSL), as it may be changed or updated from time to time by Bosch in its sole discretion. Seller shall conform to all quality control and other standards and inspection systems as established or directed by Buyer and its customer for Supplies and services similar to the Supplies. These include without limitation quality control policies, ISO 9001:2000 or ISO/TS 16949:2002 quality certification, OHSAS 18001 health and safety certification and ISO 14001 environmental certification including registration. Seller shall also participate in Buyer's and/or Buyer's Customer's supplier quality and development programs as directed by Buyer. For Supplies used in motor vehicle manufacturing, Seller agrees to meet the full requirements of industry Production Part Approval Processes ("**PPAP**") as specified by Buyer and (as applicable) Buyer's Customer and agrees to present this information to Buyer upon request, at the level requested. If any of the standards, policies or systems cited above are amended, supplemented or replaced, Seller shall comply with such changes.

6.2     Seller is responsible for the performance and quality of all of its suppliers from which Seller obtains supplies or services it uses to produce Supplies, including suppliers that Buyer and/or Buyer's Customer has directed, recommended, requested, suggested or otherwise identified to Seller as a supplier from which Seller should obtain supplies. Seller shall maintain adequate development, validation, testing, launch and on-going supervision to assure that all Supplies sold to Buyer conform to all specifications, standards, prints, samples and descriptions set forth in the Order, including as to performance, fit, form, function, PPAP processes and materials, if applicable, and appearance. In the event that Seller ships any Supplies which are nonconforming or breach the warranties of Section 7 below, Buyer may require

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Seller, at Seller's sole cost and expense, to inspect the Supplies in such a manner (including the use of a third party inspector or sorter) as Buyer determines will insure that all future Supplies will conform to the Order. Any inspection or testing, the lack thereof, or lack of response shall in no way release Seller from any quality or warranty obligations under the Order.

6.3    Buyer reserves the right at any reasonable time to inspect, witness, review or otherwise audit Seller's quality assurance and quality control procedures. Buyer shall have access to all parts of Seller's plant(s) and/or Seller's supplier's plant(s) engaged in the manufacturing or processing of Supplies in order to inspect, witness, review or otherwise audit the quality control processes being utilized at such plant(s). Seller shall furnish to Buyer the status of engineering, material procurement, production and shipping information upon request.

6.4    If defective or nonconforming Supplies are rejected by Buyer, the quantities under the Order shall be correspondingly reduced unless Buyer otherwise notifies Seller, and Seller shall not replace reduced quantities without a new Material Release from Buyer directing it to do so. Following rejection of nonconforming Supplies, Seller shall in Buyer's sole and absolute discretion, without prejudice to any other right or remedy of Buyer: (a) accept the return, at Seller's sole expense, of the Supplies and refund to Buyer the full invoice price plus all transportation and other charges associated with the nonconforming Supplies; (b) replace the non-conforming Supplies with conforming Supplies, with all associated costs and expenses, other than the original invoice and shipping prices, being borne by Seller; or (c) at Seller's sole expense, correct at any time prior to shipment from Buyer's plant Supplies that fail to meet the requirements of the Order.

6.5    Promptly upon learning of defective or nonconforming Supplies, Seller shall develop, document and implement corrective actions designed to ensure that all Supplies are produced in accordance with all applicable quality control policies and standards of Buyer and Buyer's Customer. Seller shall immediately notify Buyer in writing when it becomes aware of any raw material, component, design or defect in the Supplies that is nonconforming or may be or become harmful to persons or property.

## 7.    Warranty.

7.1    In addition to any other express or implied warranties provided by law or otherwise, Seller warrants to Buyer, Buyer's Customer and their respective customers, successors and assigns that the Supplies when delivered to Buyer shall: (i) be new and conform in all respects to the Order and to all specifications, drawings, samples and other descriptions furnished by Buyer or otherwise obtained by Seller; (ii) be free from all defects in design, workmanship and/or materials and be of highest quality and workmanship; (iii) be selected, designed, manufactured, assembled and packaged by Seller based upon Buyer's stated use and be fit and sufficient for the purposes intended by Buyer as evidenced in the Order and in the drawings and specifications referred to herein; (iv) conform to all applicable laws in countries where the Supplies (or Buyer's goods into which the Supplies are incorporated) are to be sold, including in the case of Supplies used in connection with the manufacture of motor vehicles, the National Traffic and Motor Vehicle Safety Act, all United States and European Union motor vehicle safety and end-of-life standards; (v) for all Supplies which consist of services, Seller further warrants that its work shall be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed to with Buyer and otherwise consistent with the highest industry standards.

7.2    All warranties of Seller extend to future performance of the Supplies and are not modified, waived or discharged by delivery, inspection, tests, acceptance and/or payment. Buyer's

approval of any design, drawing, material, process or specifications shall not relieve Seller of these warranties. Seller waives any right to notice of breach. The warranties in this Section 7 are intended to and shall provide Buyer with protection from any and all warranty claims brought against Buyer by Buyer's Customer and their respective customers, successors and assigns, relating in any manner to the Supplies.

7.3    The warranty period shall run to the latest of the following: (i) four (4) years from the date Buyer accepts the Supplies; (ii) the warranty period provided by applicable law; (iii) the warranty period offered by Buyer to Buyer's Customer; or (iv) the warranty period Buyer's Customer offers to end-users of the products **or** for the products into which the Supplies are incorporated.

7.4    At Buyer's request, Seller shall fully participate in any root cause investigation or analysis conducted by Buyer and/or Buyer's Customer relating in any manner to the failure of the Supplies and provide all information requested by Buyer concerning the Supplies. In the event that the root cause analysis of a warranty failure is inconclusive but implicates the Supplies, the extent of Seller's liability shall be based upon a good faith allocation by Buyer of the responsibility for the warranty failure.

7.5    In the event that Buyer or Buyer's Customer voluntarily or pursuant to a government mandate, makes an offer to end-users to provide remedial action to address a defect or nonconforming condition of the Supplies or any of Buyer's goods incorporating the Supplies, in connection with a recall campaign, service action or other corrective action (**"Remedial Action"**), the warranty shall continue for such time period as may be dictated by Buyer's Customer or the government unit.

## 8.    Remedies; Indemnification Obligation.

8.1    The rights and remedies reserved to Buyer in each Order shall be cumulative with and in addition to all other or legal or equitable remedies available to Buyer. Seller is liable for all damages incurred by Buyer, including but not limited to compensatory, indirect, special, punitive, exemplary or consequential (as opposed to compensatory) damages, including damages for lost profits or other damages directly or indirectly related to profits, fines, penalties, charges, assessments or other costs, incurred by Buyer as a result of Seller's (i) breach of any representation or warranty set forth in the Order; (ii) failure to timely deliver conforming or otherwise non-defective Supplies; (iii) failure to comply with the shipping and/or delivery or other requirements of Buyer; and/or (iv) failure to otherwise comply with the Order, even if Seller has cured the breach. Such damages shall include but not be limited to costs, expenses and losses incurred directly or indirectly by Buyer: (a) in connection with inspecting, sorting, storing, reworking, repairing or replacing the nonconforming Supplies; (b) resulting from production interruptions; (c) conducting or participating in Remedial Action(s) or other corrective service actions; or (d) resulting from personal injury (including death) or property damage caused by the nonconforming Supplies. Buyer's damages include reasonable attorneys' fees and other professional fees, settlements and judgments incurred by Buyer and other costs associated with Buyer's administrative time, labor and materials.

8.2    In any action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies or Transition Support (as defined in Section 16.1), for any deviation from an applicable PPAP (in the case of Supplies for use in motor vehicle manufacturing) and/or for possession of property, Seller acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipated or threatened breach of the Order and that, in addition to all other rights and remedies that Buyer may have, Buyer shall be entitled to specific performance including injunctive or other equitable

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

relief as a remedy for any such breach, in addition to recovery of Buyer's reasonable attorneys' fees and expenses.

8.3 If requested by Buyer, Seller shall enter into a separate agreement for the administration or processing of warranty charge-backs for nonconforming Supplies, and shall fully participate in and comply with warranty reduction or related programs of Buyer or Buyer's Customer that relate to the Supplies.

8.4 If the Supplies or goods sold by Buyer which incorporate the Supplies are subject to a Remedial Action (as defined in Section 7.5), the extent of Seller's liability shall be based upon a good faith allocation by Buyer of responsibility for the Remedial Action. Buyer shall notify Seller as soon as practicable after Buyer learns in writing that a Remedial Action being considered implicates the Supplies, and thereafter provide Seller with the data provided to it by Buyer's Customer relating to the potential Remedial Action. In the event Buyer's Customer sets-off the cost of a Remedial Action against sums due to Buyer and Buyer and/or Buyer's Customer determines, in good faith, that the Remedial Action was caused by the failure of the Supplies to conform to the quality standards and/or warranties in Sections 7 and 8 hereof, in whole or in part, Buyer may set-off the costs to Buyer of the Remedial Action against sums due to Seller prior to the allocation of responsibility set forth above.

8.5 To the fullest extent permitted by law, (i) Seller hereby assumes the entire, sole responsibility for any injury to person, including death, or damage to property of any kind or nature caused by, resulting from or in connection with the furnishing of Supplies by Seller or anyone acting on its behalf; (ii) Buyer shall not be responsible for any injury to person (including death) or damage to any property resulting from Seller's possession, use, misuse or failure of any equipment, tooling or other property of Buyer furnished to Seller, and the use of any such property by Seller shall constitute acceptance by Seller of all responsibility for any claims for such injury or damage, and (iii) Seller shall defend, indemnify and hold harmless Buyer, Buyer's Customer and the end-users of the products sold by Buyer or the end users of the products which incorporate the Supplies (or, if applicable, the vehicles in which such products are incorporated) and all of their respective agents, customers, invitees, subsidiaries, affiliates, successors and assigns, against all damages, losses, claims, liabilities and expenses (including reasonable attorneys' and other professional fees, settlements and judgments) arising out of or resulting from any defective Supplies, or from any negligent or wrongful act or omission of Seller or Seller's agents, employees or subcontractors, or any breach or failure by Seller to comply with any of Seller's representations or other terms and conditions of the Order (including any part of this POTC) including the cost of Remedial Actions.

8.6 If Seller performs any work on Buyer's premises or utilizes the property of Buyer, whether on or off Buyer's premises: (i) Seller shall examine the premises to determine whether they are safe for the requested work and shall advise Buyer promptly of any situation it believes to be unsafe; (ii) Seller's employees, contractors, and agents shall comply with all laws and regulations that apply to the premises and if so requested, must leave Buyer's premises at Buyer's sole and absolute discretion; (iii) Seller's employees, contractors, and agents shall not possess, use, sell, transfer or be under the influence of alcohol or unauthorized, illegal, or controlled drugs or substances on the premises; and (iv) to the fullest extent permitted by law, Seller shall indemnify and hold Buyer and its agents, successors and assigns, harmless from and against any liability, claims, demands or expenses (including reasonable attorneys' and other professional fees, settlements and judgments) for damages to the property of or personal injuries (including death) to Buyer, its employees or agents, or any other person or entity to the extent arising from or

in connection with Seller's work on Buyer's premises or Seller's use of Buyer's property.

8.7 Seller's obligations under this Section 8 to defend and indemnify shall apply regardless of whether the claim arises in tort, negligence, contract, warranty, strict liability or otherwise and, to the maximum extent permitted by applicable law, Seller's indemnification obligations shall apply even as to losses caused in whole or in part by an indemnified party's negligence, except to the extent that losses resulted solely and directly from the gross negligence or willful misconduct of such indemnified party. Buyer has the right to be represented by and actively participate through its own counsel in the defense and resolution of any indemnification matters, at Seller's expense. The indemnification obligations of Seller set forth in this Agreement, including this Section, are independent of and in addition to any insurance and warranty obligations of Seller. The indemnification obligation under this Section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the benefit of Seller under Workers' Compensation Acts, or laws governing occupational diseases, disability benefits or other employee benefits.

### 9. Changes.

9.1 Buyer reserves the right at any time, by written notice to Seller, to make changes, or to require Seller to make changes, to drawings, specifications, sub-suppliers, samples or descriptions of Supplies. Buyer also reserves the right to otherwise change the scope of the work covered by the Order, including work with respect to such matters as inspection, testing or quality control. Buyer may also require Seller to source the supply of raw materials either from itself or from specified third parties. Seller shall promptly make any such requested change.

9.2 In order for Seller to request a reasonable difference in price or time for performance as a result of a change described in Section 9.1, Seller must notify Buyer of its request in writing within ten (10) days after receiving notice of the change. Buyer can request additional documentation from Seller relating to any change in specifications, price or time for performance. After receiving all requested documentation, Buyer, in consultation with Seller, may equitably adjust the price or time for performance. If Seller does not provide timely notice to Buyer that a requested change may result in a difference in price or time for performance, Buyer's requested change shall not affect the price or time for performance.

9.3 Seller shall not make any change relating to Supplies, including without limitation, in the Supplies' contents, design, specifications, processing, packing, marking, shipping, price or date or place of delivery, except at Buyer's written instruction or with Buyer's prior written approval.

9.4 For Supplies used in motor vehicle manufacturing, upon PPAP approval for the Supplies, Seller must continue to manufacture the Supplies in strict compliance with the PPAP approval and may not change or alter in any manner (i) any third party supplier to Seller of the services, raw materials or Supplies used by Seller in connection with its performance under the Order, (ii) any facility from which Seller and/or any such third party supplier operates and that relates in any way to the Supplies, or to services, raw materials or Supplies used by Seller in connection with performance under the Order, (iii) the price of any Supplies covered by the Order, (iv) the nature, type or quality of any services, raw materials or Supplies used by Seller or its suppliers in connection with the Order, (v) the fit, form, function, appearance or performance of any Supplies covered by the Order, or (vi) the facility at which the Supplies are produced, production method, or any process or software, or any production equipment used in the production or provision of, or as part of,

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

any Supplies under the Order. Seller acknowledges that any change in the Supplies from the approved PPAP level may materially and detrimentally affect the functionality of Buyer's products which incorporate the Supplies and may also affect the safe or required operation of the vehicle in which the assembly is installed. Accordingly, in addition to a breach of the Order, Seller agrees that the potential harm of using non-PPAPed Supplies constitutes irreparable injury and that Buyer is entitled to a preliminary injunction prohibiting any deviation from PPAP.

9.5    For Supplies used in motor vehicle manufacturing, Seller may seek approval from Buyer for changes in the materials, process or manufacture of the Supplies after PPAP. Buyer may deny its approval for any change for any reason. As a condition precedent to seeking any change or PPAP deviation from Buyer, Seller must: (i) agree to pay all of the costs involved in re-PPAPing the Supplies including any testing which may reasonably be requested by Buyer and/or Buyer's Customer; (ii) agree not to change the price charged to Buyer for the Supplies and that all future price decreases previously agreed to by Seller shall be implemented; (iii) manufacture a bank of PPAPed Supplies in such quantities as Buyer may require for a successful transition; (iii) support Buyer in PPAPing the Supplies; (iv) abide by the decision of the vehicle manufacturer whether to allow deviation from PPAP as final and binding; and (v) fulfill all of the requirements imposed by the vehicle manufacturer and/or Buyer's Customer on Buyer including payment and/or reimbursement to Buyer for any costs reductions.

## 10.    Service Parts.

10.1    For Supplies used in the manufacture of motor vehicles, for a period of fifteen (15) years after Buyer completes current model purchases for its Customer or such longer time as may be required of Buyer by Buyer's Customer, and for Supplies not used in the manufacture of motor vehicles, for a period of twelve (12) years after Buyer purchases the Supplies, Seller shall sell to Buyer the quantity of Supplies needed to fulfill Buyer's Customer's past model service and replacement requirements ("**Service Parts**"). All such parts shall be sold at the last price specified in the latest revision of the Order plus the actual cost differentials for packaging, materials and manufacturing as a result of service volume levels but in no case to exceed twenty (20%) percent of the price for the last production year. During the fifteenth (15th) year of such period, Buyer and Seller shall negotiate in good faith with regard to Seller's continued manufacture of Service Parts.

10.2    At Buyer's request, Seller shall make service literature and other materials available at no additional charge to support Buyer's Service Parts sales activities. Unless otherwise expressly agreed in writing by an authorized representative of Buyer, or unless Buyer removes Tooling (as defined in Section 19.1) from Seller necessary for the production of Service Parts, Seller's obligations under this Section shall survive termination or expiration of the Order for any reason.

## 11.    Directed Sellers.

11.1    If Seller is a Directed Seller: (a) Buyer shall pay Seller for the Supplies only following and to the extent of Buyer's actual receipt of payment from the Directing Customer for Buyer's products in which the Supplies are incorporated; (b) any lengthening of any payment terms by the Directing Customer shall automatically lengthen the payment terms to Seller by like amount; (c) within three (3) business days of any change in price, specifications or other terms negotiated or proposed between Seller and the Directing Customer, Seller shall notify Buyer in writing and shall immediately adjust its invoices to reflect any price reduction, provided however that no increase in price shall be binding on Buyer without Buyer's written consent and a

commitment by the Directing Customer to pay Buyer an proportionally increased price for Buyer's products sold to the Directing Customer which incorporate Supplies.

## 12.    Customs Regulations.

12.1    For Supplies imported into the United States and Mexico, Seller shall comply with all applicable recommendations or requirements of the United States Bureau of Customs and Border Protection's ("**U.S. Customs**"), including but not limited to the Customs-Trade Partnership Against Terrorism ("**C-TPAT**") initiative (for information go to http://www.cbp.gov/ and find the link to the C-TPAT section). At Buyer's or U.S. Customs' request, Seller shall certify in writing its compliance with C-TPAT and with all other applicable U.S. Customs laws and regulations. Seller shall provide both Buyer and U.S. Customs access to Seller's facilities for the purpose of auditing Seller's compliance with the foregoing. If the Supplies are transported via ocean carrier into the United States, Seller must also comply with U.S. Customs' Importer Security Filing ("**ISF**") and provide the necessary data to the freight forwarder selected by Buyer who will act as Buyer's agent for filing of the ISF. Seller shall cause all data required for the ISF to be in the freight forwarder's possession not later than twenty four (24) hours before the Supplies are loaded onto the ocean carrier or such earlier time as the freight forwarder may require. Neither Buyer nor its agents shall be responsible for modifying ISFs after the Supplies are loaded onto the ship. On and after January 1, 2010, any Supplies which receive any U.S. Customs response other than "accepted" shall be deemed to be rejected by Buyer.

12.2    For Supplies imported into Canada, Seller shall comply with all applicable recommendations or requirements of the Canada Customs and Revenue Agency, including but not limited to the laws, regulations and other requirements of the Agency's initiative Partner's in Protection (for information go to http://www.craadrc.gc.ca/customs/general/enforement/partners/m enu-e.html). At Buyer's or the Canadian Customs and Revenue Agency's request, Seller shall certify in writing its compliance with the foregoing.

12.3    Seller shall obtain all export licenses or authorizations necessary for the export of Supplies, unless otherwise set forth in the Order, in which case Seller shall promptly provide to Buyer all information necessary to enable Buyer to obtain the licenses or authorizations. Seller shall promptly notify Buyer in writing of any material or components incorporated in the Supplies that Seller purchases in a country other than the country in which the Supplies are delivered. Seller shall furnish any and all documentation and information necessary to establish the country of origin or to comply with the applicable country's rules of origin requirements. Seller shall promptly advise Buyer of any material or components imported into the country of origin and any duty included in the Supplies' purchase price. If Supplies are manufactured in a country other than the country in which Supplies are delivered, Seller shall mark Supplies "Made in [country of origin]." Seller shall provide to Buyer and the appropriate governmental agency the documentation necessary to determine the admissibility and the effect of entry of Supplies into the country in which Supplies are delivered. Seller warrants that any information that is supplied to Buyer about the import or export of Supplies is true and that all sales covered by the Order shall be made at not less than fair value under the anti-dumping laws of the countries to which the Supplies are exported.

12.4    Supplies and the containers into which they are placed for shipment shall be marked in accordance with all U.S. laws including but not limited to 19 CFR §134 (as amended from time to time). Scientific and laboratory instruments shall be legibly and conspicuously marked by die-stamping, case-in-the-mold

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

lettering, acid or electrolytic etching, engraving, or by means of metal plates securely attached to the Supplies in a conspicuous place by welding, screws, or rivets. If the Supplies cannot be marked as specified above, any method of legible and conspicuous marking is acceptable provided it is calculated to, and does, require a deliberate and persistent effort to remove such marks of origin. Seller shall also be responsible for compliance with additional regulations and guidelines regarding supply chain security published by US Customs, the Canada Customs and Revenue Agency, and any other government or agency, including the Security and Accountability for Every Port Act of 2006.

12.5   All credits or benefits resulting from the Order, including trade credits, export credits or the refund of duties, taxes or fees, belong solely to Buyer.   Seller shall promptly provide all information and certificates (including NAFTA Certificates of Origin) necessary to permit Buyer to receive the full amount of such benefits or credits.  Seller agrees to fulfill all customs- or NAFTA-related obligations, origin marking or labeling requirements, and local content origin requirements.

12.6   Seller shall indemnify and hold Buyer harmless from and against any liability, claims demands or expenses (including attorney's fees or other professional fees) arising from or relating to Seller's noncompliance with this Section.   Seller shall be responsible for the full costs of any delay in delivery of the Supplies caused by its failure to comply with the requirements of this Section 12, including but not limited to missing, incomplete, untimely or inaccurate data being furnished to Buyer, Buyer's agents or any governmental authority.

## 13.   Excusable Delay.

13.1   Any delay or failure of either party to perform its obligations shall be excused if and to the extent that the party is unable to perform due to events or occurrences beyond its reasonable control and without its fault or negligence, such as: acts of God; restrictions, prohibitions, priorities or allocations imposed or actions taken by a governmental authority; embargoes; fires; explosions; natural disasters; riots; wars; sabotage; or court injunction or order (collectively "*Excusable Delay*").   However, in no event shall Seller's performance be excused by: (i) the change in cost or availability of raw materials, components or services based on market conditions, supplier actions or contract disputes; (ii) Seller's financial distress; (iii) Seller's bankruptcy or insolvency of one or more of Seller's suppliers; or (iv) any labor strike or other labor disruption applicable to Seller or to any of its subcontractors or suppliers. Seller, at its expense, shall use its best efforts to mitigate any adverse effects or costs to Buyer due to any actual or potential Excusable Delay, including: (i) the implementation of a production contingency plan; and (ii) upon Buyer's express written authorization, increasing Seller's inventory of Supplies to a level sufficient to sustain deliveries during such Excusable delay.

13.2   Seller shall immediately give written notice to Buyer of any event or occurrence that threatens to delay or actually delays Seller's performance under the Order.  Such notice shall include all relevant information with respect to such threat, including the possible duration and impact of a delay.  In addition, Seller shall notify Buyer in writing: (i) of the expiration of any labor contract or collective agreement at least sixty (60) days prior thereto; and (ii) of any actual or threatened labor strike or other labor disruption as soon as Seller becomes aware of such; in each case as may be applicable to Seller or to any of its subcontractors or suppliers that are engaged in manufacturing or providing Supplies or services to Seller in connection with Seller's obligations under the Order. Notwithstanding notice and Seller's provision of a safety stock for

a strike, labor disputes shall not constitute an event of Excusable Delay which shall excuse performance under the Order.

13.3   During any delay or failure to perform by Seller, Buyer may at its option and at Seller's expense: (i) purchase Supplies from other sources and reduce its schedules to Seller by such quantities, without liability to Seller; (ii) require Seller to deliver to Buyer at Buyer's expense all finished Supplies, work in process and parts and materials produced or acquired for work under the Order; or (iii) have Seller provide Supplies from other sources in quantities and at a time requested by Buyer and at the price set forth in the Order.  In addition, Seller, at its sole expense, shall take all necessary actions to ensure the supply of Supplies to Buyer for a period of at least forty-five (45) days during any anticipated labor disruption or resulting from the expiration of Seller's labor contracts.

## 14.   Termination.

14.1   Buyer may terminate the Order for Cause, without liability to Seller, which shall be effective upon delivery of written notice or upon such other date specified by Buyer in writing.  "*Cause*" for termination includes the following actions: (i) Seller breaches any representation, warranty or other term of the Order; (ii) Seller repudiates, breaches or threatens to breach any of the terms of the Order; (iii) Seller fails to deliver, or threatens not to deliver, Supplies in accordance with a Material Release; (iv) Seller fails to meet applicable quality requirements so as to endanger timely and proper performance of the Order; (v) Seller makes an assignment for the benefit of creditors; (vi) proceedings in bankruptcy or insolvency are instituted by or against Seller; (vii) Seller requests accommodations from Buyer, financial or otherwise, in order for Seller to meet its obligations under the Order; (viii) Seller enters or offers to enter into a transaction or series of transactions that would cause a sale of a material portion of the assets used by Seller for the production and/or provision of Supplies to Buyer; (ix) Seller enters or offers to enter into a merger, sale or exchange of stock or other equity interests that would result in a change in control of Seller within the meaning of Section 409A of the Internal Revenue Code and regulations issued there under, in which case Seller shall notify Buyer within ten (10) days after entering into any related negotiations (or the first period in which such negotiations can be made public consistent with applicable law) that could lead to such a transaction, provided that upon Seller's request, Buyer shall enter into an appropriate nondisclosure agreement related to information disclosed to Buyer in relation to such transaction; or (x) at any time in Buyer's sole judgment Seller's financial or other condition or progress on the Order shall be such as to endanger timely performance.

14.2   In the event Buyer elects not to terminate the Order in connection with an event that would constitute Cause for termination, Buyer may make such equitable adjustments in the price, payment terms, sole supply relationship and delivery requirements under the Order as Buyer deems appropriate to address changes in Seller's circumstances, including Seller's continuing ability to perform its obligations regarding warranty, nonconforming Supplies or other requirements under the Order, provided that Buyer must provide Seller with notice and details regarding the adjustments.

14.3   Buyer also may, at its option and in its sole discretion, immediately terminate all or any part of the Order (other than the minimum quantities specified in Section 3) at any time and for any reason upon seven (7) days written notice to Seller.  Upon receipt of notice of termination, whether under Section 14.1 above or this Section 14.3, unless otherwise directed by Buyer, Seller shall: (i) promptly terminate all work under the Order on the effective date of termination; ii) transfer title and deliver to Buyer or its designee the finished Supplies, the work in process, and the parts and

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

materials that Seller reasonably produced or acquired according to quantities ordered by Buyer and that Seller cannot use in producing Supplies for itself or for others; (iii) verify and settle any claims by subcontractors for actual costs incurred directly as a result of the termination; (iv) take actions reasonably necessary to protect property in Seller's possession in which Buyer has an interest; and (v) upon Buyer's request, fully cooperate with Buyer in transferring the production of Supplies to a different supplier.

14.4    Upon termination by Buyer under Section 14.3, Buyer shall pay the following without duplication: (i) the Order price for all finished Supplies in the quantities ordered by Buyer in Material Releases that conform to the Order for which Seller has not been paid; (ii) Seller's reasonable actual cost of merchantable and useable work-in-process and the parts and materials transferred to Buyer under Section 14.3; (iii) Seller's reasonable actual costs of settling claims regarding its obligations to its subcontractors required under the Order, to the extent directly caused by the termination, but limited to the amount of the firm quantities of Supplies and raw materials/components specified in Material Releases issued by Buyer and then currently outstanding; (iv) Seller's reasonable actual cost of carrying out its obligations under Section 14.3(d), and (v) if applicable, amounts due in connection with Transition Support under Section 16.

## 15.    Limitation on Buyer's Obligations to Seller for Termination.

15.1    Buyer's obligations under Section 14.3 are conditioned upon Seller furnishing to Buyer within one (1) month after the date of termination (or such shorter period as may be required by Buyer's Customer) a termination claim, which shall consist exclusively of the items of Buyer's obligation to Seller that are expressly permitted by this Section and Section 14. Buyer may audit Seller's records before or after payment to verify amounts requested in Seller's termination claim. Buyer shall not be obligated to make any payment for Supplies, work-in-process, parts or raw materials inventory: (i) in excess of those authorized or required under any Material Release; (ii) that are damaged or destroyed or that are not merchantable or useable; (iii) that are in Seller's standard stock or that are readily marketable; or (iv) that can be returned to Seller's suppliers or subcontractors for credit.

15.2    In the event of a termination of the Order by Buyer as a result of Buyer ceasing to be a supplier to Buyer's Customer for Buyer's goods which incorporate the Supplies, Buyer shall only be obligated to compensate Seller for any costs under Section 14.4 if, when and to the extent that Buyer's Customer reimburses Buyer for such costs.

15.3    BUYER SHALL HAVE NO LIABILITY OR OBLIGATION FOR, AND SHALL NOT BE REQUIRED TO PAY SELLER DIRECTLY OR INDIRECTLY IN RESPECT OF, CLAIMS BY SELLER OR SELLER'S SUBCONTRACTORS, FOR LOSS OF ANTICIPATED PROFIT, FAILURE TO REALIZE ANTICIPATED PRODUCTION VOLUMES, REVENUES OR SAVINGS, UNABSORBED OVERHEAD, INTEREST ON CLAIMS, PRODUCT DEVELOPMENT AND ENGINEERING COSTS, TOOLING, FACILITIES AND EQUIPMENT REARRANGEMENT COSTS OR RENTAL, UNAMORTIZED CAPITAL OR DEPRECIATION COSTS, OR GENERAL ADMINISTRATIVE BURDEN CHARGES RESULTING FROM OR RELATED TO THE TERMINATION OR EXPIRATION OF THE ORDER, EXCEPT AS OTHERWISE EXPRESSLY AGREED IN A SEPARATE ORDER ISSUED BY BUYER.

## 16.    Transition of Supply.

16.1    In connection with the expiration, cancellation or termination of the Order by Buyer, in whole or in part, for any or

no Cause or Buyer's election to change to an alternate supplier of the Supplies (including a Buyer-owned or -operated facility) whether in response to Seller's request or otherwise, (i) Seller shall give Buyer its full and prompt cooperation as set forth herein in transitioning from Seller to Buyer's new supplier the responsibility for providing and delivering Supplies to Buyer. Seller shall continue production and delivery of all Supplies as ordered by Buyer, at the prices and in compliance with the terms of the Order, without premium or other condition, during the entire period reasonably needed by Buyer to complete the transition to the alternate supplier(s); (ii) subject to Seller's reasonable capacity constraints, Seller shall provide special overtime production, storage and/or management of extra inventory of Supplies, extraordinary packaging and transportation and other special services (collectively, "*Transition Support*") as expressly requested by Buyer in writing; (iii) at no additional cost to Buyer, Seller shall promptly provide all requested information and documentation regarding and access to Seller's manufacturing or service process, including on-site inspections, bill-of-material data, tooling and process detail and samples of Supplies and components; (iv) Seller shall promptly provide all notices deemed by Buyer in its sole and absolute discretion to be necessary or desirable for Buyer to resource the Order to an alternative supplier; (v) if and when requested by Buyer, Seller shall return to Buyer all Buyer's Property in as good condition as when received by Seller (reasonable wear and tear excepted) and shall comply with Seller's obligations relating to Seller's Property in Section 21 and in relation to subcontracts.

16.2    If the resourcing of the Supplies occurs for reasons other than in connection with a termination for Cause or at the request of Seller, Buyer shall, at the end of the transition period, pay Seller's reasonable out of pocket cost of Transition Support as requested, provided that upon Buyer's request, Seller has advised Buyer prior to incurring such amounts of its good faith estimate of such costs. If the parties disagree on the cost of Transition Support, Buyer shall pay the undisputed portion to Seller and the remaining portion, if any, promptly following the binding determination by an arbitrator that such amount is due to Seller.

## 17.    Insurance.

Seller shall maintain and require its subcontractors to maintain, the following insurance coverages: i) comprehensive general liability insurance ii) comprehensive automobile liability insurance and iii) business interruption insurance, iv) workers compensation and employer's liability insurance covering all employees engaged in the performance of this Order for claims arising under any applicable workers' compensation, occupation disease or health and safety laws and or regulations and v) such other insurance coverage as may be requested from time to time by Buyer in its sole discretion. In each case Seller's insurance coverage will name Buyer and its affiliates (as applicable) as loss payee(s) and/or "additional insured(s)" and the coverage will be in such amounts sufficient to cover obligations set forth herein or in such amounts specifically set forth on Buyer's Insurance Addendum which when published, will form part of the Order. Such insurance coverage shall among other things provide full fire and extended coverage insurance for the full replacement value of all Seller's Property and all bailed Buyer's Property. Seller hereby waives all mechanics' liens and claims and agrees that none shall be filed or maintained against Buyer's premises on account of any Supplies and shall cause all its subcontractors, materialmen and suppliers (and subcontractors of such parties) to provide similar waivers and agreements in form satisfactory to Buyer.

Seller shall furnish to Buyer a certificate showing full compliance with the requirements set forth in this Section 17 or certified copies of all insurance policies within ten (10) days of Buyer's

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

written request. The certificate shall provide that Buyer shall receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The existence of insurance shall not release Seller of its obligations or liabilities under the Order.

### 18.   Audit; Plant Inspections.

18.1    Upon reasonable notice to Seller, either Buyer, Buyer's Customers or their respective third-party designees may audit Seller's production facility, Supplies and any other Buyer property (including all pertinent documents, data and other information) related to the Order for the purpose of verifying Seller's costs and its compliance with or its ability to perform its obligations under the Order. Seller shall provide, without additional charge, all reasonable facilities and assistance. No inspection under this Section 18 shall constitute acceptance of any work-in-process or finished goods and shall not relieve Seller of any of its responsibilities or warranties under the Order.

18.2    Upon reasonable notice to Seller, Buyer or a third party designated by Buyer may review the financial condition of Seller and its affiliates relating to Seller's performance under the Order. Seller shall, and shall cause its affiliates to, fully cooperate in any such review and shall promptly provide copies of or access to requested documents, including without limitation financial records and statements, forecasts, business plans, banking contacts and loan documents, and shall make its financial managers available for discussions during reasonable business hours. Buyer and its third-party designee(s), if any, shall keep confidential any nonpublic information about Seller or its affiliates obtained in a financial review and use such information only for purposes of the review, except as needed to enforce the Order.

18.3    Buyer's right to conduct any inspection, audit or review under this Section 18 or otherwise is at its sole discretion. Buyer shall have no obligation to Seller to conduct any inspection, audit or review under this Section 18 or otherwise and Buyer's decisions as to whether, how and when to conduct any inspection, audit or review shall not modify or relieve Seller of any obligations under the Order, shall not give rise to any liability of Buyer to Seller and shall be without prejudice to any rights or remedies available to Buyer.

### 19.   Buyer's Property.   This Section 19 shall only apply if there is no current bailment agreement between the parties.

19.1    "*Buyer's Property*" shall mean and include: all information and materials, including tooling which has been furnished by Buyer to Seller or for which Seller has been reimbursed by Buyer (such as fixtures, gauges, jigs, patterns, castings, cavity dies, molds, with all related appurtenances, accessories and accessories, collectively herein referred to as "*Tooling*"), packaging, documents, standards, specifications, samples, trade secrets, manufacturing processes, marketing and pricing data, proprietary information and other materials and items (including whether or not such materials are in any way modified, altered or processed) furnished by Buyer either directly or indirectly to Seller to perform the Order, along with any and all supplies, Tooling, deliverables, data, and Intellectual Property Rights (as defined in Section 22.1) which are property of Buyer under the terms of the Order. Buyer's Property shall be and remain the sole and exclusive property of Buyer.

19.2    With respect to Buyer's Property in the custody or control of Seller or Seller's suppliers, contractors or agents: (i) Seller shall use it or permit its use only for the production of Supplies for Buyer; (ii) Seller, at its own expense, shall keep Buyer's Property in good working condition and house, maintain, repair and replace it as necessary so that such Buyer's Property shall remain in the

same condition as it was when it was received by Seller, except for normal wear and tear; (iii) Seller shall keep such Buyer's Property fully insured for the benefit of Buyer at all times while in Seller's possession; and (iv) Seller shall keep Buyer's Property, and cause any of its suppliers, contractors or agents in possession of such Buyer's Property to keep such Buyer's Property, segregated from all other assets and labeled as being the property of Buyer. Seller shall not release, relocate or dispose of Buyer's Property to any third party without the prior, express, written permission of Buyer. Seller shall promptly notify Buyer of the location of Buyer's Property if located at any place other than Seller's facility.

19.3    Seller shall have only temporary possession of Buyer's Property as a bailee at will. Seller shall execute, deliver and perform Buyer's Tooling Agreement or other bailment agreement as Buyer may from time to time reasonably request.

19.4    Buyer shall have the right to enter Seller's premises, or the premises of any of Seller's suppliers, contractors or agents in possession of Buyer's Property, to inspect Buyer's Property and Seller's records regarding Buyer's Property. Seller agrees neither to create nor permit any liens on Buyer's Property and Seller agrees to immediately sign any UCC-1 forms or other documents reasonably required by Buyer to perfect Buyer's rights granted herein. Seller grants to Buyer a limited and irrevocable power of attorney, coupled with an interest, to execute and record on Seller's behalf any notice financing statements with respect to Buyer's Property that Buyer determines are reasonably necessary to reflect and protect Buyer's interest in Buyer's Property.

19.5    Seller shall assume all risk of death or injury to persons or damage to property arising from its use of Buyer's Property. **TO THE EXTENT PERMITTED BY LAW, BUYER SHALL HAVE NO LIABILITY TO SELLER OR ANYONE CLAIMING BY OR THROUGH SELLER FOR ANY INCIDENTAL OR CONSEQUENTIAL OR OTHER DAMAGES OF ANY KIND WHATSOEVER RELATING TO BUYER'S PROPERTY SUPPLIED BY BUYER. BUYER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO SUCH BUYER'S PROPERTY, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND SELLER WAIVES, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, ALL CLAIMS OF NEGLIGENCE AND STRICT LIABILITY.**

19.6    Immediately upon Buyer's request, pursuant to any bailment agreement or upon any bankruptcy or insolvency filing, and without payment of any kind, Seller shall return Buyer's Property, and shall comply with Buyer's instructions relating to its return, including the method and location for its return. Seller shall be responsible for labor and other costs incidental to such Buyer's Property's return. Seller shall cooperate with Buyer and shall provide Buyer with access to all facilities at which Buyer's Property is located. Seller expressly waives any right to additional notice or process relating to Buyer's exercise of its rights under this Section. Seller waives, to the extent permitted by law: (i) any lien or other rights that Seller might otherwise have on any of Buyer's Property, including molder's and builder's liens; and (ii) any objection to Buyer's repossession and removal of Buyer's Property for any or no reason, including bankruptcy or insolvency proceedings.

### 20.   Tooling.

20.1    Seller shall not purchase any Tooling for the account of Buyer or charge Buyer for any tooling except as authorized in the Order or in a tooling purchase order delivered by Buyer to Seller ("*Tooling Purchase Order*"). Seller represents that the price in the Order or the Tooling Purchase Order for the Tooling is no

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

greater than Seller's actual cost of such Tooling and that there is no mark-up for profit (unless as authorized in this Section 20).

20.2    If Seller is responsible for fabricating or acquiring Tooling, such Tooling shall: (i) comply with any specifications provided by Buyer (or, where directed by Buyer, those of Buyer's Customer); (ii) be capable of making their intended contribution to the manufacture of Supplies that satisfy the Order, including meeting any volume requirements or estimates provided to Seller during the life of the product as well as satisfying the requirements, if any, for Service Parts.  Seller represents and warrants that the Tooling fabricated or acquired by Seller shall not infringe on the Intellectual Property (as defined in Section 22.1) of any third party and shall defend, hold harmless and indemnify Buyer, its successors and assigns against any suit, claim or action for actual or alleged direct or contributory infringement of or inducement to infringe any Intellectual Property and against any resulting damages, expenses (including attorney's and other professional fees and expenses), settlements and judgments arising out of or in any way connected to the Tooling, including any claim against Buyer that the infringement arose out of compliance with Buyer's specifications.  If the use of the Tooling for manufacture of the Supplies is enjoined or, in Buyer's sole judgment, is likely to be enjoined, Seller shall, at Buyer's election in its sole discretion and at Seller's sole expense, procure for Buyer the right to continue using the Supplies or modify the Tooling so it becomes non-infringing.  Time is of the essence for Seller's acquisition or fabrication of Tooling.  Seller shall provide Tooling progress reports from time to time at Buyer's request and shall promptly notify Buyer in writing if it believes that the Tooling might not be completed by the completion date specified in the Order or Tooling Purchase Order.

20.3    If Seller subcontracts all or part of the fabrication, modification, repair or refurbishment of Tooling to a third-party toolmaker, Seller shall: (a) provide advance written notice to Buyer of the identity of the toolmaker and the location of the Tooling; (b) inform the toolmaker in writing that it is a bailee-at-will, through Seller, of Tooling owned by Buyer; and (c) be solely responsible for payments to the toolmaker.  Buyer has no obligation to Seller or subcontractor other than payment to Seller of the Order price.  If a subcontractor brings an action against Seller for payment of the Tooling, Seller shall not join Buyer in the action.

20.4    If Seller's primary business is to fabricate Tooling, Seller shall be permitted a reasonable profit percentage as specified in the Order.  In the absence of a mutually-accepted profit percentage, Buyer shall determine a reasonable profit percentage following the completion of its audit.  Seller shall invoice Buyer for (and Buyer shall only be obligated to pay) the lower of Seller's actual cost plus such profit percentage or the amount set forth in the Order.

20.5    Seller shall provide to Buyer, as requested, access to Seller's premises and all documentation relating to the Tooling, prior and subsequent to payment, to inspect work performed and to verify charges submitted by Seller against the Order or Tooling Purchase Order.  For any Tooling or parts thereof that Seller obtains from any third party, Seller shall provide Buyer with access to the ultimate production source of the Tooling and documentation in accordance with the preceding sentence.  Seller shall have ninety (90) days from the date Buyer notifies Seller of Buyer's intention to audit Seller to provide the requested access and copies of requested documentation for Buyer's exclusive use and records.  Any information submitted following such ninety (90) day period may be disregarded by Buyer in its sole and absolute discretion.  The price set forth in the Order or Tooling Purchase Order shall be adjusted to credit Buyer in the amount, if any, by which the price exceeds Seller's actual cost as verified.  Seller shall not disclose to any third party, except for its attorneys and professional advisors who are required to maintain confidentiality,

the results of any such Tooling audits or any adjustments made by Buyer to the prices and amounts payable to Seller as a result of such audit.  Seller shall retain (and cause its Tooling sub-suppliers, if any, to retain) all cost records for a period of three years after receiving final payment of the charges.

20.6    To the extent permitted by applicable law, any payments made by Buyer for Tooling that is manufactured by a third party are expressly intended by Buyer to be held in trust for the benefit of any subcontractor(s) used by Seller to produce such Tooling and Seller agrees to hold such payments as trustee in trust for such subcontractor(s) until Seller has paid the subcontractor(s) in full for such Tooling.  Seller acknowledges and agrees that such subcontractor is an intended third-party beneficiary of the terms of this Section 20.6 relating to the trust and as such, such Tooling subcontractor shall have the right to enforce the terms of this Section 20.6 directly against Seller in subcontractor's own name.  Seller agrees that Buyer has no obligation to Seller or Seller's Tooling subcontractor under this Section other than making the payment to Seller in accordance with the Order or Tooling Purchase Order, as applicable.  In the event Seller's Tooling subcontractor brings an action against Seller under this section, Seller agrees that it shall not join Buyer in any such action.

## 21.    **Seller's Property.**

21.1    "**Seller's Property**" shall mean all capital equipment, buildings, materials, machinery, equipment, tools, jigs, dies, gauges, fixtures, molds, patterns, blueprints, designs, specifications, drawings, photographic negatives and positives, art work copy layout and all other records or items that are not Buyer's Property and that are necessary for the production of Supplies under the Order.

21.2    Seller, at its expense, shall furnish, keep in good working condition capable of producing Supplies meeting all applicable specifications, and replace when necessary, all Seller's Property.  Seller shall insure Seller's Property with full fire and extended coverage insurance for its replacement value, and otherwise as required under Section 17 (**"Insurance"**) hereof.  If Seller uses Seller's Property to produce goods or services similar to Supplies for other customers, including aftermarket customers, such goods or services shall not incorporate any of Buyer's logos, trademarks, trade names or part numbers.  Under no circumstances shall Seller disclose or imply in its marketing efforts that the goods it produces for others are equivalent to or better than those purchased by Buyer.

21.3    Seller hereby grants to Buyer an irrevocable option to purchase and/or temporarily take possession of Seller's Property that is special for production of Supplies under the Order (including, by way of example, Seller's Property specially designed or configured for the manufacture or assembly or other processing of Supplies), upon payment to Seller of its net book value less any amounts that Buyer has previously paid to Seller for the cost of such items, or (if applicable) any such other amount as may be required by applicable law.  Such option shall not apply if Seller's Property is used to produce goods that are the standard stock of Seller or if substantial quantities of goods substantially similar to the Supplies are being sold by Seller to others.  Buyer's option rights under this Section with respect to Seller's Property are intended to be subject to Buyer's rights and elections under 11 USC Section 365(n) (as amended from time to time) as and to the extent that such Seller's Property represents embodiments of Intellectual Property, including Intellectual Property licensed by Seller to Buyer under Section 22 below.

21.4    In addition to any and all other remedies available to Buyer at equity or in law, in the event of termination or breach or anticipatory breach of this Agreement for any reason and, on account of the breach, the continuous manufacture and delivery

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

of the Supplies is immediately threatened, Seller hereby grants Buyer the right to access Buyer's Property and Seller's Property in Seller's manufacturing facility at any and all times to do one of the following, at Buyer's option in its sole and absolute discretion: (i) enable Buyer's employees and/or designated representatives to use Buyer's Property and Seller's Property to manufacture and obtain sufficient quantity of the Supplies to meet Buyer's obligations to Buyer's Customer; and/or (ii) hire Seller's employees (at Buyer's cost and expense subject to Buyer's right to recover such expenses under the Order) to use Buyer's Property and Seller's Property to manufacture and obtain sufficient quantity of the Supplies to meet Buyer's obligations to Buyer's Customer.

## 22.    Intellectual Property.

22.1    "*Intellectual Property*" shall mean and include patents, copyrights, trademarks, trade names, trade dress, trade secrets, copyrights, know-how, concepts, ideas, discoveries, inventions (whether or not patentable), processes, developments, designs, suggestions, materials, improvements, works of authorship, artwork, software, documentation, intellectual property/proprietary rights, rights in other tangible and intangible assets of a proprietary nature, domain names, company names, and the like. "Intellectual Property Rights" means all forms of Intellectual Property protection or proprietary rights available throughout the world, including, without limitation, utility patents, design patents, patent applications, design registrations, utility models, industrial designs, copyrights, trademarks, trade dress, trade secrets, and rights in domain names.

22.2    Seller warrants that the Supplies and the sale and/or use thereof (before or after incorporation into products during manufacture) are original to Seller and do not and shall not infringe any third-party's Intellectual Property Rights.

22.3    Seller agrees: (i) to defend, hold harmless and indemnify Buyer and its owners, shareholders, affiliates, officers, directors, members, managers, partners, employees, attorneys and agents and any of their respective successors and assigns (each a "*Buyer Indemnified Party*") against any suit, claim or action for actual or alleged direct or contributory infringement of or inducement to infringe or violate any third party's Intellectual Property or Intellectual Property Rights and against any resulting damages or expenses (including attorney's and other professional fees and expenses, settlements and judgments) arising out of or relating to the manufacture, sale or use of the Supplies, including cases in which Seller has provided only part of Supplies; (ii) to waive any claim against any Buyer Indemnified Party, including any hold-harmless or similar claim, in any way related to a third-party claim asserted against such Buyer Indemnified Party for infringement of any Intellectual Property Right, including any claim against Buyer that the infringement arose out of compliance with Buyer's specifications; and (iii) that if the sale or use of the Supplies is enjoined or, in Buyer's sole and absolute judgment, is likely to be enjoined, Seller shall, at Buyer's election in its sole discretion and at Seller's sole expense, procure for Buyer the right to continue using the Supplies, replace the same with equivalent non-infringing goods or modify such Supplies so they become non-infringing.

22.4    All Supplies, Tooling and all other deliverables which include Intellectual Property, for which Buyer has agreed to reimburse Seller, along with all Intellectual Property relating thereto and needed to manufacture, sell or use the Supplies are the sole and exclusive property of Buyer.  Seller shall promptly disclose in an acceptable form and assign to Buyer all such Intellectual Property.  Seller shall cause its employees to promptly sign any papers necessary to enable Buyer to file applications for patents throughout the world and to record rights in and to such

Intellectual Property.  To the extent that the Intellectual Property includes any works of authorship created by or on behalf of Seller, such works shall be considered "works made for hire," and to the extent that such works do not qualify as "works made for hire," Seller hereby assigns to Buyer all right, title, and interest in all copyrights and moral rights therein.

22.5    Seller hereby grants to Buyer, its subsidiaries and affiliates, and their respective successors and assigns, and Buyer hereby accepts, a non-exclusive, irrevocable, royalty-free, fully paid up worldwide license, including the right to sublicense to others in connection with providing the Supplies to Buyer or Buyer's Customer, under: (i) any Intellectual Property owned or controlled by Seller or its affiliates, and relating to the Supplies, to make, have made, repair, reconstruct, rebuild, relocate, use, sell and import the Supplies, and (ii) any works of authorship fixed in any tangible medium of expression (including drawings, prints, manuals and specifications) furnished by Seller in the course of Seller's activity under the Order, to reproduce, distribute and display such works and to prepare derivative works based thereon, subject to the other provisions of the Order (all items in clauses (i) and (ii) above, collectively, "*Seller's Intellectual Property*", and such license in respect thereof, the "*License*").  Seller acknowledges and agrees that the License shall be effective from the first date of delivery of Supplies under the Order and extend for so long as Buyer has contractual obligations to Buyer's Customer to sell goods incorporating the Supplies.  The License is intended to be subject to 11 USC Section 365(n) (as amended from time to time) as an executory agreement under which Buyer has license rights to Seller's Intellectual Property, and is supplementary to any other rights of Buyer under the Order and any other agreement with Seller.

22.6    Seller shall ensure that the terms of its contracts with its subcontractors and employees are consistent with the terms of this Section.

## 23.    Proprietary Information; Record Retention.

23.1    Any information or knowledge which Buyer may have disclosed or may hereafter disclose to Seller in connection with the Order and any and all services to be rendered and/or work to be performed pursuant to the Order is and shall be deemed confidential and proprietary information of Buyer.  Seller shall not, without authorization in writing from Buyer, use (except as necessary to the performance of the Order), communicate or disclose such confidential and proprietary information of Buyer or use such information for any purpose other than to perform its obligations under the Order.  Seller agrees to safeguard the confidential and proprietary information of Buyer by using reasonable efforts, consistent with those used in the protection of its own proprietary information of a similar nature, to prevent its disclosure to third parties.  Seller agrees to cause its employees, "contractors", officers, directors, agents and representatives to be bound by and comply with the foregoing restrictions regarding the use or disclosure of such confidential and proprietary information.  Seller further agrees not to assert any claims with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the Supplies.

23.2    The restrictions and obligations of Section 23.1 shall not apply to information that: (a) is already publicly known at the time of its disclosure by Buyer; (b) after disclosure by Buyer becomes publicly known through no fault of Seller; or (c) Seller can establish by written documentation was properly in its possession prior to disclosure by Buyer or was independently developed by Seller without use of or reference to any of Buyer's information.  Notwithstanding anything to the contrary in these POTC, any confidentiality or non-disclosure agreement between the parties that predates the Order shall remain in effect except as expressly

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

modified by the Order, and to the extent of a conflict between the express terms of such an agreement and this Section, the terms of that agreement shall control.

23.3   All documents containing proprietary information relating to the Supplies produced or acquired by Seller in connection with this Agreement shall belong to Buyer.   All drawings, know-how, and confidential information supplied to Seller by Buyer and all rights therein shall remain the property of Buyer and shall be kept confidential by Seller in accordance with Section 23.1 above.

23.4   Seller agrees not to assert any claim against Buyer or its suppliers with respect to any technical information that Seller has disclosed or may disclose to Buyer in connection with the Supplies covered by the Order, except to the extent expressly covered by a separate written confidentiality and/or license agreement signed by Buyer or by a valid patent expressly disclosed to Buyer prior to or at the time of the Order.

23.5   In the event that Seller has reasonable cause to seek adequate assurance of performance from Buyer (within the meaning of Section 2-609 of the Uniform Commercial Code), Buyer, in its sole discretion, shall be deemed to have provided adequate assurance of performance, if, within thirty (30) days after Seller's request, Buyer either: (i) makes one of its financial officers available to respond to Seller's concerns and thereby provides information to assure Seller that Buyer shall perform its obligations under the Order; or (ii) provides such documents as Buyer reasonably determines provides sufficient information to assure Seller that Buyer will perform its obligations under the Order.   All information provided shall be subject to the confidentiality protection of Section 23.1.

23.6   Seller shall, within five (5) business days of Buyer's request or the expiration or termination of the Order, return all confidential and proprietary information (including all copies, notes and/or extracts thereof).   This Section 23 shall survive termination of the Order.

23.7   Seller shall keep all relevant documents, data and other written information relating in any manner to the Supplies for at least three (3) years following: (a) in the case of the Supplies, the later of the last delivery of the Supplies or the date of the final payment to Seller under the Purchase Order; and (b) in the case of Tooling, the later of the date of completion of any applicable PPAP, the date of submission of any applicable part submission warrant, or the date of final payment.   Buyer may make copies of these materials at any time prior to their destruction.

## 24.   Setoff.

24.1   In addition to any right of setoff or recoupment permitted by law, all amounts due Seller shall be considered net of indebtedness or obligations of Seller to Buyer.   Buyer may set off against or recoup from any amounts due or to become due to Seller, any amounts due to Buyer however and whenever arising. If an obligation of Seller to Buyer is disputed, contingent or unliquidated, Buyer may defer payment of all or a portion of the amount due to Seller until such obligation is resolved in accordance with Section 32.   Further, in the event Buyer reasonably feels itself at risk, Buyer may in its sole and absolute discretion withhold and recoup a corresponding amount due Seller to protect against such risk.   For purposes of this Section only, the terms "Buyer" and "Seller" shall include their parent companies, subsidiaries, brother/sister companies and affiliates.

## 25.   Social Responsibility and Protection of the Environment.

25.1   Seller shall comply with all laws and regulations regarding environmental protection and to work on reducing the adverse

effects of its activities on human beings and the environment.   In this respect Seller shall set up and further develop a management system in accordance with ISO 14001 wherever possible.   In the event Buyer's Customer requires Buyer and its suppliers to participate in any energy saving (or green initiative) or other environmental protection program, Seller shall fully comply and assist Buyer with its participation in such program as Buyer directs.

25.2   Seller warrants that neither it nor any of its subcontractors shall utilize child, slave, prisoner or any other form of forced or involuntary labor, or engage in abusive employment or corrupt business practices, in the supply of Supplies or provision of services under this contract.   At Buyer's request, Seller shall certify in writing its compliance with the foregoing.

25.3   Seller shall comply with the principles of the U.N. Global Compact Initiative relating to the protection of international human rights, the right to collective bargaining, the abolition of forced labor and child labor, the elimination of discrimination when personnel is engaged and employed, the responsibility for the environment and the prevention of corruption. Further information on the UN Global Compact Initiative is available at: www.unglobalcompact.org.

## 26.   Compliance With Laws; Ethics.

26.1   Seller warrants that Seller, and all Supplies furnished by Seller under the Order shall comply with all applicable local, state, Federal and all other applicable laws, ordinances and regulations, including those concerned with labor, environment and safety, as those laws, ordinances and regulations are amended from time to time.   Seller shall provide all permits, certificates, licenses, insurance approvals and inspections which may be required for the performance of the Order.

26.2   Seller also warrants that all Supplies furnished by Seller in performance of the Order shall comply fully with the Occupational Safety and Health Act of 1970 (as amended from time to time) and State plans approved under this Act; the Toxic Substances Control Act (as amended from time to time); and the regulations promulgated under both Acts, to the extent applicable to such equipment and in addition to any other rights or remedies which Buyer may have. Seller also warrants all Supplies fully comply with all federal and state environmental regulations including, without limitation, state laws regulating the amount of mercury. Seller shall promptly notify Buyer in the event that any environmental factors associated with Seller's products, services and/or processes may adversely impact Buyer or its employees, either directly or indirectly.   Such impacts may involve, but are not limited to, direct exposure to toxic substances in Seller's products and/or processes, and/or negative publicity or litigation arising from Seller's use of endangered species or other environmentally sensitive materials.

26.3   Buyer serves from time to time as a contractor and/or a subcontractor concerning contracts to supply to the United States government. In those cases, Seller shall comply with the federal laws, regulations, and rules applicable to subcontractors of government contractors, including those relating to equal employment opportunity and affirmative action in the employment of minorities, women, the handicapped, and certain veterans, and contracting with women-owned or small and disadvantaged business concerns.   Where applicable, Seller certifies that it maintains no segregated employee facilities in compliance with applicable law, and that it is not debarred from being awarded federal or federally assisted contracts.

26.4   Seller and/or any agent or representative of Seller, may not offer or give any gratuities, in the form of entertainment, gifts, or otherwise to any officer or employee of Buyer with a view toward securing any Order or securing favorable treatment with

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

respect to the awarding, amending or making of any determinations with respect to the performance of the Order or future Orders.

26.5   Seller shall promptly notify Buyer if Seller has provided information to any Government agency (including agencies of foreign governments) regarding the Supplies, including information provided to the U.S. Government in accordance with the reporting requirements of U.S. law (as amended from time to time), including, but not limited to, Defect and Noncompliance Reporting, and Reporting of Information and Communications About Potential Defects. This notification shall include the following information: the date the notification was provided to a Government, the affected Supplies (or components of the Supplies, as applicable), and the report type (e.g., for reporting to the U.S. Government, an Early Warning Report or Noncompliance Report). Seller shall also promptly notify Buyer if Seller has provided information to a governmental agency regarding goods of a comparable or derivative nature to the Supplies including information provided to the U.S. Government.

26.6   Seller shall notify Buyer of any change in laws applicable to the Supplies and must identify the impact of such changes on Seller's performance and Buyer's receipt of such Supplies. Seller shall promptly develop and, with Buyer's approval, implement with respect to the affected Supplies any modifications that are necessary as a result such change in law. Seller shall be responsible for any fines or penalties imposed on Buyer or Buyer resulting from any failure by Seller or its agents, subcontractors or third part suppliers to comply with applicable laws or respond in a timely manner to changes in such laws.

26.7   Seller shall indemnify and hold Buyer harmless from and against any liability claims, demands or expenses (including attorney's or other professional fees) arising from or relating to Seller's noncompliance with this Section 26.

## 27.   Buyer's Limited Liability to Seller.   Buyer's sole liability under the Order (including its termination, expiration or cancellation) is to pay for the Supplies in accordance with Section 5 and to pay the specific termination related amounts described in Section 14.4. **IN NO EVENT SHALL BUYER BE LIABLE TO SELLER FOR ANY DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO COMPENSATORY, INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL (AS OPPOSED TO COMPENSATORY) DAMAGES, LOST PROFITS OR OTHER DAMAGES DIRECTLY OR INDIRECTLY RELATED TO PROFITS, OR LIABILITIES OF ANY KIND IN CONNECTION WITH THE ORDER, WHETHER FOR BREACH OF CONTRACT, TORT LIABILITY, LATE PAYMENT, PROPERTY DAMAGE, PERSONAL INJURY, ILLNESS, OR DEATH OR OTHERWISE.**

## 28.   Assignment.

28.1   Seller may not, without Buyer's prior written consent: (i) assign or delegate (including without limitation by subcontract) its obligations under the Order, or (ii) enter or offer to enter into a transaction that includes a sale of a substantial portion of its assets used for the production of the Supplies for Buyer or a merger, sale or exchange of stock or other equity interests that would result in a change of control of Seller. In the event of any approved assignment (including without limitation subcontract), sale or delegation authorized by Buyer, Seller shall retain all responsibility for Supplies, including all related warranties and claims, unless otherwise expressly agreed in writing by Buyer.

28.2   With Buyer's prior written consent, Seller may make an assignment of receivables due or to become due to a single financial institution; provided, however, that any such assignment

shall be subject to set-off (see Section 24 above) or other method of enforcing any claims that Buyer may have under the Order.

28.3   Buyer shall have the right to assign any benefit or duty under the Order to any third party upon notice to Seller with or without Seller's consent.

## 29.   No Publicity.   Seller shall not advertise, publish or disclose to any third party (other than to Seller's professional advisors on a confidential and need-to-know basis) in any manner the fact that Seller has contracted to furnish Buyer the Supplies covered by the Order or any terms of the Order (including prices), or use any trademarks or trade names of Buyer in any press release, advertising or promotional materials, without first obtaining Buyer's written consent.

## 30.   Relationship of the Parties.   Seller and Buyer are independent contracting parties and nothing in the Order shall make either party the employee, agent or legal representative of the other for any purpose. The Order shall not grant either party any authority to assume or to create any obligation on behalf of or in the name of the other. Seller shall be solely responsible for all employment and income taxes, insurance premiums, charges and other expenses it incurs in connection with its performance of the Order, except as expressly provided in a written agreement signed by Buyer. All employees and agents of Seller or its respective contractors are employees or agents solely of Seller or such contractors, and not of Buyer, and are not entitled to employee benefits or other rights accorded to Buyer's employees. Buyer is not responsible for any obligation with respect to employees or agents of Seller or its contractors.

## 31.   Conflict of Interest.   Seller represents and warrants that its performance of the Order shall not in any way conflict with any continuing interests or obligations of Seller or its employees or contractors. Seller further warrants that while the Order is in effect, Seller and those of its employees and contractors participating in the performance of the Order shall refrain from any activities which could reasonably be expected to present a conflict of interest with respect to Seller's relationship with Buyer or its performance of the Order. Except with respect to the Directing Customer in the event Seller is a Directed Seller, Seller may not directly solicit Buyer's Customer for sales of the Supplies, goods substantially similar to the Supplies or any goods substantially similar to the goods sold by Buyer to Buyer's Customer.

## 32.   Governing Law; Dispute Resolution.

32.1   Buyer and Seller shall first endeavor to resolve through good faith negotiations any dispute arising under the Order. If a dispute cannot be resolved through good faith negotiations within a reasonable time, either party may request non-binding mediation by a mediator approved by both parties. If mediation fails to resolve the dispute within thirty (30) days after the first mediation session, all disputes arising out of or relating to the Order shall be resolved through binding arbitration. The arbitration proceedings shall be conducted before a panel of three arbitrators (one appointed by each party and the neutral appointed by the other two arbitrators) in accordance with the Commercial Rules of the American Arbitration Association including application of the Optional Rules for Emergency Measures of Protection and shall be governed by the *United States Arbitration Act* and this Section 32. The arbitration shall be conducted in the city and state, district or province of Buyer's primary place of business, and the language of the arbitration shall be English. The arbitrators shall issue a written opinion

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

setting forth the basis for the arbitrator's decision, which may include an award of legal fees and costs. While arbitration proceedings are pending, the parties shall continue to perform their obligations under the Contract without setoff for any matters being contested in the arbitration proceedings.

32.2   Venue for confirmation of or any challenge to the Arbitration Award shall be, at Buyer's option, in either the Michigan Circuit Court for the County of Oakland or the United States Court for the Eastern District of Michigan, or in the State Court or Provincial Court or Federal Court for the state or province in the country from which the Order was issued by Buyer.

32.3   The Order shall be construed and governed, at Buyer's option, in accordance with either the internal laws of the State of Michigan and the United States of America, or the laws of the state, province or district in the country in which the Order was issued by Buyer. The provisions of the United Nations Convention on Contracts for the International Sale of Goods, and any conflict-of-laws provisions that would require application of another choice of law, are excluded.

32.4   Neither course of performance, course of dealing or usage of trade may be used to vary the terms of the Order.

32.5   If either party brings an arbitration or other proceeding against the other as a result of any alleged breach or failure by the other party to fulfill or perform any covenants or obligations under the Order, the prevailing party obtaining final judgment in such proceeding shall be entitled to receive from the non-prevailing party the prevailing party's reasonable attorneys' fees incurred by reason of such action or proceeding and all costs associated with such action or proceeding incurred by the prevailing party, including the costs of preparation and investigation.

**33.   No Waiver.**  Buyer's failure to insist on the performance by Seller of any term or failure to exercise any right or remedy reserved in the Order, or Buyer's waiver of any breach or default hereunder by Seller shall not, thereafter, waive any other terms, conditions, rights, remedies, breaches or defaults, whether of the same or a similar type or not.

**34.   Severability.**  If any provision of the Order, or portion of any provision, is declared or found to be unenforceable, the balance of the Order or such provision shall be interpreted and enforced to the greatest extent possible as if the unenforceable provision or portion had never been a part hereof.

**35.   Survival.**  The obligations of Seller to Buyer survive termination of the Order, except as otherwise provided in the Order.

**36.   Notices.**

36.1   A written notice is used by the parties to provide a required notice or instructions to each other, or to authorize an exception, deviation or waiver of a pre-existing obligation or requirement under the Order. A written notice is also used by either party to provide any notice to the other party that is required to be in writing. In the case of Buyer, any written notice is valid only if signed by a representative of Buyer's purchasing activity. A written notice may be signed manually or electronically.

36.2   A written notice may be provided by: (a) first class mail; (b) courier service; (c) fax; or (d) standard e-mail. A written notice using method (a) or (b) is effective as of the date of delivery, and using method (c) or (d) is effective as of the date of transmission.

**37.   Interpretation.**  No provision may be construed against Buyer as the drafting party. Section headings are for convenience or reference only, and do not affect the meaning of the Order.

**38.   Entire Agreement; Modifications; Buyer's Website.**

38.1   The Order is the entire agreement between the parties respecting the Supplies and supersedes any prior agreements, negotiations or understandings of the parties respecting the Supplies, whether written or oral, except that a signed prior agreement (such as an award letter, statement of work, or non-disclosure agreement) will continue to apply to the extent not directly in conflict with the Order. This Order may only be modified by (i) a written amendment executed by authorized representatives if each party or (ii) by Buyer (a) for changes within the scope of Section 9, by an amendment to the Order issued by Buyer or (b) from time to time by posting revised POTCs to Buyer's Website at www.BoschNASuppliers.com, or its successor website. Such revised POTCs shall apply to all purchase order revisions/amendments and new Orders issued on or after the effective date thereof. Seller shall be responsible to review Buyer's Website periodically.

38.2   Buyer's Website may also contain specific additional requirements for certain items covered by the Order, including labeling, packaging, shipping, delivery and quality specifications, procedures, directions and/or instructions. Any such requirements shall be deemed to form part of the terms and the Order. Buyer may periodically update such requirements by posting revisions thereto on Buyer's Website. In the event of any inconsistency between the Order and Buyer's Website, the terms of the Order shall prevail, unless the requirements specified on Buyer's Website expressly provide otherwise.

38.3   Seller represents and warrants that there is no outstanding litigation, arbitrated matter or other dispute to which Seller is a party which, if decided unfavorably to Seller, would reasonably be expected to have a material adverse effect on Buyer's or Seller's ability to fulfill its respective obligations under this Agreement.

38.4   Seller covenants that each express representation and warranty of Seller in this Agreement shall remain true and correct during the term and any extension thereof. To the extent that Seller becomes aware that any such representation or warranty becomes untrue in any material respect during the term, Seller shall notify Buyer of the facts and circumstances surrounding such situation.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# EXHIBIT C

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

CONFIDENTIAL INFORMATION AND NON-DISCLOSURE AGREEMENT
AND GRANT OF LICENSE

**THIS AGREEMENT**, having an Effective Date as of March 1, 2005 by and between **J.S.T. CORPORATION** (JST), having a place of business at Waukegan, Illinois, and **ROBERT BOSCH CORPORATION** ("Bosch"), having a place of business at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331.

**WHEREAS**, there are business relationships between each party; and

**WHEREAS**, the proper conduct of such business relationships may require the disclosure of confidential and proprietary information between the parties hereto, including confidential and proprietary information owned by parent or affiliated companies of the parties hereto; and

**WHEREAS**, each party has agreed, subject to the terms and conditions of this Agreement, that each will maintain as confidential all such confidential and proprietary information as may be disclosed to one party by the other.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements herein contained, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.   Confidential Information.   For a period of three (3) years from the Effective Date of this Agreement, each party agrees not to use, other than for the purpose of the business relationship between the parties and as expressly permitted herein, or reveal or make known to any person, firm, or corporation, other than such party's employees having a need to know, any confidential, proprietary information disclosed to such party by the other. Confidential, proprietary information includes, but is not necessarily limited to, information or materials which relate to the disclosing party's products, specifications, business plan, product research and development plans, test data, client relationships, supplier relationships, project or sales opportunities, proposal or bid strategies, or corporate strategies, or projections and any other similar information or materials, and shall be marked "Proprietary" or "Confidential" by the disclosing party, or if orally disclosed, reduced to written form and marked "proprietary" or "Confidential" and communicated to the receiving party within thirty (30) days after the initial oral disclosure (collectively "Confidential Information"). "Confidential Information" shall also include confidential, proprietary information or materials owned by either party's parent or affiliated companies. Moreover, Confidential Information shall include any of the types of information mentioned above which are observed by any representative, employee or agent of either party during any visit to the facilities of the other party or in any other manner, as long as the subject matter of such information is reduced to written form and marked "Proprietary" or "Confidential", and communicated to the receiving party within thirty (30) days after the such initial disclosure.

Confidential Information shall not include any information (but only that specific item of information):

a.   which, at the time of disclosure, is part of the public domain;

b.   which, at the time of disclosure, was already known to the recipient thereof or its employees;

c.   which, subsequent to the time of disclosure, becomes part of the public domain other than through breach by the receiving party;

d.   which is received from a third party without breach of the restrictions contained in the Agreement;

e.   which is expressly approved by the disclosing party in writing for public release;

f.   is furnished by the disclosing party to a third party without a similar restriction on such third party's rights; or

g.   is required to be disclosed by court order or a government agency.

2.   Use and Disclosure.   Each party agrees to use at least the same degree of care to avoid disclosure or dissemination of the other party's Confidential Information as it uses to protect its own confidential materials, but in no event less than a reasonable degree of care. In the event either party hereto needs to transmit Confidential Information to a third party, such party shall first obtain the written consent of the other party and shall also undertake appropriate measures to safeguard the confidentiality of the Confidential Information. The obligation

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

of confidentiality contained in the Agreement shall remain in effect for a period of three (3) years following the termination or expiration of this Agreement.

3.  Return or Destruction of Confidential Information. Any Confidential Information furnished in tangible form shall not be duplicated, excerpted, abstracted or otherwise be reproduced in whole or in part, by either party except for purposes of this Agreement and then only subject to the terms of this Agreement. Upon the request of either party to the other party, or upon the expiration or termination of this Agreement, such other party shall return all Confidential Information received in written or tangible form, including copies, abstracts, excerpts, or reproductions or other media containing such Confidential Information, within ten (10) business days of such request. At either Party's request, any documents or other media developed by the other party containing Confidential Information shall be destroyed by the other party. Such other party shall provide a written certificate regarding destruction within ten (10) days thereafter. Notwithstanding the foregoing, the receiving party shall be allowed to keep reasonable copies of the Confidential Information strictly for the purpose: (i) of defending itself in a lawsuit brought under this agreement; and (ii) fulfilling its obligations to General Motors Corporation referenced in Section 4 below.

4.  License; Warranty. All Confidential Information shall remain the property of the disclosing party. Except as expressly set forth below, the transmission of Confidential Information shall not be construed to grant the receiving party a license of any type under any patents, copyrights, know-how or trademarks owned or controlled by the disclosing party. Both parties hereto warrant that they have the right to disclose the Confidential Information. Neither party hereto warrants the accuracy, performance or results of any Confidential Information.

JST hereby grants to Bosch a nonexclusive license to use the JST connector design which is being provided as part of the JST Confidential Information solely for purposes of incorporating such design into the steering angle sensor to be provided by Bosch to General Motors Corporation ("GMC"). Such license shall remain in effect until such time as Bosch had completed its obligations to GMC for the provision of both original equipment production and service parts production of the steering angle sensor.

In addition, notwithstanding the provisions of Section 2, Bosch may disclose information concerning the JST connector design to GMC, and to Bosch's affiliates, as needed in connection with Bosch's supply to GMC of the steering angle sensor.

5.  Dispute Resolution. Any and all controversies or claims arising out of or relating to this Agreement shall be resolved by arbitration in Chicago, Illinois, such arbitration to be conducted in accordance with the Commercial Rules of Arbitration of the American Arbitration Association. The arbitration award shall be final and binding upon the parties to the arbitration and judgment thereon may be entered in any court having jurisdiction. Notwithstanding the foregoing, either party shall have the right to file an action against the other party in any court of law, state or federal, for the purpose of obtaining injunctive relief in order to safeguard the Confidential Information that is the subject of this Agreement. Both parties agree to waive any requirement that the other party post bond as a condition for obtaining any such relief.

6.  Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to choice of law principles.

7.  Succession. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors and assigns.

8.  Severability. In the event that it is determined in any legal proceedings before a competent tribunal, that any paragraph, or a part of any paragraph of this Agreement is invalid, illegal, or unenforceable, such paragraph or part thereof shall be deemed to be severed from this Agreement and the remainder of this Agreement shall continue in full force and effect.

9.  No Implied Waiver. Either party's failure to insist in any one or more instances upon strict performance by the other party of any of the terms of this Agreement shall not be construed as a waiver of any continuing or subsequent failure to perform or delay in performance of any term hereof.

10. Final Agreement. This Agreement terminates and supersedes all prior understandings or agreements on the subject matters hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

11. Export. Neither party hereto shall export, directly or indirectly, any Confidential Information, products, technical data or product samples acquired from the other party to any country for which the U.S. Government or any agency thereof at the time of export requires an export license or other governmental approval without first obtaining such export license or government approval.

IN WITNESS WHEREOF, the parties have, by their respective duly authorized officers or representatives, executed this Agreement as of the date first above written.

J.S.T. CORPORATION                                          ROBERT BOSCH CORPORATION

Signature: _Robert M Wright_              Signature: _____

Print Name: _ROBERT M. WRIGHT_         Print Name: _Lora Ullrich_

Title: _AUTOMOTIVE SALES MANAGER_      Title: _Sales/Product Manager_

Date: _MARCH 7, 2004_                      Date: _03/03/05_

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# EXHIBIT D

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# Corporate Agreement

by and between

## Robert Bosch GmbH
Robert Bosch Platz 1, 70839 Gerlingen

- hereinafter "BOSCH" -

and

## JST Mfg. Co. Ltd.
### 536-0014
### Osaka
### 6-8,2chome, Shigino-nishi, Joto-ku
### Japan

- hereinafter ">JST<" -

1. **Object of the Agreement and Parties**

    This Corporate Agreement (hereinafter "Agreement") covers the Terms and Conditions regarding products covered by this Agreement (hereinafter "Products"). It applies to all individual/yearly contracts covered by this Agreement (hereinafter "Individual Contracts"), as well as to the forecast and order plans (hereinafter "B+A Plans") prepared on the basis of the Individual Contracts. The B+A Plans are considered having been accepted by >JST<, if >JST< does not object to them in writing within 5 (five) working days upon receipt. Deliveries may only be made on the basis of the respective B+A Plans.

    The plants or subsidiaries of the Bosch Group listed in the respective contracts, are entitled to order Products under the Terms and Conditions of this Agreement.

2. **Basis of the Agreement**

    The contractual relationship between the BOSCH and the >JST< ("Contractual Relationship") consists of the following agreements and documents:
    - a) Robert Bosch Terms and Conditions of Purchase,
    - b) Quality Assurance Guideline for Suppliers (QSL),
    - c) Bosch specification N2580,
    - d) Delivery and payment terms agreed upon in the respective Individual Contracts,
    - e) The Supplier Manual Logistics including additions of the plants and subsidiaries of the Bosch Group listed in the respective contracts and
    - f) Other agreements.

    The versions of the documents listed in a) – b) and e) above in effect at the date hereof are applicable. The applicable versions of these documents can be found at the date hereof on the internet under www.bosch.com under "Purchasing and logistics" in he area "Download service". At >JST< request BOSCH will send these documents as hard copy.

    The General business terms and conditions of >JST< will not be accepted.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Other standard terms and conditions of one party shall be valid and applicable only, under the express written agreement of the parties, that such other terms shall supersede this Corporate Agreement.

3.    **Contracts, B+A Plans**

Under the Individual Contracts the required Products in each case are released via B+A Plans. Unless otherwise agreed upon, the B+A Plans are renewed on a monthly rolling basis, however, the legally binding order and the consent of BOSCH to purchase required materials are based on the conditions in the B+A Plans of the respective plant. The subsequent months are a non-binding forecast based on which >JST< plans its production capacity.

Unless a follow-up was agreed upon at the end of the term of the respective Individual Contract, the provisions of the expired contract continue being in effect until a follow-up contract was agreed upon or up to 8 (eight) months after the end of the term of the respective Individual Contract, whatever comes first.

In the event of a substantial increase in volume, especially if an Individual Contract extends over several years (multiyear contract), BOSCH reserves the right to renegotiate the terms and conditions of such Individual Contract with >JST< .

4.    **Quality**

The Bosch Quality Assurance Agreement for Suppliers (QSL) and additional provisions agreed upon by the plants/subsidiaries of the Bosch Group with >JST< shall govern. Deliveries shall be made exclusively from production sites of >JST< approved by BOSCH. Changes require the prior consent of BOSCH.

5.    **Environmental protection**

>JST< shall comply with environmental legislation and work continuously on minimization of negative impacts of its activities on human beings and the environment. Hence, >JST < shall implement and enhance of an environmental management system according ISO 14001 is expected by us.

6.    **Warranty, Liability**

Unless otherwise agreed upon, >JST< will guarantee for the duration of 36 (thirty-six) months as of the taking into operation (first registration of the car) that its deliveries and services are free from defects in material or workmanship and fit for its intended use. In the event of complaints, >JST< shall immediately undertake all investigations that appear necessary and shall notify BOSCH promptly, usually within 5 (five) working days at most, of the causes and of the actions taken to correct such complaints. >JST< shall participate fully in uncovering the causes of the complaint, even if the cause of the complaints is in dispute between the Parties.

In the event of non-compliance with agreed-upon quality levels or any other demonstrable quality deterioration of delivered Products, BOSCH reserves the right to suspend ordered quantities in whole or in part (including binding orders) until the required quality level is restored by >JST< through appropriate actions. >JST< cannot request compensation from BOSCH due to such a suspension.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

7.   **Insurance, General Liability**

For the terms of the contract >JST< agrees and maintains a commercial general liability covering the liabilities contractually and legally assumed with the following indemnity limits (minimum requirement):

-   **Public Liability**
    1,5 Mio. EUR combined single limit for bodily injury and property damage each occurrence.
    3 Mio. EUR in the annual aggregate

-   **Products Liability**
    1,5 Mio. EUR combined single limit for bodily injury and property damage each occurrence.
    3 Mio. EUR in the annual aggregate
    Coverage should include dismantling and reassembling costs, also for automotive parts.

-   **Products Recall for Automotive Parts**
    2,5 Mio. EUR each occurrence and in the annual aggregate

The cooperation >JST< MFG CO. LTD. Osaka Japan will stand surety for the aforementioned terms.

>JST< is hereby expressly advised that, in the event of insufficient insurance cover or insufficient indemnification, its liability for damages vis-a-vis BOSCH will, as a matter of principle, remain such as can be requested by BOSCH on the basis of contractual or legal provisions.

8.   **Unrestricted Usability**

Unless otherwise agreed upon in the specification, no Product shall be older than 12 (twelve) months at the time of delivery. After delivery BOSCH shall have at least another 12 (twelve) months period to process Products in the normal course of business.

9.   **Prices**

The prices agreed upon in the respective Individual Contract are binding for Products delivered within the contract period subject to Article 10. However, in the event of substantial increase in the purchase volume, BOSCH reserves the right to renegotiate prices with >JST<.

10.   **Quarterly Prices**

The prices for all Products identified by * in the respective Individual Contract are fixed for the first quarter of the term of the respective Individual Contract and constitute the maximum price for the remaining term of the Individual Contract. The Parties shall negotiate the prices for the following quarter in time prior to its beginning. These prices, in turn, apply to the negotiated quarter and constitute the maximum prices for the than remaining term of the Individual Contract.



4

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

11.   **Competitiveness**

Both Parties agree that they will take all necessary actions to maintain the competitiveness of Products.

The Products must correspond at least to comparable competitor products with respect to technology, quality, price and delivery. Such a competitor product must meet BOSCH's requirements.

In the event that a third party is offering a comparable product on a more favourable basis, BOSCH shall notify >JST< thereof in writing and shall grant >JST< a reasonable period of time to restore full competitiveness, taking into account the extent of measures probably required at >JST<.

>JST< shall promptly develop an action plan for the restoration of its competitiveness and shall present such plan to BOSCH without delay. The action plan shall also demonstrate the cost-effectiveness of each individual measure. BOSCH, in turn, agrees to review the plan promptly, to suggest possible improvements to >JST< and to assist >JST< in the implementation of the plan. BOSCH shall effect required testing and releases without delay or request such actions from its customers. If the result is positive, the changes will be introduced by BOSCH as soon as possible.

The timely presentation of a convincing concept to restore competitiveness of Products, as well as its timely implementation, constitute a material contractual obligation for both Parties.

12.   **Identification of Cost Reduction Potentials**

>JST< agrees to identify cost reduction potentials for Products as well as to take up such potentials identified by BOSCH and to actively implement them in consultation with BOSCH.

13.   **Delivery Dates, Capacity Planning**

The delivery dates shown in the B+A Plan are binding dates for the receipt of Products by BOSCH. Agreed lead times (period of time from the receipt of the order by >JST< until delivery to BOSCH) must be met.

Not withstanding the above, >JST< agrees to advise the BOSCH logistics departments of the status of the current supply situation in a timely fashion, especially of risks regarding timely delivery.

>JST< guarantees BOSCH that it will reserve the production capacity necessary to meet BOSCH's annual volume requirements of Products  and that it will effect respective deliveries.

>JST< ensures on-time delivery of products to BOSCH. This shall also hold true on the basis of best effort for events of damage or loss, such as flood, fire or explosion.

14.   **Delivery via Regional Freight Forwarders (GSP) and EDI Capability**

Delivery dates are the dates Products are received by the respective plant/subsidiary of



BOSCH. If the shipment is handled by regional freight forwarders, the shipping date must be advanced by the forwarding times fixed by the respective plant/subsidiary of BOSCH (usually 2 (two) days).

The shipping procedure of the regional freight forwarder must be observed (shipping advice). The specific availability date for pickup (time window) must be agreed upon directly with the regional freight forwarder.

Business transactions (order releases, delivery and shipping data, travel advice, credit advice etc.) between >JST< and BOSCH should be conducted by electronic data interchange (for example webEDI). To this purpose separate agreements with the respective recipients of the Products are required. >JST< shall actively participate in establishing the necessary link to BOSCH systems. >JST< shall communicate at least the delivery and shipping data to BOSCH. The EDI standards customary in the Automotive Industry shall apply (VDA, EDIFACT).

15. **Logistical Concepts**
The requirement of the Supplier Manual Logistics applies to this agreement.
Existing agreements on logistical procedures become an integral part of this Agreement.
Both Parties to this Agreement shall try to improve existing procedures and to constantly improve the quality of delivery. >JST< agrees to actively cooperate and to negotiate constructively about necessary adjustments of the respective Individual Contract in effect during the rest of its term.

16. **Cancellation**

If not otherwise stipulated in a separate agreement, BOSCH may under due consideration of Article 3 cancel any scheduled order without compensation 4 (four) weeks in the case of Standard Products or 6 (six) weeks in the case of Customer-specific Products prior to the agreed arrival date according to the B+A Plan.

Release periods for material and production release stipulated in the B+A Plans are leading.

17. **Discontinuation of Production**

In the event >JST< intends to discontinue production of a Product that BOSCH has purchased in the last 24 (twenty-four) months from >JST<, >JST< shall notify BOSCH of this intention in writing prior to the intended production phase-out with sufficient notice to enable BOSCH to place orders for its remaining needs within the following periods of time:

| | |
|---|---|
| Standard Products: | 12 months |
| Customer-specific Products: | 24 months |

The notification must be directed to the departments placing the respective B+A Plan. This does not affect any resupply obligation separately agreed upon.

18. **Resupply obligation**

A resupply obligation continuing for 10 years after the end of series production at a BOSCH customer applies to all products supplied by >JST< under this contract . Should production be technically and/or economically impossible, BOSCH and >JST< may agree on a different end-of-life scenario in writing. This contract provision shall survive the termination of the present contract.



Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

19.   **Sales Share**

>JST< shall notify BOSCH if the turnover transacted with a plant/subsidiary listed in the respective contracts amounts to more than 30% of the total sales of >JST<. The same applies to a share of total sales of 50 % or more transacted by >JST< with the entire Bosch Group.

20.   **Packaging**

The packaging regulations of BOSCH agreed-upon shall apply.

21.   **Contract Term, Termination**

This Agreement is concluded for an indefinite period of time, it may be terminated in writing to the year end by a 6 (six) months notice. Not withstanding the termination of this Agreement, its terms and conditions shall remain valid for all orders agreed to before its termination. Further >JST< shall be obliged to accept orders under Individual Contracts not completed by the time of termination until the end of its respective term and the terms and conditions of this Agreement continue to be valid for such orders.

In case of termination upon due notice, >JST< can not claim any compensation from BOSCH.

The right for an extraordinary termination without notice remains unaffected. If it becomes evident that >JST< cannot or will not fulfil its obligation pursuant to Article 11, this gives cause for an extraordinary termination.

22.   **Miscellaneous**

Amendments and supplements to this Agreement – including this Article 21 – shall be effective only, if in writing.

If provisions of this Agreement should become ineffective in whole or in part, this shall not affect the effectiveness of the remaining provisions hereof. In such an event, the Parties shall agree upon a provision to replace the ineffective provision that reflects as closely as possible the economic intent of the ineffective provision. The same rule shall apply to matters with respect to which this Agreement is silent.

This Agreement, as well as all agreements hereunder, such as Individual Contracts and B+A Plans and disputes arising therefrom, shall be governed by German law, excluding the rules on Conflict of Laws. The Hague Uniform Law on the International Sale of Goods, the UN sales convention or other international conventions on the international sale of goods do not apply.

Place of jurisdiction is Stuttgart.

Stuttgart, 20.5.09                     Singapore   29.04.2009

**Robert Bosch GmbH**                  >JST<

CPKPS Corporate Agreement 10/2004

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# EXHIBIT E



Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

J.S T. DEUTSCHLAND GMBH

Kuferstr. 16, 73650 Winterbach, GERMANY

Phone : +49-7181-40070

15. May, 2015

To:
Mr. Michael Hofmann (CP/PPG-SI3 CP/PPGSI2)
Mrs. Silke Krone (CP/PPG-SI32)
Mr. Ivica-Robert Baric (CP/PPD32-SX)
Mr. Santhosh Katrathana (CP/PPD32-SX)
Ms. Jessica Pan (CP/ABE27 – Bosch,China, Investment Ltd.)
Ms. Hanmei Xu

Subject: Notice for the Corporate Agreement

Please be advised, the basic corporate agreement between JST and Bosch has been canceled.  If
necessary please obtain the copy internally in Bosch organization.

Therefore, all the local agreements, if at all, between JST and Bosch is canceled pursuant to it in a
parallel manner.

Best regards,

Mark Rei,
General Manager, J.S.T. DEUTSCHLAND GMBH
Sign ..................................................

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

# EXHIBIT F

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

**Penny Newlander**

**Subject:**          FW: WG: JST Letter

**Von:** myoshimura [mailto:myoshimura@jst.com.sg]
**Gesendet:** Sonntag, 17. Mai 2015 17:02
**An:** Albert Joachim (CP/AB2); Ettle Albin (CP/EA)
**Cc:** Rei Mark; Kaelber Joerg (CP/ABE2)
**Betreff:** Re: JST Letter

Dear Mr. Albert;

I am acknowledging receipt of your email and letter attachment dated 15 May 2015.

Bosch finds itself in this situation because Bosch created an unfair advantage given to our competitor, Foxconn, by transferring JST intellectual property and know-how without JST's permission. We view this as theft of our intellectual property and know-how, which Bosch has benefited from, harming JST.

Even so, when Bosch had the opportunity to guaranty supply with a one-time order, its personnel allowed that offer to expire.

JST strives to be a world leader in quality and innovation.  It is inconsistent for us to work with a company that has demonstrated a pattern for unfair competition including breach of confidentiality (Nucap), infringement of intellectual property (Drew Tech., Nartron), and betrayal of trade secrets (Dyson).

We recognize the risk in doing business with a large supplier of automotive components such as Bosch, but the loss to JST from illegal practices is far greater.  Bosch has been advised of this and so far has declined to provide any remedy.

Best regards,

Yoshimura



J.S.T. Global Headquarters
Mr. Yoshimura
President
1A, International Business Park #04-01
Singapore 609933
e-mail: myoshimura@jst.com.sg
cc        A. Joachim, J. Kaelber

Robert Bosch GmbH
Postfach 30 02 20
70442 Stuttgart
Visitors:
Im Birkenwald 46
70435 Stuttgart-Zuffenhausen
Tel 0711 811-0
www.bosch.com

15 May 2015

Dear Yoshimura-san,

I was shocked to hear the statement from Mr. Rei today that you intend to reject Bosch's one-time buy purchase order for the Global BCM A Connector issued yesterday.  Following the letter of May 8 in which Bosch agreed to meet JST's latest commercial requirements, and the further positive exchanges between our organizations this week, I understood that JST would continue to supply the connectors to Bosch as discussed.  We have made and continue to make every reasonable effort to work with JST to ensure continued supply.

As you know, if JST refuses to continue supply of the connectors, the results will be catastrophic.  Within a matter of days, Bosch would be unable to continue supply of BCMs to General Motors, and vehicle production at GM would shut down soon after that.

Therefore, we cannot and do not accept any decision by JST that it will refuse to honor either our existing supply contract or the one-time buy that we issued at JST's request.  If JST refuses to ship, then we will hold JST responsible for all ensuing damages to Bosch and our customers.  If JST causes production shutdowns at Bosch or GM, these damages could easily amount to millions of dollars per day.  We will also inform our customers of this development worldwide and ask for their support.

At this time, Bosch still intends to proceed with the one-time buy that was requested by JST, and we expect JST to do the same.  If JST refuses to continue supply, then we will take all actions necessary to protect our rights and preserve continuity of supply to our customers.  Bosch reserves all legal rights, and nothing in this letter is a waiver or admission of any kind.

Given the urgency of this situation, I propose that you and I have an executive

Registered Office: Stuttgart, Registration Court: Amtsgericht Stuttgart, HRB 14000;
Chairman of the Supervisory Board: Franz Fehrenbach; Managing Directors: Dr. Volkmar Denner,
Dr. Stefan Asenkerschbaumer, Dr. Rolf Bulander, Dr. Stefan Hartung, Dr. Markus Heyn, Dr. Dirk Hoheisel,
Christoph Kübel, Uwe Raschke, Dr. Werner Struth, Peter Tyroller

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25



phone call as soon as possible.  Please let me know your availability (I would be prepared to talk to you during the weekend).  Please let me hear from you immediately and give me your proposal for a phone call.

15 May 2015
Page 2 of 2

Sincerely,

Robert Bosch GmbH                              Robert Bosch LLC


/s/ Albin Ettle

Albin Ettle                                        John Hutcheson
Executive Vice President                           Director, Purchasing
Global Purchasing Automotive (CP/EA)               (CP/ABW25)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Registered Office: Stuttgart, Registration Court: Amtsgericht Stuttgart, HRB 14000;
Chairman of the Supervisory Board: Franz Fehrenbach; Managing Directors: Dr. Volkmar Denner,
Dr. Stefan Asenkerschbaumer, Dr. Rolf Bulander, Dr. Stefan Hartung, Dr. Markus Heyn, Dr. Dirk Hoheisel,
Christoph Kübel, Uwe Raschke, Dr. Werner Struth, Peter Tyroller

Legal Software Inc. (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **JUDICIAL DISTRICT** | **SUMMONS AND COMPLAINT** | |
| 6th **JUDICIAL CIRCUIT** | | |
| **COUNTY PROBATE** | | |

Court Address
1200 N Telegraph Rd, Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).
ROBERT BOSCH LLC

V

Defendant name(s), address(es), and telephone no(s).
J.S.T. MFG. CO., LTD.
536-0014
Osaka
6-8,2chome, Shigino-nishi, Joto-ku
Japan

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307    (248) 841-9400

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires* | Court Clerk |
|---|---|---|
| | | |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, Michigan | Oakland County, Michigan |

Place where action arose or business conducted
Oakland County, Michigan

5/19/15
Date

Signature of attorney/plaintiff  S. Thomas Wienner (P29233)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (6/03)  **SUMMONS AND COMPLAINT**     MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles Traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |

Title

Subscribed and sworn to before me on _____, _____ County, Michigan.

Date

My commission expires: _____  Signature: _____

Date                                      Deputy court clerk/Notary public

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____

Attachments

_____ on _____

Day, date, time

on behalf of _____

Signature

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Legal Software Inc. (800) 530-2255
Approved, SCAO

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **JUDICIAL DISTRICT** **JUDICIAL CIRCUIT** | **SUMMONS AND COMPLAINT** | |
| 6th   **COUNTY PROBATE** | | |

**Court Address**
1200 N Telegraph Rd, Pontiac, MI 48341

**Court telephone no.**
(248) 858-1000

Plaintiff name(s), address(es) and telephone no(s).
ROBERT BOSCH LLC

V

Defendant name(s), address(es), and telephone no(s).
J.S.T. SALES AMERICA INC.
c/o The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

Plaintiff attorney, bar no., address, and telephone no.
S. Thomas Wienner (P29233); Seth D. Gould (P45465)
Wienner & Gould, P.C., 950 W. University Dr., Ste. 350
Rochester, MI 48307   (248) 841-9400

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires* | Court clerk |
|---|---|---|
| | | |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Oakland County, Michigan | Oakland County, Michigan |

Place where action arose or business conducted
Oakland County, Michigan

5/19/15
Date

Signature of attorney/plaintiff  S. Thomas Wienner (P29233)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01** (6/03)   **SUMMONS AND COMPLAINT**        MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that:    (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached)  a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____

_____  on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles Traveled | Mileage fee | Total fee | |
|---|---|---|---|---|
| $ | | $ | $ | Signature _____ |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                          Date

My commission expires: _____   Signature: _____
                          Date                          Deputy court clerk/Notary public

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____
                                                                                          Attachments

_____  on _____
                                             Day, date, time

                                          on behalf of _____
Signature

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

| Legal Software Inc. (800) 530-2255<br>Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>6th **JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS AND COMPLAINT** | **CASE NO.** |
|---|---|---|

| Court Address<br>1200 N Telegraph Rd, Pontiac, MI 48341 | Court telephone no.<br>(248) 858-1000 |
|---|---|

| Plaintiff name(s), address(es) and telephone no(s).<br>ROBERT BOSCH LLC | V | Defendant name(s), address(es), and telephone no(s).<br>J.S.T. CORPORATION<br>c/o The Corporation Company<br>30600 Telegraph Road, Suite 2345<br>Bingham Farms, MI 48025 |
|---|---|---|
| Plaintiff attorney, bar no., address, and telephone no.<br>S. Thomas Wienner (P29233); Seth D. Gould (P45465)<br>Wienner & Gould, P.C., 950 W. University Dr., Ste. 350<br>Rochester, MI 48307    (248) 841-9400 | | |

**SUMMONS**    **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires* | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐  There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐  An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer    pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☒  There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐  A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer    pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Oakland County, Michigan | Defendant(s) residence (include city, township, or village)<br>Oakland County, Michigan |
|---|---|
| Place where action arose or business conducted<br>Oakland County, Michigan | |
| 5/19/15<br>Date | Signature of attorney/plaintiff  S. Thomas Wienner (P29233) |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01** (6/03)  **SUMMONS AND COMPLAINT**          MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached)  a copy of the summons and complaint,

together with _____
<u>List all documents served with the Summons and Complaint</u>

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

| Service fee | Miles Traveled | Mileage fee | Total fee | |
|---|---|---|---|---|
| $ | | $ | $ | Signature _____ |
| | | | | Title _____ |

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____     Signature: _____
Date                                                      Deputy court clerk/Notary public

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with: _____
Attachments

_____ on _____
Day, date, time

on behalf of _____

Signature

Received for Filing Oakland County Clerk 2015 MAY 19 PM 12:25

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

ROBERT BOSCH LLC,

Plaintiff,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

Defendants.

Case No. 15-147126-CK

Hon. James M. Alexander

_____/

S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
Daniel K. Beitz (P47451)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiff*
950 W. University Dr., Ste. 350
Rochester, MI 48307
(248) 841-9400
twienner@wiennergould.com
sgould@wiennergould.com
dbeitz@wiennergould.com

Alan N. Salpeter
KAYE SCHOLER LLP
*Attorneys for Plaintiff*
70 West Madison Street, Ste. 4200
Three First National Plaza
Chicago, Illinois 60602
(312) 583-2300
alan.salpeter@kayescholer.com

_____/

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Plaintiff's Motion for Preliminary Injunction will be brought on for hearing on June 3, 2015 at 8:30 a.m. The hearing will be rescheduled to an earlier date if the Court grants Plaintiff's motion to expedite the hearing.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI 48307
(248) 841-9400; Fax: 652-2729
twienner@wiennergould.com

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL 60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:   May 19, 2015

2

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

        Plaintiff,                        Case No. 15-147126-CK

v.

                                         Hon. James M. Alexander

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

        Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI  48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## BOSCH'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Robert Bosch LLC ("Bosch") requests entry of a preliminary injunction preserving the *status quo* by requiring Defendants J.S.T. Mfg. Co., Ltd. ("JST Japan"), J.S.T. Corporation ("JST Illinois") and J.S.T. Sales America Inc. ("JST America") (collectively, "JST") to continue shipping horizontal male electric plastic connectors, Bosch part number 6002.JE0.402 ("Connectors"), as required by the parties' supply agreements.

If JST stops supplying Connectors to Bosch, the effects will be immediate and devastating.  Bosch assembles the Connectors supplied by JST into body control modules that it

FEE

sells to General Motors. Absent injunctive relief, JST's refusal to ship Connectors will jeopardize approximately **3.8 million General Motors vehicles annually**, which represents **46% of General Motors' global volume production**. The following vehicles will be threatened: (a) Chevrolet: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer, S10, Spark, Legacy, Orlando, and Tracker; (b) Buick: Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) GMC: Terrain; (d) Opel: Astra, Corsa, Insignia, and Mokka; and (e) Holden: Trax and Cruze. Bosch is the sole supplier of the body control modules for those vehicles. General Motors cannot manufacture those vehicles without the body control modules supplied by Bosch, and Bosch cannot manufacture the body control modules without the Connectors supplied by JST.

Absent injunctive relief, Bosch will begin to run out of Connectors in its production facilities **as early as June 20, 2015**. Bosch's deliveries to General Motors will therefore halt, and General Motors will be unable to continue to manufacture and sell the affected vehicles within weeks. A shutdown of automotive production lines is precisely the sort of irreparable harm that an injunction is designed to prevent. Absent such relief, the resulting reputational damage to Bosch (and General Motors) will be devastating.

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:  May 19, 2015

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

      Plaintiff,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

Case No. 15-147126-CK

Hon. James M. Alexander

_____/

S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
Daniel K. Beitz (P47451)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiff*
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400
twienner@wiennergould.com
sgould@wiennergould.com
dbeitz@wiennergould.com

Alan N. Salpeter
KAYE SCHOLER LLP
*Attorneys for Plaintiff*
70 West Madison Street, Ste. 4200
Three First National Plaza
Chicago, Illinois 60602
(312) 583-2300
alan.salpeter@kayescholer.com

_____/

## BRIEF IN SUPPORT OF BOSCH'S MOTION FOR PRELIMINARY INJUNCTION

### BACKGROUND

      Bosch's motion seeks to avoid a shutdown of automotive production lines at Bosch and at General Motors.  Such shutdowns would cause irreparable harm to both Bosch and GM.  Bosch relies upon the facts set forth in its Verified Complaint in support of this motion.

### LEGAL ARGUMENT

      A litigant who is threatened with irreparable injury is entitled to temporary injunctive relief in order to preserve the *status quo*.  *Niedzialek v. Barbers Union*, 331 Mich. 296, 300, 49 N.W.2d 273 (1951); *see also* MCR 3.310(A).  In *Niedzialek*, the court held:

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

> In granting or withholding injunctive relief *pendent lite* in a case of this character it is highly proper and quite essential for a court to consider whether the rights of the respective litigants will best be subserved by granting temporary injunctive relief if sought. ***If the personal rights or property rights involved will be best preserved by granting temporary injunctive relief in a suit presenting issues of controverted merit, such relief should be granted.*** [*Id.* at 300-301 (emphasis added) *quoting Gates v. Detroit & MacKinac Railway Co.*, 151 Mich. 548 (1908).]

Other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the *status quo* so that a final hearing can be held without either party having been injured and whether it will grant one of the parties' final relief prior to a hearing on the merits. *Campau v. McMath*, 185 Mich. App. 724, 728-29 (Mich. App. 1990). The *status quo* which will be preserved by a preliminary injunction is the "last actual, peaceable, noncontested status which preceded the pending controversy." *Steggles v. Nat. Discount Corp.*, 326 Mich. 44, 61, 39 N.W.2d 237 (1949). Here, the last peaceable, noncontested status was when JST was supplying the Connectors so that Bosch could ensure continued supply of body control modules to General Motors.

This Court must consider four factors when faced with a request for injunctive relief: (1) whether the applicant will suffer irreparable injury if the preliminary injunction is not granted; (2) the likelihood that the applicant will prevail on the merits; (3) whether the harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is granted; and (4) the harm to the public interest if the injunction issues. *See Ins. Comm'r of Mich. v. Arcilio*, 221 Mich. App. 54, 77-78, 561 N.W.2d 412 (Mich. App. 1997). Here, all four factors weigh in favor of the entry of a preliminary injunction as requested by Bosch.

1. **Bosch Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Entered.**

Injunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there is a real and imminent danger of irreparable injury. *Eady*

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

*v. Lafferty*, No. 202416, 1999 WL 33455124, at *1 (Mich. App. Jan. 8, 1999); *see also Soergel v. Preston*, 141 Mich. App. 585, 589-90, 367 N.W.2d 366, 368 (Mich. App. 1985) ("When an injury is irreparable, or the interference is of a permanent or continuous character, or the remedy at law will not afford adequate relief, a bill for an injunction is an appropriate remedy."). Legal remedies are most often deemed "inadequate" when there is damage to a party's business reputation and goodwill. *Eady*, 1999 WL 33455124, at *1 (affirming the grant of a preliminary injunction because "harm to plaintiff's reputation constituted a threat to the viability of his business, which constitutes irreparable harm"); *see also Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001) (affirming the issuance of a preliminary injunction, reversing the denial of a preliminary injunction, and holding that the "loss of established goodwill may irreparably harm a company"); *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such loss are difficult to compute."); *AK Steel Corp. v. Colton*, No. 01-74279, 2001 WL 1636957, at *14-15 (E.D. Mich. Dec. 3, 2001) (holding that competitive injury and loss of goodwill "are difficult to quantify, and justify this Court's issuance of a preliminary injunction").

The danger of irreparable injury is not alleviated when the breaching party makes a unilateral offer to perform pursuant to new contractual provisions that were not negotiated by the parties. *See TeamQuest Corp v. Unisys Corp*, No. C97-3049, 2000 WL 34031793, at *13 (N.D. Iowa April 20, 2000) (holding that the party seeking to avoid a preliminary injunction cannot defeat a showing of irreparable harm by making a conditional, unilateral offer to settle the case because the court will not force parties into an agreement that is designed to be contemplated between the two parties).

Courts have also recognized that suppliers in the automotive industry, like Bosch here, are particularly vulnerable when a component supplier stops supplying parts because the automotive industry operates on a "just-in-time" delivery basis.  *See Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794, 798 (E.D. Mich. 1990).  In *Kelsey-Hayes*, the court recognized the extreme prejudice that is caused by an interruption in the supply of parts in the automotive industry:

> It is well known that in an effort to promote efficiency, car manufacturers are reducing the size of their reserve banks of parts.  As a result, component parts are often incorporated into a finished product within a few hours of its delivery.  A supplier's failure to make scheduled shipments may have immediate and dramatic consequences…. Thus, a breach of contract in the automotive industry may be more coercive than in other industries. [*Id.* at 798 n.7.]

The court further stated: "[i]t is hardly necessary to add that Kelsey-Hayes' normal legal remedy of accepting Galtaco's breach of contract and then suing for damages would have been ***inadequate under the circumstances*** because Kelsey-Hayes' business reputation may have suffered and its major customers may have been forced to shut down its automobile production line." *Id.* at 798 (emphasis added).

Indeed, JST has previously acknowledged that its refusal to supply the Connectors would cause Bosch irreparable injury.  Under Paragraph 8.2 of the POTC, JST acknowledged and agreed that, in any action brought to enforce JST's "obligations in connection with the production or ***delivery of***" the [Connectors], monetary damages would not be a sufficient remedy for any actual, anticipated or threatened breach of the POTC and, therefore, that Bosch "***shall be entitled to specific performance including injunctive or other equitable relief***."  (POTC ¶ 8.2 (emphasis added).)

Here, if JST does not continue to produce and supply the Connectors pursuant to the Supply Agreements, Bosch will face a severe supply interruption of body control modules to

4

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

General Motors, which will quickly cause a shutdown of the production and sale of a huge number of General Motors' vehicles. The impact of such a production shutdown would severely damage Bosch's relationship with General Motors, Bosch's reputation and goodwill in the automotive industry, and General Motors' reputation and goodwill with its customers. Such damage to Bosch's and General Motors' reputation and goodwill cannot be easily measured or fully compensated in monetary damages.

JST knows the far-reaching consequences of its decision to cease its production and supply of the Connectors to Bosch. Indeed, JST is threatening to stop supplying the Connectors as part of its attempt to renegotiate the terms of the Supply Agreements precisely because JST knows the catastrophic effect that this disruption would have on Bosch. The harm to Bosch's reputation and goodwill from a shutdown would be irreparable. Without question, General Motors will be dissatisfied with Bosch's performance if JST's refusal to produce and supply the Connectors causes General Motors to shut down the production and sale of its vehicles. As a result, it is very probable that General Motors might seek to do business with Bosch's competitors or refuse to enter into future contracts with Bosch. Thus, this factor weighs heavily in favor of granting Bosch's motion.

### 2. Bosch Is Likely To Prevail On Its Breach Of Contract Claim.

Bosch is likely to prevail on the merits of its claim that the Supply Agreements require that JST continue supplying Bosch with the Connectors while the parties resolve their underlying contract dispute in mediation or arbitration. Section 32 of the POTC governs the parties' mandatory dispute resolution procedures. Under Section 32, the parties are first required to try to resolve any dispute through good faith negotiations. (POTC ¶ 32.1.) If the parties are unable to resolve their dispute through negotiations within a reasonable time, either party may request non-binding mediation by a mediator approved by both parties. (*Id.*) If mediation fails to

5

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

resolve the dispute within thirty (30) days after the first mediation session, the parties are required to resolve the dispute through binding arbitration. (*Id.*) The POTC, however, explicitly provide that "[w]hile the arbitration proceedings are pending, ***the parties shall continue to perform their obligations under the Contract*** without setoff for any matters being contested in the arbitration proceedings." (*Id.* (emphasis added).) Thus, JST is required to continue supplying the Connectors to Bosch while the parties engage in the dispute resolution provisions required by the Supply Agreements. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW, Local 6000 v. State of Mich.*, 194 Mich. App. 489, 508-509, 491 N.W.2d 855, 863 (Mich. App. 1992) (holding that a preliminary injunction was appropriate to preserve the *status quo* pending the parties' mandatory arbitration to avoid potentially nullifying an award by the arbitrator). Bosch has continued to place orders for and accept shipments of, and pay for, the Connectors despite the parties' disagreements as to exclusivity.

This Court recently entered an injunctive order in Bosch's favor, relying, in part, on POTC ¶ 32.1, in a similar supply dispute that Bosch filed against another supplier who was refusing to perform. *See* Opinion and Order re Plaintiff's Motion for Preliminary Injunction dated June 19, 2014, in *Robert Bosch Battery Systems, LLC v. Samsung SDI America, Inc., et al*, Case No. 14-141294-CK (Hon. James M. Alexander) (Exhibit A.) ("Read as a whole, Paragraph 32.1 takes great pains to provide that the parties try to resolve disputes through various ADR methods, and while those methods are explored, the parties continue to perform their obligations under their Agreements . . . For all of the foregoing reasons, the Court finds that [Bosch] has established its entitlement to a preliminary injunction." *Id*. at pp. 3-4.)

Additionally, although Bosch is not required to prevail on the merits of the underlying dispute to be entitled to a preliminary injunction in this case, it is worth noting that Bosch is

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

likely to prevail on the merits of the underlying dispute.  The Supply Agreements do not prohibit Bosch from sourcing to another supplier for different connector business at Bosch plants not referenced in the Supply Agreements.  Accordingly, this factor also weighs heavily in favor of granting Bosch's motion.

### 3.   The Issuance Of A Preliminary Injunction Will Not Harm JST.

The third factor that this Court must consider is the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be harmed by the granting of the requested relief.  *See Niedzialek*, 331 Mich. at 301, 49 N.W.2d at 275 (issuing a preliminary injunction, in part, because if the actions taken by the defendant are not temporarily restrained the plaintiff's business will be completely ruined or at least suffer irreparable damages, but granting the temporary injunctive relief would not subject the defendant to any material ultimate damage or deprivation of rights).

Here, the relative harm of issuing or not issuing the injunction weighs heavily in favor of issuing the injunction.  As stated above, without the injunction, Bosch, and likely General Motors, will be made to suffer "disastrous consequences."  In contrast, if an injunction is granted and the Court orders preservation of the *status quo*, JST will simply continue to perform under the terms of the Supply Agreements, which require JST to supply Connectors until 2017, and it will continue to be paid in accordance with the contract provisions it accepted.  In fact, an injunction may actually benefit JST because it will reduce the amount of monetary damages that Bosch will seek from JST as part of the underlying dispute for failure to comply with the terms of the Supply Agreements.  This factor, likewise, weighs strongly in favor of granting Bosch's motion.

### 4. **The Public Interest Supports Granting Injunctive Relief.**

Finally, public policy strongly favors the issuance of an injunction in this case. The public interest is served by an injunction because of the adverse consequences that Bosch, General Motors, and ultimately consumers, will suffer if JST is not compelled to perform. The Connectors supplied by JST are critical to General Motors' production of 3.8 million vehicles annually (46% of GM's global volume). If JST does not supply the Connectors, Bosch cannot supply the body control modules, and customers will soon be unable to purchase huge numbers of General Motors' vehicles.

The employees who work for Bosch and General Motors will also suffer harm if General Motors' assembly lines are shut down because of the delay in the delivery of the Connectors. Clearly the public interest in protecting these customers and employees is great. The public interest is also served when contracting parties are made to follow through on their promises. *See AFSCME Local 207 v. City of Detroit*, No. 271321, 2007 WL 3036742, at *4 (Mich. App. Oct. 18, 2007) (holding that there was no public interest in allowing the city to discipline an employee in violation of his contract, but on the contrary, the public policy seemed to favor compliance with the contract); *see also Uniroyal Goodrich Tire Co. v. Hudson* 873 F. Supp. 1037, 1049 (E.D. Mich. 1994) (granting an injunction, in part, because "[t]he public has an interest in having valid contracts enforced…."). Thus, this factor weighs greatly in favor of granting Bosch's motion.

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

**CONCLUSION**

For all of the foregoing reasons, Plaintiff Robert Bosch LLC requests that the Court enter an Order, in substantially the same form as attached hereto, granting a preliminary injunction preserving the *status quo* by requiring Defendants JST America, JST Illinois, and JST Japan to continue shipping the contracted for Connectors pursuant to the parties' Supply Agreements, including the Bosch Terms and Conditions.

Respectfully submitted,

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:  May 19, 2015

9

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

<div style="writing-mode: vertical-rl">Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35</div>

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

      Plaintiff,                                                    Case No. 15-147126-CK

v.

                                         Hon. James M. Alexander

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI 48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## CERTIFICATE OF SERVICE

      I hereby certify that on today's date, I caused the electronic filing of the attached Motion for Preliminary Injunction, and that time-stamped copies will be hand-served today upon J.S.T. Sales America Inc.'s resident agent, and J.S.T. Corporation's resident agent, both of which are The Corporation Company at 30600 Telegraph Rd., Suite 2345, Bingham Farms, MI 48025.

      Additionally, I have emailed courtesy copies of the attached Motion for Preliminary Injunction, Plaintiff's Motion for Expedited Hearing on Preliminary Injunction, and Plaintiff's Verified Complaint for Injunctive Relief, Specific Performance, and Other Relief to: (i) the

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

attorney whom I understand has been retained by Defendants, Keith Scala, Myers Bradford, PLLC, The Duke Ellington Building, 2121 Ward Court, NW, 5th Floor, Washington, DC 20037, (202) 536-5701, kscala@myersbradford.com; (ii) the Manager of J.S.T. Sales America Inc., Mark Rei, (248) 207-2957, mark.rei@jstus.com; and (iii) the President of J.S.T. Mfg. Co., Ltd., Masao Yoshimura, 1A, International Business Park #04-01, Singapore 609933, myoshimura@jst.com.sg.

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiff*
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

Dated:  May 19, 2015

2

<div style="writing-mode: vertical">Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35</div>

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

      Plaintiff,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

Case No. 15-147126-CK

Hon. James M. Alexander

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI 48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

At a session of said Court, held in the city of Pontiac,
Oakland County, Michigan, on May_____, 2015

Present: _____

     This matter having come before the Court on Plaintiff's motion for a preliminary injunction, and the Court having considered the arguments of the parties and decided that the Plaintiff has met the legal and factual requirements necessary for the issuance of a preliminary injunction, including a showing of irreparable injury in the form of Plaintiff's inability to

maintain "just-in-time" supply for General Motors product lines and permanent damage to Plaintiff's customer relationships,

**IT IS ORDERED THAT** Defendants J.S.T. Mfg. Co., Ltd. ("JST Japan"), J.S.T. Sales America Inc. ("JST America") and J.S.T. Corporation ("JST Illinois") (collectively "JST") shall comply with all of their parts supply obligations to Plaintiff Robert Bosch LLC ("Bosch") under the parties' Supply Agreements until further order of this Court.

**IT IS FURTHER ORDERED THAT** JST shall continue to supply Bosch with all of Bosch's reasonable requirements of Connectors, which reasonable requirements Bosch will communicate to Defendants via releases, on the terms set forth in the parties' Supply Agreements until further order of this Court.

**IT IS FURTHER ORDERED THAT** the parties will comply with the dispute resolution procedures agreed to in the Supply Agreements.

_____
CIRCUIT COURT JUDGE

Dated: May _____, 2015

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

# EXHIBIT A

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**
**BUSINESS COURT**

**ROBERT BOSCH BATTERY SYSTEMS, LLC,**
     **Plaintiff,**

v.                                 **Case No. 14-141294-CK**
                                     **Hon. James M. Alexander**

**SAMSUNG SDI AMERICA, INC, and**
**SAMSUNG SDI CO, LTD,**
     **Defendants.**
_____/

**OPINION AND ORDER RE:**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

     This matter is before the Court on Plaintiff's motion for preliminary injunction. Defendant is the sole supplier of certain batteries that Plaintiff uses to create the battery pack that Chrysler exclusively uses in its Fiat 500e electric automobile. The parties currently dispute whether Defendant is supplying "conforming" batteries under the terms of the parties' agreements.

     Plaintiff claims that Defendants breached the agreements by supplying non-conforming batteries. Defendants, on the other hand, claim that Plaintiff breached the supply agreements by withholding PPAP approval of the batteries. Defendants also claim that Plaintiff's required battery specifications both impossible to produce and not required under the agreements. As a result, Defendants claim that Plaintiff breached or repudiated the supply agreement.

     As a result of this dispute, Defendants have or have threatened to stop shipping these batteries, which Plaintiff claims will result in the shutdown of Chrysler's 500e production. To

Received for Filing Oakland County Clerk 2014 MAY 19 PM 01:35

Received for Filing Oakland County Clerk 2018 MAY 19 PM 01:35

stop this from happening, Plaintiff filed the present motion – seeking a preliminary injunction requiring Defendants to continue shipping the batteries while the parties' underlying dispute is resolved through arbitration.

   When considering whether to grant injunctive relief:

> a court must consider (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued. Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist, 293 Mich App 143, 148; 809 NW2d 444 (2011).

On the first element, Plaintiff argues that it is likely to prevail on its claim that Defendants must continue supplying the battery cells while the parties resolve their underlying dispute because the parties' agreements so provide.

On September 14, 2012, the parties entered into both a Master Supply Agreement (MSA) and a Multi-Annual Contract (MAC). Paragraph 26 of the MSA specifically incorporated Bosch's North American Terms and Conditions of Purchase (POTC) requirements. In fact, said paragraph provides that, in the event that the MSA and another individual contract contradict, the POTC "shall prevail." (MSA at paragraph 26).

Under Paragraph 32 of the POTC (emphasis added):

> 32.1   Buyer and Seller shall first endeavor to resolve through good faith negotiations any dispute arising under the Order. IF a dispute cannot be resolved through good faith negotiations within a reasonable time, either party may request non-binding mediation by a mediator approved by both parties. If mediation fails to resolve the dispute within thirty (30) days after the first mediation session, all disputes arising out of or relating to the Order shall be resolved through binding arbitration. The arbitration proceedings shall be conducted before a panel of three arbitrators (one appointed by each party and the neutral appointed by the other two arbitrators) in accordance with the Commercial Rules of the American Arbitration Association including application of the Optional Rules for Emergency Measures of Protection and shall be governed by the United States

Received for Filing Oakland County Clerk 2018 MAY 19 PM 01:35

Arbitration Act and this Section 32.  The arbitration shall be conducted in the city and state, district or province of Buyer's primary place of business, and the language of the arbitration shall be English.  The arbitrators shall issue a written opinion setting forth the basis for the arbitrator's decision, which may include an award of legal fees and costs.  **While arbitration proceedings are pending, the parties shall continue to perform their obligations under the Contract without setoff for any matters being contested in the arbitration proceedings.**

Based on the foregoing, Plaintiff argues that Defendants are "required to continue supplying the Battery Cells . . . while the parties engage in the dispute resolution provisions required by the Supply Agreements."   And, Plaintiff points out, despite claiming that the batteries are non-conforming, it has continued to place orders for batteries and accept shipments of the same regardless of the merit of Defendants' breach of contract claim – as it is bound by the same performance obligation.

In response, Defendants spend much of their time arguing the merits of the underlying dispute – rather than the true issue – whether battery shipments must continue while the parties resolve their underlying dispute.

What little is offered by Defendants – that the Cobasys Terms control rather than the POTC – is unpersuasive.  Further, the Court rejects Defendants' argument that the arbitration is a prerequisite to continuing performance.  This reading strains logic and a common-sense interpretation of this provision.  Read as a whole, Paragraph 32.1 takes great pains to provide that the parties try to resolve disputes through various ADR methods, and while those methods are explored, the parties continue to perform their obligations under their Agreements.

Next, Plaintiff argues that it will suffer irreparable harm if Defendants stop battery shipments – which would stop production of Chrysler's 500e and significantly damage Plaintiff's relationship with Chrysler.  Further, under Paragraph 8.2 of the POTC, the parties agreed that

3

Received for Filing Oakland County Clerk 2015 MAY 19 PM 01:35

money damages were not a sufficient remedy if Defendant stopped performing under the agreements.

In support of its claim that a damaged business reputation can constitute irreparable harm, Plaintiff cites to Kelsey-Hayes Co v Galtaco Redlaw Castings Corp, 749 F Supp 794, 798 (ED Mich 1990). The Kelsey-Hayes Court concluded that irreparable harm can be established via the potentially catastrophic disruption of the supply chain to the automotive industry. The Court is persuaded by this reasoning.

While this case does not involve typical "just-in-time" delivery, the batteries are produced in Korea and shipped by sea to Plaintiff. The transit time is long, and any disruption could potentially cause Plaintiff to be unable to provide the battery packs to Chrysler, which would result in 500e production shutdown. Should this happen, Plaintiff's goodwill and reputation with Chrysler may be immeasurably damaged.

Next, Plaintiff argues that the issuance of an injunction will not harm Defendants more than not issuing one. The Court agrees and rejects Defendants claim that Plaintiff is building its damages with each battery shipment. Rather, as Plaintiff argues, it is mitigating its potential damages by accepting the "non-conforming" battery cells and subsequently modifying them to meet specifications. Damages are likely far worse than Defendants not shipping any batteries – causing a production shutdown.

Finally, Plaintiff claims that "public policy strongly favors the issuance of an injunction." The Court agrees and Defendants offer no real substantive argument otherwise.

For all of the foregoing reasons, the Court finds that Plaintiff has established its entitlement to a preliminary injunction. Defendants are to continue shipping the battery cells as

required by the parties' agreements while the parties engage in the ADR process to resolve their

underlying dispute.  Plaintiff may prepare and file an appropriate Injunctive Order.


       **IT IS SO ORDERED.**


June 19, 2014_____          ___/s/ James M. Alexander_____
Date                           Hon. James M. Alexander, Circuit Court Judge

Received for Filing Oakland County Clerk 2018 MAY 19 PM 01:35

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

       Plaintiff,                                Case No. 15-147126-CK

v.

                                           Hon. James M. Alexander

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

       Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI  48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## PLAINTIFF'S *EX PARTE* MOTION FOR
## EXPEDITED HEARING ON PRELIMINARY INJUNCTION

      Plaintiff Robert Bosch LLC ("Bosch"), by its counsel, Wienner & Gould, P.C. and Kaye Scholer LLP, brings this *ex parte* Motion for Expedited Hearing on Preliminary Injunction Motion, and states as follows:

      1.      Bosch has filed a Motion for Preliminary Injunction to preserve the *status quo* by requiring Defendants J.S.T. Mfg. Co., Ltd. ("JST Japan"), J.S.T. Corporation ("JST Illinois") and J.S.T. Sales America Inc. ("JST America") (collectively, "JST") to continue shipping horizontal

male electric plastic connectors ("Connectors") to Bosch pursuant to the parties' Supply Agreements.

2.      In breach of the Supply Agreements, on May 15, 2015, JST stopped shipment of the Connectors to Bosch.  (*See* Bosch's Verified Complaint, ¶ 2.)

3.      Bosch requires JST's Connectors for Bosch's assembly of body control modules that Bosch supplies to General Motors for use in approximately 3.8 million General Motors vehicles annually, which represents *46% of General Motors' annual global volume production*. The following vehicles will be detrimentally impacted: (a) <u>Chevrolet</u>: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer, S10, Spark, Legacy, Orlando, and Tracker; (b) <u>Buick</u>: Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) <u>GMC</u>: Terrain; (d) <u>Opel</u>: Astra, Corsa, Insignia, and Mokka; and (e) <u>Holden</u>: Trax and Cruze.

4.      If JST fails to produce and deliver the Connectors, Bosch and General Motors will suffer substantial and irreparable harm in the form of reputational damage and lost goodwill resulting from *a disruption in the supply chain and manufacturing shutdown* of Bosch's body control modules and, then, numerous General Motors vehicles.   (*Id.* at ¶¶ 6 and 39.)  Bosch will begin to run out of Connectors as early as June 20, 2015.

5.      As required, Bosch has noticed its Motion for Preliminary Injunction for a normal Wednesday motion hearing, on June 3, 2015.

6.      MCR 3.310(A)(3) provides: "A motion for a preliminary injunction must be filed and noticed for hearing in compliance with the rules governing other motions *unless the court orders otherwise on a showing of good cause.*".

7.      This is a critical situation for Bosch and General Motors.  Bosch requests a special hearing date so that there will be sufficient time for the Court to consider and hear oral

argument.  Given the gravity of the situation, Bosch also requests that this hearing occur earlier than June 3, 2015, if the Court's schedule permits.

8.      Counsel for Bosch will email a copy of this motion, and other papers filed contemporaneously herewith (*i.e.,* the Motion for Preliminary Injunction, Brief in Support, and Verified Complaint) to JST America's General Manager, Mark Rei.

9.      Counsel for Bosch will also serve this motion, the Motion for Preliminary Injunction, Brief in Support, and Verified Complaint on JST America's and JST Illinois' resident agents today.

10.     Counsel for Bosch will also email a copy of this motion, the Motion for Preliminary Injunction, Brief in Support, and Verified Complaint to JST Japan's President, Masao Yoshimura, and JST Japan's outside counsel (as designated by Mr. Yoshimura), Keith Scala of Myers Bradford, PLLC.

WHEREFORE, Plaintiff respectfully requests a hearing date on its Motion for Preliminary Injunction other than on a Wednesday and at the earliest available date and time, and for such other relief as the Court deems necessary and just.

<div style="text-align: right">

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

</div>

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:   May 19, 2015

4

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

       Plaintiff,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

       Defendants.

Case No. 15-147126-CK

Hon. James M. Alexander

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI 48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR EXPEDITED HEARING ON PRELIMINARY INJUNCTION

**BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE*
MOTION FOR EXPEDITED HEARING ON PRELIMINARY INJUNCTION**

In support of this motion, Plaintiff relies upon MCR 3.310(A)(3).

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

- and -

Alan N. Salpeter
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com

*Attorneys for Plaintiff*

Dated:  May 19, 2015

2

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

       Plaintiff,                          Case No. 15-147126-CK

v.

                                       Hon. James M. Alexander

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

       Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Dan Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI  48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## ORDER GRANTING
## PLAINTIFF'S *EX PARTE* MOTION FOR
## EXPEDITED HEARING ON PRELIMINARY INJUNCTION

Plaintiff Robert Bosch LLC having filed on May 19, 2015 an *Ex Parte* Motion for

Expedited Hearing on Preliminary Injunction, and the Court being otherwise fully advised in the

premises;

**IT IS ORDERED THAT** Plaintiff's *Ex Parte* Motion for Expedited Hearing on

Preliminary Injunction is hereby granted, and the Court will conduct a hearing on Plaintiff's

Motion for Preliminary Injunction on _____, 2015, at _____ a.m./p.m.

_____
CIRCUIT COURT JUDGE

Dated:  May _____, 2015

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ROBERT BOSCH LLC,

       Plaintiff,                        Case No. 15-147126-CK

v.

                                     Hon. James M. Alexander

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

       Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | KAYE SCHOLER LLP |
| Daniel K. Beitz (P47451) | *Attorneys for Plaintiff* |
| WIENNER & GOULD, P.C. | 70 West Madison Street, Ste. 4200 |
| *Attorneys for Plaintiff* | Three First National Plaza |
| 950 W. University Dr., Ste. 350 | Chicago, Illinois 60602 |
| Rochester, MI 48307 | (312) 583-2300 |
| (248) 841-9400 | alan.salpeter@kayescholer.com |
| twienner@wiennergould.com | |
| sgould@wiennergould.com | |
| dbeitz@wiennergould.com | |

_____/

## CERTIFICATE OF SERVICE

      I hereby certify that on today's date, I caused the electronic filing of the attached *Ex Parte* Motion for Expedited Hearing on Preliminary Injunction, and that time-stamped copies will be hand-served today upon J.S.T. Sales America Inc.'s resident agent, and J.S.T. Corporation's resident agent, both of which are The Corporation Company at 30600 Telegraph Rd., Suite 2345, Bingham Farms, MI 48025.

      Additionally, I have emailed courtesy copies of the attached *Ex Parte* Motion for Expedited Hearing on Preliminary Injunction, Plaintiff's Motion for Preliminary Injunction, and

Plaintiff's Verified Complaint for Injunctive Relief, Specific Performance, and Other Relief to: (i) the attorney whom I understand has been retained by Defendants, Keith Scala, Myers Bradford, PLLC, The Duke Ellington Building, 2121 Ward Court, NW, 5th Floor, Washington, DC 20037, (202) 536-5701, kscala@myersbradford.com; (ii) the Manager of J.S.T. Sales America Inc., Mark Rei, (248) 207-2957, mark.rei@jstus.com; and (iii) the President of J.S.T. Mfg. Co., Ltd., Masao Yoshimura, 1A, International Business Park #04-01, Singapore 609933, myoshimura@jst.com.sg.

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiff*
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

Dated:  May 19, 2015

2

# NOTICE TO CIRCUIT COURT

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND


ROBERT BOSCH LLC,

                Plaintiff,

      v.                                    Case No. 2015-147126-CK

J.S.T. MFG. CO, LTD.,   J.S.T SALES          Hon. James M. Alexander
AMERICA INC., and J.S.T.
CORPORATION,

                Defendants.

_____/

**WIENNER & GOULD, P.C.**          **BUTZEL LONG, a professional corporation**
S. Thomas Wienner (P29233)          Bruce L. Sendek
**Co-counsel for Plaintiff**          **Attorney for Defendants**
950 W. University Dr., Ste. 350        150 West Jefferson, Suite 100
Rochester, MI 48307             Detroit, MI 48226-4452
Telephone: (248) 841-9401         Telephone: (313) 225-7000

**KAYE SCHOLER LLP**
Alan N. Salpeter
**Co-counsel for Plaintiff**
Three First National Plaza
70 W.  Madison St., Ste 4200
 Chicago, IL 60602,

_____/

## <u>NOTICE OF FILING REMOVAL</u>

**TO:   THE CLERK OF THE CIRCUIT COURT , OAKLAND COUNTY, MICHIGAN
and PLAINTIFF ROBERT BOSCH LLC**


PLEASE TAKE NOTICE that Defendants J.S.T. Mfg. Co. Ltd. ("JST"), and J.S.T.

Corporation, with consent of named Defendant J.S.T. Sales America Inc., by and through its

undersigned counsel, Butzel Long, a professional corporation, filed a NOTICE OF REMOVAL

of this action from the Circuit Court of Oakland County, Michigan to the United States District

Court for the Eastern District of Michigan.  A true and correct copy of the NOTICE OF REMOVAL filed in the United States District Court for the Eastern District of Michigan is attached hereto.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1446(d), the filing of the NOTICE OF REMOVAL in the federal court, together with the filing of this NOTICE OF FILING REMOVAL (with a copy of the NOTICE OF REMOVAL) in this Court, effects the removal of this action to the United States District Court for the Eastern District of Michigan "and the State court shall proceed no further unless and until the case is remanded."

Dated: May 20, 2015                          Respectfully submitted,

                                             **BUTZEL LONG, a professional corporation**

                                             By: /s/  *Bruce L. Sendek*
                                                    Bruce L. Sendek (P28095)
                                                    150 West Jefferson, Suite 100
                                                    Detroit, MI 48226-4452
                                                    (313) 225-7000
                                                    sendek@butzel.com

                                                    *Attorney for Defendants*

-2-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2015, I electronically submitted the foregoing papers for filing with the Oakland County Circuit Court via Odyssey File & Serve, the method of service prescribed for this electronic filing case, which will send notification of such filing to all registered ECF participants listed in this case.  A courtesy copy has also been sent to counsel of record at their captioned addresses via First Class Mail on today's date.

Dated:  May 20, 2015

**BUTZEL LONG, a professional corporation**

By: /s/  *Bruce L. Sendek* _____
       Bruce L. Sendek (P28095)
       150 West Jefferson, Suite 100
       Detroit, MI 48226-4452
       (313) 225-7000
       sendek@butzel.com

       *Attorney for Defendants*