## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT BOSCH LLC and
BOSCH AUTOMOTIVE PRODUCTS
(SUZHOU) CO., LTD.,

      Plaintiffs,                 Case No. 2:15-cv-11832-AC-EAS

v.                                 Hon. Avern Cohn

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

_____/

S. Thomas Wienner (P29233)       Alan N. Salpeter
Seth D. Gould (P45465)            Dina M. Hayes
Daniel K. Beitz (P47451)          KAYE SCHOLER LLP
WIENNER & GOULD, P.C.       *Attorneys for Plaintiffs*
*Attorneys for Plaintiffs*       70 West Madison Street, Ste. 4200
950 W. University Dr., Ste. 350   Three First National Plaza
Rochester, MI 48307          Chicago, IL 60602
(248) 841-9400                (312) 583-2300
twienner@wiennergould.com     alan.salpeter@kayescholer.com
sgould@wiennergould.com        dina.hayes@kayescholer.com
dbeitz@wiennergould.com

Bruce L. Sendek (P28095)
BUTZEL LONG PC
*Attorneys for Defendants*
150 W. Jefferson Ave., Ste. 100
Detroit, MI 48226
(313) 225-7000
sendek@butzel.com

_____/

## FIRST AMENDED COMPLAINT VERIFIED

## INTRODUCTION

1.      Plaintiffs Robert Bosch LLC and Bosch Automotive Products (Suzhou) Co., Ltd. (jointly "Bosch"), by and through their counsel, Wienner & Gould, P.C. and Kaye Scholer LLP, bring this action to stop Defendants J.S.T. Mfg. Co., Ltd. ("JST Japan"), J.S.T. Corporation ("JST Illinois"), and J.S.T. Sales America Inc. ("JST America") from cutting off Bosch's supply of electric plastic connectors, part numbers 6002.JE0.402 and 3284.489.855, used in General Motors and Daihatsu vehicles, respectively (jointly, "Connectors"). (JST Japan, JST Illinois, and JST America are collectively referred to herein as "JST" or "Defendants.")

2.      Bosch brings this action after JST suddenly, unexpectedly, and unlawfully announced that it would be stopping the supply of Connectors to Bosch.  JST disputes Bosch's right to certify a different supplier for different connector parts at plants not subject to the parties' supply agreements.  JST also claims that Bosch disclosed JST's confidential information to other suppliers. Both claims are baseless.

3.      In any event, such claims are to be resolved, as the parties agreed, by mediation and arbitration, and Defendants are contractually required to continue supplying the Connectors pending a resolution of these contract disputes through mediation and arbitration (which have not yet occurred).

4.     A shutdown in the supply of Connectors will be catastrophic. Bosch assembles the Connectors supplied by JST into body control modules and airbag control modules that Bosch sells to General Motors and Daihatsu (a Toyota affiliate), respectively.

5.     With respect to General Motors, JST's refusal to ship Connectors will jeopardize approximately *3.8 million General Motors vehicles annually*, which represents *46% of General Motors' global volume production*. The following vehicles will be threatened: (a) <u>Chevrolet</u>: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer, S10, Spark, Legacy, Orlando, and Tracker; (b) <u>Buick</u>: Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) <u>GMC</u>: Terrain; (d) <u>Opel</u>: Astra, Corsa, Insignia, and Mokka; and (e) <u>Holden</u>: Trax and Cruze ("GM affected vehicles").

6.     Bosch is the sole supplier of the body control modules for the GM affected vehicles.  General Motors cannot manufacture those vehicles without the body control modules supplied by Bosch, and Bosch cannot manufacture the body control modules without the Connectors supplied by JST.

7.     Daihatsu, likewise, will be significantly harmed by JST's cessation of supply.[1]

8.     Absent injunctive relief, Bosch will begin to run out of Connectors in its production facilities *as early as the second half of June 2015*.

9.     Without JST's supply of Connectors, Bosch's deliveries to General Motors and Daihatsu will therefore halt, and these customers will be unable to continue to manufacture and sell the affected vehicles within weeks.

## PARTIES AND JURISDICTION

10.     Robert Bosch LLC is a Delaware limited liability company with its principal place of business in Farmington Hills, Michigan. Robert Bosch LLC conducts business in this judicial district.

11.     Bosch Automotive Products (Suzhou) Co., Ltd. is a Chinese corporation with its principal place of business in Suzhou, China.

12.     JST Japan is a Japanese corporation with its principal place of business in Osaka, Japan.  JST Japan conducts business in this judicial district.

---

[1]  Additionally, JST has threatened to cut off the supply of different connectors for other programs, which involve customers other than General Motors and Daihatsu.  Bosch's Verified Amended Complaint does not presently request injunctive and other relief associated with these other programs and customers, but Bosch reserves the right to amend its pleadings in the event that JST's actions threaten a shutdown on these other programs.

13.    JST Illinois is an Illinois corporation with its principal place of business in Illinois.  JST Illinois conducts business in this judicial district.

14.    Upon information and belief, JST America is an Illinois corporation with its principal place of business in Illinois. JST America conducts business in this judicial district.

15.    JST America and JST Illinois are authorized agents of JST Japan, conducting business on its behalf with full authority to bind JST Japan in business transactions within this judicial district.

16.    Venue and jurisdiction are proper in this Court because there is diversity of citizenship and the amount in controversy, exclusive of interest and attorney fees, is in excess of $75,000.

## GENERAL ALLEGATIONS

17.    JST has supplied Connectors to Bosch since 2008.

18.    Bosch assembles the Connectors into body and airbag control modules, which Bosch sells to General Motors and Daihatsu, respectively.

19.    The following agreements detail and govern the supply relationship between Bosch and JST: (a) Master Pricing Contract, No. K01MC12AB6/1, dated February 15, 2013 and Master Pricing Contract, No. K01YC14AB6/0, dated January 1, 2014 (jointly, "Pricing Contracts," Ex. A.); (b) the Robert Bosch LLC North American Terms and Conditions of Purchase ("POTC," Ex. B);

(c) the Confidential Information and Non-Disclosure Agreement and Grant of License effective March 1, 2005 ("Non-Disclosure Agreement," Ex. C.); (d) a Corporate Agreement dated April 29, 2009 ("Corporate Agreement," Ex. D.); and (e) Pre-Production Agreement dated May 4, 2007 ("Pre-Production Agreement," Ex. E.).

20.    The Pricing Contracts, among other things, obligate JST to provide the Connectors for the General Motors production over a five-year period (2012-2017).  (Ex. A.)

21.    The POTC is explicitly incorporated by reference into the Pricing Contracts (". . . the Robert Bosch LLC Terms and Conditions shall apply") and governs the dispute resolution procedures between Bosch and JST regarding the Connectors.

22.    The Non-Disclosure Agreement pertains to the obligations to protect certain confidential information of the parties.

23.    The Corporate Agreement contains specific provisions regarding termination and cancellation of the supply relationship, including proper notice requirements.   Section 18 of the Corporate Agreement imposes a "resupply obligation" on JST continuing for 10 years. (Ex. D.)   And Section 3 allows Bosch to extend supply for 8 months after expiration of any supply agreement. (Ex. D.)

24.     The Pre-Production Agreement, among other things, sets the pricing schedule for the Connectors.  (Ex. E.)

25.     The     Non-Disclosure     Agreement,     Corporate     Agreement, Pre-Production   Agreement,   Pricing   Contracts,   and   related   scheduling agreements, releases, and POTC are collectively referred to as the "Supply Agreements."

## SUPPLY DISPUTE

26.     Earlier this year, in late February 2015, JST advised Bosch that it would no longer supply Connectors for the body control modules Bosch supplies to General Motors (cutting Bosch off in March 2015), because Bosch certified an additional supplier in order to meet demands for ***a different part*** not subject to the Supply Agreements.

27.     In March 2015, the top automotive purchasing executive in the Bosch group of companies, Albin Ettle, traveled from Germany to Singapore to meet with JST's president, Masao Yoshimura.  Although the Supply Agreements obligate JST to supply Bosch's requirements for the Connectors through 2017, JST demanded that Bosch make a final "spot buy" for 13 months' worth of supply with a volume commitment of 300,000 Connectors per month for the General Motors production.  Faced with the prospect of immediate production shutdowns, Bosch agreed to these new terms to mitigate its damages and as a

gesture of good faith (Bosch did so under protest).

28.     With the understanding that such modifications had resolved the parties' supply dispute, Bosch issued a Purchase Order on May 14, 2015.

29.     Unexpectedly, on May 15, 2015, JST reneged on the proposed contract modifications, sent correspondence attempting to immediately cancel the Supply Agreements, and advised Bosch that JST would no longer ship Connectors to Bosch for the General Motors production, nor honor Bosch releases issued after May 8, 2015.  (Ex. F.)  Thereafter, JST has announced that it will not supply Connectors necessary for Bosch to continue to produce airbag control modules for Daihatsu.

30.     JST has also refused Bosch's requests to participate in additional negotiations.  (Ex. G.)

31.     JST's conduct is improper and contrary to JST's supply obligations under the Supply Agreements.

32.     Upon information and belief, JST refuses to continue performance because of a contract dispute relating to whether the Supply Agreements entitle JST to be the exclusive supplier for all types of connector parts purchased by Bosch or just the Connectors (*i.e.,* whether Bosch may obtain different connector parts for other projects from a different supplier).

33.     Upon information and belief, JST threatens a cessation of supply

because JST wants Bosch to give up its right to source different connector business to a different supplier.

34.    With respect to body control modules supplied to General Motors, Bosch has fulfilled its commitment to source JST for 100% of the Connectors ordered by two Bosch plants subject to the Supply Agreements (Suzhou, China and Juarez, Mexico).

35.    There is nothing in the Supply Agreements that prohibits Bosch from using a different supplier for different parts for other Bosch facilities, which are *not* subject to the Supply Agreements.

36.    JST's demand for exclusivity beyond what is required by the Supply Agreements is improper.

37.    JST also claims, incorrectly, that Bosch has provided confidential information of JST to other suppliers.

38.    Bosch denies any wrongdoing, particularly any breach of the Supply Agreements or any other agreement with JST.

39.    Bosch has continued to place orders for and accept shipments of, and pay for, the Connectors despite the parties' disagreements as to exclusivity.

## JST AGREED TO CONTINUE SUPPLYING
## CONNECTORS PENDING MEDIATION AND ARBITRATION

40.    With respect to Connectors supplied by JST for body control modules supplied to General Motors, JST agreed to resolve any contract dispute,

not in this proceeding, but *via* good faith discussions, mediation and arbitration. (Ex. B, POTC ¶ 32.1, ***parties agree to participate in (a) "good faith negotiations," (b) "non-binding mediation by a mediator approved by both parties," and, then, if necessary, (c) "binding arbitration.***" *Id;* emphasis added.)

41.   "[Pending mediation or arbitration,] ***the parties shall continue to perform their obligations under the Contract.***"  (Ex. B, POTC ¶ 32.1; emphasis added.)

42.   No mediation or arbitration has occurred.

43.   Under these circumstances, JST may not cease supply to improve its bargaining position on this, or any, contract dispute with Bosch.

44.   Moreover, JST has agreed that monetary damages are not a sufficient remedy for [Bosch for] any actual, anticipated or threatened breach of the Supply Agreements by JST, and that "[Bosch is] entitled to specific performance ***including injunctive*** or other equitable ***relief***" as a remedy for any JST breach of its "obligations in connection with the production or delivery of [the Connectors]." (Ex. B, POTC ¶ 8.2 (emphasis added).)

45.   JST's dispute, to the extent applicable to the Daihatsu-related Connectors, is subject to different purchase terms and conditions, which authorize a lawsuit in this jurisdiction.

46.   If JST fails to produce and deliver the Connectors to Bosch, Bosch

10

will not be able to continue its supply of control modules *as early as the second half of June 2015*.

47.     Daihatsu and General Motors will be unable to continue to manufacture and sell their vehicles within weeks.

48.     The financial and reputational damage to Bosch, General Motors, and Daihatsu will be irreparable, immediate, and devastating.

49.     On May 15, 2015, Bosch wrote to JST, stating that, if JST stopped shipments of the Connectors, Bosch would have to take action to prevent an imminent and catastrophic production shutdown.  (Ex. G.)

50.     Bosch cannot, because of the time required to resource and revalidate the Connectors and prepare them for delivery to General Motors and Daihatsu, easily or quickly resource this business to another supplier.

51.     At present, JST and another company, Foxconn, supply connectors to Bosch for other General Motors programs that are separate and distinct from the programs mentioned in paragraph 5 above.

52.     Foxconn, however, lacks the capacity to take over JST's business.[2]

---

[2] Bosch validated Foxconn previously for *different* connectors in *different* Bosch plants, which are *not* subject to the Supply Agreements.  Bosch turned to Foxconn because JST had indicated an *inability* to supply these different connector parts required at non-Supply Agreement-plants.

2:15-cv-11832-AC-EAS   Doc # 5   Filed 05/25/15   Pg 12 of 25   Pg ID 132

53.     JST's Connectors are necessary and critical to numerous General Motors and Daihatsu programs, and Bosch's inability to provide these components will cause immediate and severe harm to Bosch, General Motors, and Daihatsu.

## COUNT I
## INJUNCTIVE RELIEF

54.     Bosch incorporates by reference all preceding paragraphs.

55.     JST agreed to supply Bosch with the Connectors until at least 2017.

56.     Nevertheless, JST recently stated that it will stop supplying the Connectors to Bosch and sent correspondence purportedly cancelling all of the Supply Agreements.

57.     The Supply Agreements, by their own terms, require JST to continue supply (*e.g.,* Connectors for control modules supplied to General Motors must be supplied through 2017).

58.     JST's actions threaten the "just-in-time" supply chain for numerous General Motors and Daihatsu programs, and Bosch's delivery of control modules (using the Connectors) will halt *as early as the second half of June 2015* if JST is permitted to cease shipment of the contracted Connectors.

59.     Bosch cannot obtain the Connectors from a substitute source in sufficient quantities and in sufficient time to prevent irreparable harm to Bosch, General Motors, and Daihatsu.

60.    As a direct result of JST's improper actions, the harm to Bosch is immediate, irreparable and not quantifiable (let alone easily quantifiable) by a court of law.

61.    There is no harm to JST by requiring the continued supply of Connectors in accordance with the parties' Supply Agreements.

62.    Every day that goes by when the Connectors are not being manufactured and prepared for delivery to Bosch intensifies Bosch's urgent predicament with General Motors and Daihatsu.

63.    In the absence of injunctive relief, Bosch will suffer irreparable harm in the form of lost goodwill and permanent damage to its customer relationships.

WHEREFORE, Bosch requests that this Court enter the following orders:

a. Temporary, preliminary, and permanent injunctive relief, under Fed. R. Civ. P. 65, preventing JST from taking any action inconsistent with its supply obligations to Bosch;

b. Temporary, preliminary, and permanent mandatory injunctive relief, under Fed. R. Civ. P. 65, requiring JST to supply Bosch pursuant to the Supply Agreements to satisfy Bosch's reasonable requirements for the General Motors and Daihatsu programs specified above;

13

    c.  An award of legal fees and other costs arising out of JST's breach of contract; and

    d.  All other relief that this Court deems just, equitable, or appropriate under the circumstances.

## COUNT II
## BREACH OF CONTRACT

(Bosch asserts this Count in the event JST refuses to mediate and/or arbitrate its contract dispute with Bosch and if this Court does not order binding arbitration.)

64.    Bosch incorporates by reference all preceding paragraphs.

65.    Bosch and JST are parties to the Supply Agreements.

66.    Bosch has fully complied with all of its obligations under the Supply Agreements.

67.    By refusing to supply Bosch with Connectors under the Supply Agreements, JST has anticipatorily repudiated and breached the Supply Agreements.

68.    As a direct and proximate result of JST's breach, Bosch has suffered and will continue to suffer substantial damages.

WHEREFORE, Bosch requests that this Court enter a judgment in its favor and against JST in an amount in excess of $75,000.00 to which it is found to be entitled, plus interest, costs, and attorneys' fees.

14

## COUNT III
## SPECIFIC PERFORMANCE

(Bosch asserts this Count in the event JST refuses to mediate and/or arbitrate its contract dispute with Bosch and if this Court does not order binding arbitration.)

69.     Bosch incorporates by reference all preceding paragraphs.

70.     There is no adequate remedy at law for the harm caused by JST's actual and anticipatory breach of the Supply Agreements.

71.     Pursuant to MCL § 440.2716, Bosch is entitled to specific performance. Section 2716 states, in pertinent part, that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances."

72.     Proper circumstances exist here because the Connectors are unique, and Bosch is not able to obtain an alternative source of supply in sufficient quantities and in sufficient time to avoid irreparable harm.

WHEREFORE, Bosch requests that this Court enter the following orders:

a. JST is ordered to supply Connectors to Bosch pursuant to the parties' Supply Agreements until further order of Court; and

b. JST is ordered to comply with the dispute resolution procedures agreed to in the Supply Agreements until further order of Court.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(AGAINST JST JAPAN ONLY)**

(Bosch asserts this Count in the event JST refuses to mediate and/or arbitrate its contract dispute with Bosch and if this Court does not order binding arbitration.)

73.    Bosch incorporates by reference all preceding paragraphs.

74.    Bosch and General Motors are parties to agreements providing, among other things, for Bosch to supply body control modules to General Motors.

75.    Bosch and Daihatsu are parties to agreements providing, among other things, for Bosch to supply airbag control modules to Daihatsu.

76.    JST Japan is well aware of Bosch's supply agreements with General Motors and Daihatsu.

77.    JST Japan recently stated that it will stop the supply of Connectors to Bosch and JST purportedly cancelled all Supply Agreements with Bosch with the unlawful and tortious intention of disrupting Bosch's business relationships with General Motors and Daihatsu.  Upon information and belief, JST Japan seeks to leverage the consequent supply disruption as a means of obtaining more favorable contract rights than those presently afforded to JST Japan under the Supply Agreements with Bosch.

78.    Such interference by JST Japan is without reasonable justification, tortious and has caused injury and damages to Bosch.

79.    Such interference by JST Japan, if not ended shortly by injunctive

16

order, will directly cause Bosch to breach its agreements with General Motors and Daihatsu.

80.    Bosch's injury and damages will continue and dramatically increase unless injunctive relief is granted in Bosch's favor against JST Japan.

WHEREFORE, Bosch requests that this Court enter a judgment in its favor and against JST Japan in an amount in excess of $75,000.00 to which it is found to be entitled, plus interest, costs, and attorneys' fees.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(AGAINST JST AMERICA AND JST ILLINOIS ONLY)**

(Bosch asserts this Count in the event JST refuses to mediate and/or arbitrate its contract dispute with Bosch and if this Court does not order binding arbitration. Moreover, Bosch pleads Count V *alternatively* in the event no privity of contract is found between Bosch and JST America and/or JST Illinois.)

81.    Bosch incorporates by reference all preceding paragraphs.

82.    Bosch and JST Japan are parties to the Supply Agreements, which, among other things, require JST Japan to supply the Connectors to Bosch.

83.    Similarly, Bosch and General Motors are parties to agreements, which, among other things, require Bosch to supply certain body control modules to General Motors.

84.    Bosch also is a party to agreements with Daihatsu, which, among other things, require Bosch to supply certain airbag control modules to Daihatsu.

85.    JST America and/or JST Illinois are well aware of the foregoing

contracts between (a) Bosch and JST Japan; (b) Bosch and General Motors, and (c) Bosch and Daihatsu.

86.   JST America and/or JST Illinois recently sent Bosch notices of cancellation of the Supply Agreements.

87.   JST America and/or JST Illinois also recently advised Bosch that they are stopping all supply of the Connectors.

88.   Such interference by JST America and/or JST Illinois is unlawful, tortious, and without legitimate business purpose.  These defendants are disrupting supply as a means of obtaining more favorable contract rights than those presently afforded in Supply Agreements with Bosch.

89.   Such interference by JST America and/or JST Illinois has caused JST Japan to breach the Supply Agreements.

90.   Such interference by JST America and/or JST Illinois, if not ended shortly by injunctive order, will cause Bosch to breach the agreements with General Motors and Daihatsu.

91.   Such interference by JST America and/or JST Illinois has caused injury and damages to Bosch.

92.   Bosch's injury and damages will continue and dramatically increase unless injunctive relief is granted in Bosch's favor against JST.

WHEREFORE, Bosch requests that this Court enter a judgment in its favor and against JST America and/or JST Illinois in an amount in excess of $75,000.00 to which it is found to be entitled, plus interest, costs, and attorneys' fees.

/s/ S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
twienner@wiennergould.com
sgould@wiennergould.com

-- and --

Alan N. Salpeter
Dina M. Hayes
KAYE SCHOLER LLP
Three First National Plaza
70 West Madison Street, Ste. 4200
Chicago, IL  60602
alan.salpeter@kayescholer.com
dina.hayes@kayescholer.com

*Attorneys for Plaintiffs*

Dated:   May 25, 2015

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT BOSCH LLC and
BOSCH AUTOMOTIVE PRODUCTS
(SUZHOU) CO., LTD.,

      Plaintiffs,               Case No. 2:15-cv-11832-AC-EAS

v.                           Hon. Avern Cohn

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

_____/

| | |
|---|---|
| S. Thomas Wienner (P29233) | Alan N. Salpeter |
| Seth D. Gould (P45465) | Dina M. Hayes |
| Daniel K. Beitz (P47451) | KAYE SCHOLER LLP |
| WIENNER & GOULD, P.C. | *Attorneys for Plaintiffs* |
| *Attorneys for Plaintiffs* | 70 West Madison Street, Ste. 4200 |
| 950 W. University Dr., Ste. 350 | Three First National Plaza |
| Rochester, MI  48307 | Chicago, IL  60602 |
| (248) 841-9400 | (312) 583-2300 |
| twiener@wiennergould.com | alan.salpeter@kayescholer.com |
| sgould@wiennergould.com | dina.hayes@kayescholer.com |
| dbeitz@wiennergould.com | |

Bruce L. Sendek (P28095)
BUTZEL LONG PC
*Attorneys for Defendants*
150 W. Jefferson Ave., Ste. 100
Detroit, MI  48226
(313) 225-7000
sendek@butzel.com

_____/

## CERTIFICATE OF SERVICE

## **CERTIFICATE OF SERVICE**

I hereby certify that on today's date, I caused the electronic filing of ***First Amended Complaint Verified*** with the Clerk of the Court using the electronic case filing system which will send notification of such filing to all filing users indicated on the electronic notice list through the Court's electronic filing system.

/s/ S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
WIENNER & GOULD, P.C.
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com
sgould@wiennergould.com

Dated:   May 25, 2015

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT BOSCH LLC and
BOSCH AUTOMOTIVE PRODUCTS
(SUZHOU) CO., LTD.,

      Plaintiffs,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

      Defendants.

Case No. 2:15-cv-11832-AC-EAS

Hon. Avern Cohn

_____/

S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
Daniel K. Beitz (P47451)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiffs*
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400
twienner@wiennergould.com
sgould@wiennergould.com
dbeitz@wiennergould.com

Bruce L. Sendek (P28095)
BUTZEL LONG PC
*Attorneys for Defendants*
150 W. Jefferson Ave., Ste. 100
Detroit, MI  48226
(313) 225-7000
sendek@butzel.com

Alan N. Salpeter
Dina M. Hayes
KAYE SCHOLER LLP
*Attorneys for Plaintiffs*
70 West Madison Street, Ste. 4200
Three First National Plaza
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com
dina.hayes@kayescholer.com

_____/

## DECLARATION OF MARK FREEBOROUGH

1.     My name is Mark Freeborough.

2.     I am employed by Robert Bosch LLC as the Director of Project Management, Automotive Electronics Division.

3.     I have reviewed the statements in Bosch's Verified Amended Complaint, *excluding* statements pertaining to Connectors that Bosch purchases for airbag control modules supplied to Daihatsu. (My job responsibilities do not include Bosch business with Daihatsu.)

4.     With respect to all non-Daihatsu related statements in Bosch's Verified Amended Complaint, such statements are true and correct based upon my personal knowledge.

5.     The exhibits attached to Bosch's Verified Amended Complaint are true and accurate copies of agreements and correspondence between Bosch and JST.

6.     I declare under penalty of perjury that the foregoing is true and correct. Executed on May 22, 2015.

MARK FREEBOROUGH

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT BOSCH LLC and
BOSCH AUTOMOTIVE PRODUCTS
(SUZHOU) CO., LTD.,

       Plaintiffs,

v.

J.S.T. MFG. CO., LTD.,
J.S.T. SALES AMERICA INC., and
J.S.T. CORPORATION,

       Defendants.

Case No. 2:15-cv-11832-AC-EAS

Hon. Avern Cohn

---

S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
Daniel K. Beitz (P47451)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiffs*
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400
twienner@wiennergould.com
sgould@wiennergould.com
dbeitz@wiennergould.com

Bruce L. Sendek (P28095)
BUTZEL LONG PC
*Attorneys for Defendants*
150 W. Jefferson Ave., Ste. 100
Detroit, MI  48226
(313) 225-7000
sendek@butzel.com

Alan N. Salpeter
Dina M. Hayes
KAYE SCHOLER LLP
*Attorneys for Plaintiffs*
70 West Madison Street, Ste. 4200
Three First National Plaza
Chicago, IL  60602
(312) 583-2300
alan.salpeter@kayescholer.com
dina.hayes@kayescholer.com

---

## DECLARATION OF OO EE-LIN

1.　　My name is Oo Ee-Lin.

2.　　I am employed by Bosch Automotive Products (Suzhou) Co., Ltd., Automotive Electronics as Vice President of Finance.

1.　　I have reviewed the statements in Bosch's Verified Amended Complaint as they pertain to Connectors that Bosch purchases for airbag control modules supplied to Daihatsu.

2.　　Such statements in Bosch's Verified Amended Complaint are true and correct based upon my personal knowledge.

3.　　I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 25, 2015.



**Oo Ee-Lin**